**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
MICHAEL T. HOUCHIN (SBN 305541)
*mike@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

**LAW OFFICE OF DAVID ELLIOT**
DAVID ELLIOT (SBN 270381)
*davidelliot@elliotlawfirm.com*
2028 3rd Avenue
San Diego, CA 92101
Telephone: (858) 228-7997
***Attorneys for Plaintiff and the Proposed Class***

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRYSTAL HILSLEY, on behalf of herself, all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GENERAL MILLS, INC.; GENERAL MILLS SALES, INC.; MCCANN-ERICKSON USA, INC.; SAATCHI & SAATCHI NORTH AMERICA, INC.; WARNER BROS. ENTERTAINMENT, INC.; UNIVERSAL CITY STUDIOS LLC; VIACOM INTERNATIONAL INC.; LUCASFILM LTD, LLC; SANRIO COMPANY LTD.;<br><br>Defendants. | Case No. 3:18-cv-00395-L-BLM<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HER OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Judge: Hon. M. James Lorenz<br>Ctrm: 5B (5th Floor- Schwartz)<br><br>**NO ORAL ARGUMENT PER 2/17/18 COURT ORDER [DKT. NO. 6] MOTION DEEMED SUBMITTED ON BRIEFS PER LOCAL CIVIL RULE 7.1** |

-1-

*Hilsley v. General Mills, Inc., et al.*, Case No. 3:18-cv-00395-L-BLM
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

## **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................1

II.   FACTUAL ALLEGATIONS ................................................................2

III.  LEGAL STANDARD .........................................................................5

IV.   ARGUMENT.......................................................................................6

   A.   Plaintiff's State Law Claims Are Not Preempted ..........................6

      1.   California's Sherman Law is identical to the NLEA ................6

      2.   Plaintiff's claims based on the "No Artificial Flavors" statement are not preempted .........................................................................8

      3.   Defendant is required to specifically identify its use of artificial malic acid,  so Plaintiff's claims are not preempted ..........................10

   B.   Whether a Labeling Statement is Likely to Deceive a Reasonable Consumer is Not Appropriate for Determination on a Motion to Dismiss ..................11

   C.   Plaintiff States a Claim for Breach of Warranties ......................16

   D.   Plaintiff States Claims Against the Advertising and Licensor Defendants.17

V.    CONCLUSION................................................................................25

-I-

*Hilsley v. General Mills, Inc., et al.*, Case No. 3:18-cv-00395-L-BLM
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Cases**

*Allred v. Frito-Lay N. Am., Inc.*,
   2018 WL 1185227 (S.D. Cal. Mar. 7, 2018) ................................................. passim

*Allred v. Kellogg Co.*,
   2018 WL 1158885 (S.D. Cal. Feb. 23, 2018) .......................................... 1, 14, 16

*Altria Grp., Inc. v. Good*,
   555 U.S. 70 (2008) ........................................................................................ 6

*Andrews v. Trans Union Corp.*,
   7 F. Supp. 2d 1056 (C.D. Cal. 1998) .......................................................... 18

*Andriesian v. Cosmetic Dermatology, Inc.*,
   2015 WL 1638729 (D. Or. Mar. 3, 2015) .................................................... 15

*Arevalo v. Bank of Am. Corp.*,
   850 F. Supp. 2d 1008 (N.D. Cal. 2011) ................................................ 12, 24

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................ 6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................................... 5, 6

*Bondanza v. Peninsula Hosp. and Med. Ctr.*,
   23 Cal. 3d 260 (1979) ................................................................................... 19

*Brockey v. Moore*,
   107 Cal. App. 4th 86 (2003) ................................................................... 13, 21

*Burton v. Time Warner Cable Inc.*,
   2013 WL 3337784 (C.D. Cal. Mar. 20, 2013) .............................................. 6

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) .................................................................................. 15

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
   467 U.S. 837 (1984) ...................................................................................... 20

-II-

*Chronicle Publ'g Co. v. Chronicle Publications, Inc.*,
  733 F. Supp. 1371 (N.D. Cal. 1989)................................................................19

*Clancy v. The Bromley Tea Co.*,
  308 F.R.D. 564 (N.D. Cal. 2013) ..................................................................7, 8

*Colgan v. Leatherman Tool Group, Inc.*,
  135 Cal. App. 4th 663 (2006) ..........................................................................13

*Conley v. Gibson*,
  355 U.S. 41, 47 (1957) ......................................................................................5

*Davis v. HSBC Bank Nevada, N.A.*,
  691 F.3d 1152 (9th Cir. 2012) ..................................................................passim

*Davison v. Santa Barbara High School District*,
  48 F.Supp.2d 1225 (C.D. Cal. 1998) .................................................................6

*Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*,
  797 F.3d 1248 (11th Cir. 2015) .......................................................................20

*Dvora v. General Mills, Inc.*,
  2011 WL 1897349 (C.D. Cal. May 16, 2011)....................................................9

*Emery v. Visa Int'l Serv. Ass'n*,
  95 Cal. App. 4th 952 (2002) ......................................................................24, 25

*Engurasoff v. Coca-Cola Co.*,
  2014 WL 4145409 (N.D. Cal. Aug. 21, 2014)...................................................9

*Farmers Ins. Exch. v. Superior Court of Los Angeles County*,
  2 Cal. 4th 377 (1992) .......................................................................................18

*Feather River Trailer Sales, Inc. v. Sillas*,
  96 Cal.App.3d 234 (1979) ...............................................................................22

*FTC v. Chinery*,
  2007 WL 1959270 (D. N.J. July 5, 2007) ..................................................20, 24

*Gitson v. Trader Joe's Co.*,
  2014 WL 1048640 (N.D. Cal. Mar. 14, 2014) ...................................................9

-III-

*Hall v. Diamond Foods, Inc*
   2014 WL 5364122 (N.D. Cal. Oct. 21, 2014) ...................................................15

*Hasbrouck v. Bank Am. Hous. Servs.*,
   190 F.R.D. 42 (N.D.N.Y. 1999) ..........................................................................6

*Henderson v. J.M. Smucker Co.*,
   2011 WL 1050637 (C.D. Cal. Mar. 17, 2011) ...................................................14

*Henry v. Lehman Commer. Paper, Inc.*,
   471 F.3d 977 (9th Cir. 2006) .............................................................................25

*Hu v. Herr Foods, Inc.*,
   251 F. Supp. 3d 813 (E.D. Pa. 2017)................................................................14

*In re Century 21-RE/MAX Real Estate Adver. Claims Litig.*,
   882 F. Supp. 915 (C.D. Cal. 1994)....................................................................23

*In re Farm Raised Salmon Cases*,
   42 Cal. 4th 1077 (2008) .......................................................................................7

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009)................................................................................12, 18

*Inwood Labs., Inc. v. Ives Labs., Inc.*,
   456 U.S. 844 (1982) ..........................................................................................20

*Ivie v. Kraft Foods Global, Inc.*,
   2013 WL 685372 (N.D. Cal. Feb. 25, 2013)......................................................9

*Jefferson v. Chase Home Fin.*,
   2008 WL 1883484 (N.D. Cal. Dec. 14, 2007) ..................................................13

*Karl Storz Endoscopy Am., Inc..*,
   285 F.3d 848 (9th Cir. 2001) .............................................................................24

*Karl Storz Endoscopy America, Inc., v. Surgical Techs., Inc.*,
   285 F.3d 848 (9th Cir. 2001) .............................................................................19

*Kasky v. Nike, Inc.*,
   27 Cal. 4th 939 (2002) .......................................................................................12

-IV-

*Khan v. Med. Bd.*,
   12 Cal.App.4th 1834 (1993) ...................................................................22

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) .................................................................5

*Kosta v. Del Monte Corporation*,
   2013 WL 2147413 (N.D.Cal., May 15, 2013) ..........................................8

*Lavie v. Procter & Gamble Co.*,
   105 Cal. App. 4th 496 (2003) ................................................................13

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   134 S. Ct. 1377 (2014) ...........................................................................23

*Lilly v. ConAgra Foods, Inc.*,
   743 F.3d 662 (9th Cir. 2014) ...........................................................11, 14

*Lozano v. AT&T Wireless Servs., Inc.*,
   504 F.3d 718 (9th Cir. 2007) ...........................................................12, 18

*Martin v. Tradewinds Beverage Co.*,
   2017 WL 1712533 (C.D. Cal. Apr. 27, 2017) ........................................15

*Martinez v. Metabolife Int'l, Inc.*,
   113 Cal. App. 4th 181 (Ct. App. 2003) .................................................16

*Maybelline Co. v. Noxell Corp.*,
   813 F.2d 901 (8th Cir. 1987) .................................................................23

*McGill v. Citibank, N.A.*,
   2 Cal. 5th 945 (2017) .............................................................................11

*Morgan v. Wallaby Yogurt Co., Inc.*,
   2013 WL 5514563 (N.D. Cal. Oct. 4, 2013) ...........................................7

*Nestlé Purina Petcare Co. v. Blue Buffalo Co. Ltd.*,
   2015 U.S. Dist. LEXIS 51273 (E.D. Mo. Apr. 20, 2015) ...........22, 23, 24

*Paduano v. Am. Honda Motor Co.*,
   169 Cal. App. 4th 1453 (2009) ..............................................................18

-V-

*People v. JTH Tax, Inc.*,
   212 Cal. App. 4th 1219 (2013) ...................................................................25

*People v. Lynam*,
   253 Cal.App.2d 959 (1967) ......................................................................22

*People v. Toomey*,
   157 Cal.App.3d 1 (1985) ..........................................................................22

*Plascencia v. Lending 1st Mortg.*,
   583 F. Supp. 2d 1090 (N.D. Cal. 2008).....................................................22

*Plasticolor Molded Prods. v. Ford Motor Co.*,
   713 F. Supp. 1329 (C.D. Cal. 1989)..........................................................19

*Pratt v. Whole Foods Mkt. California, Inc.*,
   2014 WL 1324288 (N.D. Cal. Mar. 31, 2014) .............................................7

*Reid v. Johnson & Johnson*,
   780 F.3d 952 (9th Cir. 2015) ....................................................................13

*Rice v. Santa Fe Elevator Corp.*,
   331 U.S. 218 (1947) ...................................................................................6

*Sagan v. Apple Computer, Inc.*,
   874 F. Supp. 1072 (C.D. Cal. 1994) ...........................................................6

*Saunders v. Superior Court (Los Angeles)*,
   27 Cal. App. 4th 832 (1994) .....................................................................19

*Scheuer v. Rhodes*,
   416 U.S. 232 (1974) ...................................................................................5

*Schwartz v. Upper Deck Co.*,
   967 F. Supp. 405 (S.D. Cal. 1997) ...........................................................18

*Societé des Hotels Meridien v. LaSalle Operation P'ship, L.P.*,
   380 F.3d 126 (2d Cir. 2004) .....................................................................20

*Stanwood v. Mary Kay, Inc.*,
   941 F. Supp. 2d 1212 (C.D. Cal. 2012).................................................12, 18

-VI-

*Starr v. Baca,*

    652 F.3d 1202 (9th Cir.2011) ................................................................6

*United Parcel Serv., Inc. v. Package Am., Inc.,*

    1996 U.S. Dist. LEXIS 8148 (N.D. Cal. 1996) ...............................19

*Victor v. R.C. Bigelow, Inc.,*

    2014 WL 1028881 (N.D. Cal. Mar. 14, 2014) ................................7

*Viggiano v. Hansen Nat. Corp,*

    944 F. Supp. 2d 877 (C.D. Cal. 2013) ............................................10

*Williams v. Beechnut Nutrition Corp.,*

    185 Cal. App. 3d 135  (1986) ........................................................16

*Williams v. Gerber Prod. Co.,*

    552 F.3d 934 (9th Cir. 2008) ..........................................11, 13, 14

*Woodard v. Labrada,*

    2017 WL 1018307 (C.D. Cal. Mar. 10, 2017) ................................21

**Statutes**

15 U.S.C. § 1125(a)(1) ...........................................................................23

15 U.S.C. §§ 1125 *et seq.* .......................................................................19

21 U.S.C. § 343-1(a) ................................................................................6

21 U.S.C. § 343-1(a)(3) ...........................................................................7

28 U.S.C. § 1332(d) .................................................................................2

Cal. Bus. & Prof. Code § 17200 ..........................................................12

Cal. Bus. & Prof. Code § 17203 ....................................................12, 18

Cal. Bus. & Prof. Code §§ 17200, *et seq.* ...........................................5

Cal. Bus. & Prof. Code §§ 17500, *et seq.* ...........................5, 12, 17, 24

Cal. Civ. Code § 1760 ...........................................................................11

Cal. Civ. Code § 1770(a) .......................................................................17

Cal. Civ. Code § 1780 ...........................................................................12

Cal. Civ. Code §§ 1750, *et seq.* ............................................................5

Cal. Comm. Code § 2313(1)(a) ...................................................................16

Cal. Health & Safety Code § 109875 *et seq.*..............................................7

Cal. Health & Safety Code § 110100(a)........................................................7

Cal. Health & Safety Code §109875 *et seq.*...............................................3

**Other Authorities**

*The Scope of Liability for False Advertising Claims*; R. Shaheen, A. Mudge, M.

    Marcheski, (Oct. 19, 2012) ...................................................................21

**Rules**

Fed. R. Civ. P. 12(b) ....................................................................................5

Fed. R. Civ. P. 12(b)(6) ................................................................................5

Fed. R. Civ. P. 8............................................................................................5

Fed. R. Civ. P. 8(e) .......................................................................................6

**Treatises**

Rutter Group, Unfair Business Practices and False Advertising,

    Bus. & Prof. Code §17200, §§ 6:6-6:51 ........................................22, 24

**Regulations**

21 C.F.R. § 101.4(a)(1)................................................................................11

21 C.F.R. § 184.1069(a) .......................................................................10, 11

21 C.F.R. § 184.1069(c) ..............................................................................10

21 C.F.R. 101.22(i) ........................................................................................4

21 C.F.R. 101.22(i) (3) ..................................................................................4

21 C.F.R. 102.5(a) ........................................................................................3

21 CFR § 101.22 ...........................................................................................7

21 CFR 101.22 ..........................................................................................3, 4

1  Plaintiff Crystal Hilsley ("Plaintiff"), on behalf of herself and all others
2  similarly situated, respectfully submits this Memorandum of Points and Authorities
3  in Opposition to the Motion to Dismiss that was filed by Defendants General Mills,
4  Inc., General Mills Sales, Inc. (collectively "General Mills"), McCann-Erickson,
5  USA, Inc, Saatchi & Saatchi North America, Inc., Warner Brothers Entertainment,
6  Inc., Universal City Studios, LLC, Viacom International, Inc., and Lucasfilm, Ltd.,
7  LLC, (collectively "Defendants") on March 26, 2018. (*See* Dkt. No. 13-1). For the
8  reasons set forth below, Plaintiff respectfully requests that the Court deny
9  Defendants' Motion to Dismiss in its entirety.

10  ## I.    **INTRODUCTION**

11  In this consumer protection class action, Plaintiff alleges that Defendants'
12  Fruit Flavored Snack Products contain an undisclosed artificial flavoring ingredient
13  called d-l malic acid. *See generally* Compl., Dkt. No. 1-2. Plaintiff alleges that
14  Defendants failed to inform consumers of this artificial flavoring ingredient as
15  required by California and Federal Law. Moreover, Plaintiff alleges that the labeling
16  of the Fruit Flavored Snack Products is deceptive because Defendants falsely label
17  and advertise that the products have "NO ARTIFICIAL FLAVORS." Compl., ¶ 47.

18  Recent authority from this District confirms that Defendants' Motion to
19  Dismiss should be denied.  For example, the court in *Allred v. Kellogg Co.*, No. 17-
20  CV-1354-AJB-BLM, 2018 WL 1158885 (S.D. Cal. Feb. 23, 2018) ("*Kellogg*")
21  declined to dismiss similar claims involving the use of the same ingredient, malic
22  acid, as an artificial flavor creating the tart flavor in a Salt & Vinegar Flavored Potato
23  Chip product. The court in *Allred v. Frito-Lay N. Am., Inc.*, No. 17-CV-1345 JLS
24  (BGS), 2018 WL 1185227 (S.D. Cal. Mar. 7, 2018) ("*Frito-Lay*"), came to the same
25  conclusion. Because the ingredient, use, allegations, and proffered defenses are
26  identical, the same result should be reached in this case. For the reasons set forth
27  below, Defendants' motion to dismiss should be denied in its entirety.

28

*Hilsley v. General Mills, Inc., et al.*, Case No. 3:18-cv-00395-L-BLM
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

## II.    FACTUAL ALLEGATIONS

This action was originally filed in the Superior Court of the State of California for the County of San Diego on December 5, 2017. *See generally* Compl., Dkt. No. 1-2.  On February 21, 2018, Defendants filed a Notice of Removal to this Court pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) ("CAFA"). Dkt. No. 1. The gravamen of Plaintiff's complaint is that "Defendants manufacture, package, label, distribute, advertise, license, market, and sell a variety of fruit-flavored sugary snack products – candies, in effect – that are molded to resemble, marketed, and labeled under the likenesses of popular children's movie and television characters." Compl., ¶ 13. These products include Scooby-Doo Fruit Flavored Snacks, Despicable Me Fruit Flavored Snacks, Star Wars Fruit Flavored Snacks, Dora The Explorer Fruit Flavored Snacks, Hello Kitty Fruit Flavored Snacks, DC Superhero Girls Fruit Flavored Snacks, Shark Bites Fruit Flavored Snacks, SpongeBob Fruit Flavored Snacks, Trolls Fruit Flavored Snacks, Teenage Mutant Ninja Turtles Fruit Flavored Snacks, El Chavo Fruit Flavored Snacks, and Thomas and Friends Fruit Flavored Snacks (collectively "the Products"). Compl., ¶ 88.

Plaintiff alleges that "[t]he Products' labeling and advertising is false and misleading and the Products are misbranded under California law." Compl., ¶ 15. Plaintiff claims that "[t]he Products are labeled as if they contain only natural ingredients and are flavored only with natural ingredients when the Products in fact contain undisclosed artificial flavors in violation of state and federal law." Compl., ¶ 16. For example, the label of the Scooby-Doo Fruit Flavored Snacks claims that it contains "*NO ARTIFICIAL FLAVORS*." Compl., ¶¶ 46-47. Plaintiff contends that this claim is false because each of the Products "contain a synthetic flavoring chemical identified in the ingredient list as 'malic acid.'" Compl., ¶¶ 48-49. "This 'malic acid' is a synthetic petrochemical that confers a 'tart, fruit-like' flavor and simulates the flavor of actual fruit." Compl., ¶ 50.

Plaintiff alleges that the Products' labels violate California law in multiple regards. Compl., ¶ 51. "First, because the Products contain artificial flavoring ingredients that simulate and reinforce the characterizing flavor, the front label is required by law to disclose those additional flavors rather than state, as it does, that the Products are naturally flavored." Compl., ¶ 52 (citing Cal. Health & Safety Code § 109875 *et seq.*, (Sherman Law), incorporating 21 C.F.R. § 101.22). Each of the Products' labels instead state that they are "Naturally Flavored." Compl., ¶ 53. "Further, the Products' ingredient list violates state and Federal law because it misleadingly identifies the malic acid ingredient only as the generic 'malic acid' instead of using the specific, non-generic name of the ingredient." Compl., ¶ 54. "Far more deceptive, however, is the fact that the Products claim on the label that they contain '*NO ARTIFICIAL FLAVOR.*'" Compl., ¶ 55. Plaintiff claims that Defendant General Mills "includes the industrial chemical d-l malic acid in the Products, in a racemic mixture of d- and l-isomers" and that "[t]his ingredient helps make the Products – which are over 50% corn syrup and sugar – taste more like fruit." Compl., ¶ 57. "This 'malic acid' is not a naturally-occurring compound but is in fact manufactured in petrochemical plants from benzene or butane—components of gasoline and lighter fluid, respectively—through a series of chemical reactions, some of which involve highly toxic chemical precursors and byproducts." Compl., ¶ 58.

Plaintiff further claims that because "the Products contain an artificial flavoring chemical, federal and state law require both front- and back-label disclosures to inform consumers" and that the Products "have neither." Compl., ¶¶ 62-63. Instead, the labels "falsely advertise 'NO ARTIFICIAL FLAVORS.'" Compl., ¶ 64. "California law, incorporating U.S. Food, Drug, and Cosmetic Act regulations by reference, requires that a food's label accurately describe the nature of the food product and its characterizing flavors." Compl., ¶ 65 (citing 21 C.F.R. § 102.5(a)). "Under FDA regulations, a recognizable primary flavor identified on

-3-

the front label of a food Products are referred to as a 'characterizing flavor.'" Compl., ¶ 66 (citing 21 C.F.R. § 101.22). "FDA regulations and California law hold that if 'the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means' then such flavor is considered the 'characterizing flavor.'" Compl., ¶ 67 (citing 21 C.F.R. § 101.22(i)). Plaintiff alleges that "'Fruit-flavored' is a primary recognizable flavor identified on the Products' front labels" and is "therefore a characterizing flavor under California law." Compl., ¶ 68. "If any artificial flavor is present which 'simulates, resembles or reinforces' the characterizing flavor, the food must be prominently labeled as 'Artificially Flavored.'" Compl., ¶ 69 (citing 21 C.F.R. § 101.22(i) (3), (4)). Plaintiff claims that the Products fail to include this legally-required disclosure because "[t]he Products' synthetic d-l malic acid simulates, resembles, and reinforces the characterizing fruit flavor for the Products." Compl., ¶ 72.

Plaintiff purchased the Products "multiple times annually since 2011, most recently at the Ralph's Supermarket located in the Encinitas Village Shopping Center at 125 N El Camino Real, Encinitas, California." Compl., ¶ 99. Plaintiff paid approximately $2.00 to $3.00 each time she purchased a retail package of 10 individually-wrapped packets of the Products and Plaintiff's most recent purchase was on or about November of 2016. Compl., ¶¶ 99-100. Plaintiff claims that she first discovered Defendants' unlawful acts in December 2016, when she "learned the Product's characterizing flavor was deceptively created or reinforced using artificial flavoring even though Defendants failed to disclose that fact on the Product's label." Compl., ¶ 102. Plaintiff purchased the Products believing they were naturally-flavored and relied on the labeling of the Products. Compl., ¶ 103. Plaintiff claims that she would not have purchased the Products "in the absence of Defendants' misrepresentations and omissions." Compl., ¶ 107.

Plaintiff seeks to represent a class provisionally defined as "[a]ll California

-4-

citizens who purchased the Products in California on or after January 1, 2012, excluding Defendants and Defendants' officers, directors, employees, agents, and affiliates, and the Court and its staff." Compl., ¶ 116. Plaintiff brings causes of action for violations of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"), violations of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), violations of the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, and for breach of express and implied warranties. *See generally* Compl.

### III.   LEGAL STANDARD

A pleading that sets forth a claim for relief "must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8; *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (holding that the purpose of pleading a "short and plain statement of the claim" is merely to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Indeed, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

Federal Rule of Civil Procedure 12(b) states that "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required." Fed. R. Civ. P. 12(b). However, Rule 12(b) does provide seven defenses that a party may assert....by motion." *See* Fed. R. Civ. P. 12(b). Among the available defenses under Rule 12(b) is a defense "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the court accepts "allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Thus, to survive a motion to dismiss, a plaintiff is required to allege only

-5-

1  "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550

2  U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009). "The Ninth Circuit has

3  clarified that (1) a complaint must 'contain sufficient allegations of underlying facts

4  to give fair notice and to enable the opposing party to defend itself effectively,' and

5  (2) 'the factual allegations that are taken as true must plausibly suggest an

6  entitlement to relief, such that it is not unfair to require the opposing party to be

7  subjected to the expense of discovery and continued litigation.'" *Burton v. Time*

8  *Warner Cable Inc.*, No. CV 12-06764 JGB (AJWx), 2013 WL 3337784, at *2 (C.D.

9  Cal. Mar. 20, 2013) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

10  The liberal pleading standard applied by federal courts comports with Rule

11  8(e), which says, "Pleadings must be construed so as to do justice." Fed. R. Civ. P.

12  8(e); *cf. Sagan v. Apple Computer, Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal. 1994)

13  ("Parties are expected to use discovery, not the pleadings, to learn the specifics of

14  the claims being asserted."); *Davison v. Santa Barbara High Sch. Dist.*, 48 F. Supp.

15  2d 1225, 1228 (C.D. Cal. 1998) ("If the moving party could obtain the missing detail

16  through discovery, the motion should be denied.").

## IV.   ARGUMENT

### A.   Plaintiff's State Law Claims Are Not Preempted

#### 1.   California's Sherman Law is identical to the NLEA

20  Defendants argue that Plaintiff's claims are preempted under the Nutrition,

21  Labeling and Education Act, 21 U.S.C. § 343-1(a) ("NLEA"). Defs.' Mem. at 6.

22  "When addressing questions of express or implied pre-emption, we begin our

23  analysis 'with the assumption that the historic police powers of the States [are] not

24  to be superseded by the Federal Act unless that was the clear and manifest purpose

25  of Congress.'" *Altria Group, Inc. v. Good*, 555 U.S. 70, 77 (2008) (quoting *Rice v.*

26  *Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). "When Congress passed the

27  FDCA and its subsequent amendments creating national uniform nutrition labeling,

28  it expressly preempted state law that was inconsistent with its requirements." *Clancy*

*v. The Bromley Tea Co.*, 308 F.R.D. 564, 573 (N.D. Cal. 2013). "However, it did not attempt to completely preempt state laws regarding the marketing of food products. To the contrary, Congress specifically anticipated states enacting their own identical laws." *Id.* (citing *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1090 (2008)). "California complied with this requirement in passing the Sherman Law, which expressly adopts the federal labeling requirement." *Id.* Under the Sherman Law, "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act...shall be the food regulations of this state." *See* Cal. Health & Safety Code § 110100(a).

Defendants claim that the express preemption provision of the NLEA bars this action. Defs.' Mem. at 6. That provision reads as follows:

> [N]o State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce… (3) any requirement for the labeling of food of the type required by section… 343(k) of this title [concerning flavors] ***that is not identical to the requirement of such section***[.]

21 U.S.C. § 343-1(a)(3) (emphasis added). However, preemption is inapplicable here because the requirements of California's Sherman Law are identical to the requirements of the federal food flavoring provisions of the NLEA. *See* Cal. Health & Safety Code § 109875 *et seq.* (incorporating 21 C.F.R. § 101.22); *see also Victor v. R.C. Bigelow, Inc.,* No. 13-CV-02976-WHO, 2014 WL 1028881, at *10 (N.D. Cal. Mar. 14, 2014) ("The Sherman Law expressly incorporates the FDCA as California's own law."); *Morgan v. Wallaby Yogurt Co., Inc.*, No. 13-CV-00296-WHO, 2013 WL 5514563, at *5 (N.D. Cal. Oct. 4, 2013) ("[T]he Sherman Law is not an obstacle to Congress's purpose and objectives."); *Pratt v. Whole Foods Mkt. California, Inc.*, No. 5:12-CV-05652-EJD, 2014 WL 1324288, at *4 (N.D. Cal. Mar. 31, 2014) ("Plaintiff's action is based on the Sherman Law, a parallel state law that mirrors the relevant sections of the FDCA and the NLEA."); *Kosta v. Del Monte*

1   *Corporation*, 12-cv-01722-YGR, 2013 WL 2147413, at *9 (N.D. Cal. May 15,

2   2013) (finding no conflict between the Sherman Law and FDCA and refusing to find

3   that the Sherman Law claims were preempted); *Clancy v. The Bromley Tea Co.*, 308

4   F.R.D. 564, 573–74 (N.D. Cal. 2013) (same).

5       Because California's Sherman Law is identical to the requirements of the

6   NLEA, Plaintiff's claims are not preempted. Nevertheless, Defendants argue that

7   Plaintiff's claims based on the "No Artificial Flavors" statement are preempted

8   (Defs.' Mem. at 8-9) and that Plaintiff's claims based on the use of the common or

9   usual name of "malic acid" are preempted. Defs.' Mem. at 9-11.  Each of these

10  arguments is addressed below.

11          **2.    Plaintiff's state-law claims based on the "No Artificial Flavors"
                statement are not preempted because this requirement is identical
12              to the NLEA**

13      With respect to the "No Artificial Flavors" statement, the recent decision in

14  *Frito-Lay* is instructive on this issue.  In *Frito-Lay*, the Plaintiffs brought similar

15  claims alleging that "the Product is labeled as only containing natural ingredients,

16  but is in fact flavored with a chemical called malic acid." *Frito-Lay,* 2018 WL

17  1185227, at *2. Defendant Frito-Lay likewise argued that plaintiffs' claims were

18  preempted under the NLEA. *Id.* at *3. Judge Sammartino of this District rejected

19  that argument and held that the plaintiffs' claims were not preempted because the

20  court "cannot make a factual determination at this stage as to whether malic acid is

21  an artificial flavor." *Id.* at *5. Similarly, Defendants here argue that "FDA

22  regulations do not—as Plaintiff insists they should—require disclosing 'malic acid'

23  as an artificial flavor in foods where its regulated function is not as a flavor, but

24  instead is as a pH control agent." Defs.' Mot. at 7:23-25. But this argument overlooks

25  the allegations in the complaint. Plaintiff's complaint clearly alleges that the malic

26  acid in the Products acts as a flavoring ingredient, not as a pH control agent as

27  Defendants contend. *See* Compl., ¶ 49 ("The Products all contain a synthetic

28  *flavoring* chemical identified in the ingredient list as 'malic acid.'") (italics added);

-8-

1  Compl., ¶ 50 ("This 'malic acid' is a synthetic petrochemical that confers a 'tart,
2  fruit-like' *flavor* and simulates the *flavor* of actual fruit.") (italics added).

3  Because Plaintiff's complaint alleges that the malic acid in the Products,
4  which gives a "tart, fruity" flavor to these fruit-flavored candies, is an artificial
5  flavoring ingredient (rather than a pH control agent as Defendants allege),
6  Defendants' argument fails. *See, e.g.*, *Engurasoff v. Coca-Cola Co.*, No. C 13-03990
7  JSW, 2014 WL 4145409, at *3 (N.D. Cal. Aug. 21, 2014) (finding that the federal
8  regulations "are insufficient to insert a requirement that all artificial flavors, by
9  definition, must impart a characteristic taste and/or aroma" and finding "it cannot
10  make a factual determination upon a motion to dismiss as to whether phosphoric
11  acid qualifies as an artificial flavor"); *Gitson v. Trader Joe's Co.*, No. 13-CV-01333-
12  WHO, 2014 WL 1048640, at *4 (N.D. Cal. Mar. 14, 2014) ("At the pleading stage
13  [the Court] cannot second guess the truth of the plaintiffs' allegations that the
14  identified ingredients function as artificial flavors...."); *Ivie v. Kraft Foods Global,*
15  *Inc.*, No. 12-cv-2554 RMW, 2013 WL 685372, at *10 (N.D. Cal. Feb. 25, 2013)
16  ("[T]he factual determinations of whether [the ingredients are] used as a sweetener
17  and/or...a flavoring agent in this particular product, and whether a reasonable
18  consumer would have thus been misled by the 'no artificial sweeteners or
19  preservatives' label, are inappropriate for determination on a motion to dismiss.").

20  Each of the authorities cited by Defendants are distinguishable in this respect.
21  For example, Defendants cite to *Dvora v. General Mills, Inc.*, 2011 WL 1897349, at
22  *4 (C.D. Cal. May 16, 2011) where the court held that the plaintiffs' claims were
23  preempted. In *Dvora*, however, the label for the "Total Blueberry Pomegranate"
24  cereal product stated it was both "Naturally and Artificially Flavored." *Id.* at *1-2.
25  In contrast, all of the Products at issue here state that they contain "*NO ARTIFICIAL*
26  *FLAVORS*" and fail to conspicuously disclose the use of artificial flavoring
27  ingredients.  Compl., ¶¶ 47-49. Defendants' reliance on *Viggiano v. Hansen Nat.*
28  *Corp.*, is equally misplaced because that case involved the ingredients sucralose and

-9-

ace-k. 944 F. Supp. 2d 877, 889 (C.D. Cal. 2013).  In *Viggiano*, the Court concluded only that those specific ingredients, sucralose and ace-k, which function exclusively as sweeteners, not flavorings as defined by the FDA, are not artificial flavoring ingredients pursuant to FDA regulations. *Id.* In contrast, the FDA regulations expressly state that malic acid functions as a flavoring agent, 21 C.F.R. § 184.1069(c), and that "[r]acemic DL-malic acid does not occur naturally." *See* 21 C.F.R. § 184.1069(a). Plaintiff's complaint alleges that the Products contain the artificial d-l malic acid (Compl., ¶ 57) and that this fruit-flavored compound functions as a flavoring in these fruit-flavored candies. Compl., ¶ 49. This Court accepts these factual allegations as true at the pleadings stage. Plaintiff's claims based on the "No Artificial Flavors" statement are not preempted.

### 3. Both California and Federal law require Defendants to specifically identify the use of artificial malic acid, so Plaintiff's claims are not preempted

Defendants next argue that Plaintiff's claims based on Defendants failure to use the required specific name of the type of malic acid in the Products are also preempted. Defs.' Mem at 9. The decision in *Frito-Lay* is again instructive on this issue. In *Frito-Lay* the plaintiffs alleged that "the label misleadingly identifies 'malic acid' by its generic name, when it must refer to 'the specific non-generic name of the ingredient.'" *Frito-Lay*, 2018 WL 1185227, at *3. Defendant Frito-Lay likewise argued that "'malic acid' is the 'common name' for all forms of malic acid[.]" *Id*. However, the court in *Frito-Lay* noted that 21 C.F.R. § 184.1069(a) states that "[m]alic acid ... is the common name for 1–hydroxy–1, 2–ethanedicarboxylic acid" but that "[t]he regulation goes on to identify two forms of malic acid: L-malic acid, which 'occurs naturally in various foods' and DL-malic acid, which does not." *Id*. The court concluded that "[w]hile Defendants argue malic acid is the 'common name of all forms of malic acid,' this assertion does not find support in the regulations." *Id*. (internal citations omitted). Therefore, "the Court cannot say at this stage that Plaintiffs' argument is preempted." *Id*.

-10-

This Court should reach the same conclusion here. As Defendants concede, malic acid "is the common name for 1-hydroxy-1, 2-ethanedicarboxylic acid." Defs.' Mem. at 10:14-15. However, this misses the point of Plaintiff's allegations. Plaintiff alleges that "Defendant General Mills includes the industrial chemical d-l malic acid in the Products, in a racemic mixture of d- and l-isomers," Compl., ¶ 57, and is required to and fails to identify this specific form of malic acid, which does not occur naturally, as required by FDA regulations and California's Sherman Law. *See* 21 C.F.R. § 184.1069(a) ("Racemic DL-malic acid does not occur naturally. It is made commercially by hydration of fumaric acid or maleic acid."). Defendants have failed to identify its use of the artificial form of malic acid by its specific unique name in violation of 21 C.F.R. § 101.4(a)(1), (b). Thus, Plaintiff's claims here are also not preempted. *See Frito-Lay*, 2018 WL 1185227, at *3.

**B.    Whether a Labeling Statement is Likely to Deceive a Reasonable Consumer is Not Appropriate for Determination on a Motion to Dismiss**

Defendants argue that, although the Products contain an artificial flavoring chemical dl-malic acid, a "reasonable consumer" would not be misled by the labels' claim of "No Artificial Flavors" so Plaintiff's UCL, FAL, and CLRA claims must be dismissed. Defs.' Mem. at 11. "California courts, however, have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on [a motion to dismiss]." *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012); *Lilly v. ConAgra Foods, Inc.*, 743 F.3d 662, 665 (9th Cir. 2014).

"The Legislature enacted the CLRA 'to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.'" *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 954, 393 P.3d 85, 88-89 (2017) (quoting Cal. Civ. Code § 1760). "To promote' these purposes, the

-11-

*Hilsley v. General Mills, Inc., et al.*, Case No. 3:18-cv-00395-L-BLM
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

Legislature directed that the CLRA 'be liberally construed and applied.'" *Id.* "After setting forth a list of unlawful 'methods of competition and unfair or deceptive acts or practices,' the CLRA authorizes any consumer who has been damaged by an unlawful method, act, or practice to bring an action for various forms of relief, including '[a]n order enjoining the methods, acts, or practices.'" *Id.* (quoting Cal. Civ. Code § 1780).

"The UCL addresses 'unfair competition,' which 'means and includes any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by the false advertising law.'" *Id.* (quoting Cal. Bus. & Prof. Code § 17200). "Its purpose 'is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.'" *Id.* (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949, 45 P.3d 243, 249 (2002), *as modified* (May 22, 2002)). The UCL provides a separate theory of liability under the "unlawful," "unfair," or "fraudulent" prongs. *Stanwood v. Mary Kay, Inc.*, 941 F. Supp. 2d 1212, 1222 (C.D. Cal. 2012) (citing *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007)). "[T]he primary form of relief available under the UCL to protect consumers from unfair business practices is an injunction, along with ancillary relief in the form of such restitution 'as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.'" *In re Tobacco II Cases*, 46 Cal. 4th 298, 319, 207 P.3d 20, 34 (2009) (quoting Cal. Bus. & Prof. Code § 17203).

The FAL "makes it unlawful for a business to disseminate any statement 'which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading[.]'" *Arevalo v. Bank of Am. Corp.*, 850 F. Supp. 2d 1008, 1023-24 (N.D. Cal. 2011) (quoting Cal. Bus. & Prof. Code § 17500)). "The statute has been interpreted broadly to encompass not only advertising which is false, but also advertising which, although true, is either

1   actually misleading or which has a capacity, likelihood or tendency to deceive or

2   confuse the public... Consequently, even a perfectly true statement couched in such

3   a manner that it is likely to mislead or deceive the consumer, such as by failure to

4   disclose other relevant information, is actionable under this section." *Davis*, 691

5   F.3d at 1162 (internal citations, quotations, and alterations omitted).

6       To state a claim under the CLRA, FAL, and UCL, a plaintiff must allege the

7   defendant's purported misrepresentations are likely to deceive a reasonable

8   consumer. *See Williams*, 552 F.3d at 938 (explaining that unless the advertisement

9   at issue targets a particularly vulnerable group, courts must evaluate claims for false

10  or misleading advertising from the perspective of a reasonable consumer); *see also*

11  *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) ("It is true that

12  violations of the UCL, FAL and CLRA are evaluated from the vantage point of a

13  'reasonable consumer.'"). A reasonable consumer is the "ordinary consumer within

14  the target population," *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 506-

15  07, 510 (2003), who is "not versed in the art of inspecting and judging a product, in

16  the process of its preparation or manufacture," *Colgan v. Leatherman Tool Group,*

17  *Inc.*, 135 Cal. App. 4th 663, 682 (2006), and who is not "expected to look beyond

18  misleading representations on the front of the box to discover the truth from the . . .

19  small print on the side of the box." *Williams*, 552 F.3d at 939. "[T]he primary

20  evidence in a false advertising case is the advertising itself," *Brockey v. Moore*, 107

21  Cal. App. 4th 86, 100 (2003), and "[t]he 'misleading character' of a given

22  representation 'appears on applying its words to the facts.'" *Jefferson v. Chase Home*

23  *Fin.*, 2008 WL 1883484, at *17 (N.D. Cal. Dec. 14, 2007) (quoting *Colgan*, 135 Cal.

24  App. 4th at 679)).

25      Defendants claim that "Plaintiff fails to plausibly allege that the malic acid in

26  the Fruit Flavored Snacks functions as a flavoring." This is incorrect. Compl., ¶¶ 49-

27  50. This same argument has also been rejected by the court in *Frito-Lay*. There, the

28  court held that it "cannot determine at this stage whether the Product's advertising

-13-

was false or misleading… [a]nd if it is determined that the Product should have disclosed an 'artificial flavor,' then a reasonable consumer would be deceived by the Product's packaging, which clearly states 'No artificial flavors.'" *Frito-Lay*, 2018 WL 1185227, at *5. Similarly here, Plaintiff alleges that the labels for the Products claim that they contain "NO ARTIFICIAL FLAVORS." Compl., ¶ 47. Even if the labeling did not state "NO ARTIFICIAL FLAVORS" (it does), Plaintiff would still satisfy the reasonable consumer test. *See Kellogg Co.*, 2018 WL 1158885, at *3 ("Although Kellogg retorts that its products do not intend nor promote to be 'all natural' or 'premium' products, again, the Court must take the facts [plaintiff] has pled as true… [a] reasonable consumer could construe the packaging as depicting all natural ingredients and flavors.").

Defendants argue that *Frito-Lay* and *Kellogg* "do not, and should not, dictate the outcome here." Defs.' Mem. at 13:16-17. Instead, Defendants urge this Court to follow an opinion from the Eastern District of Pennsylvania tiled *Hu v. Herr Foods, Inc.*, 251 F. Supp. 3d 813 (E.D. Pa. 2017). In *Hu*, the plaintiff did not sufficiently allege that citric acid has a preservative function in the product. *Id.* at 821. In contrast Plaintiff's complaint clearly alleges that malic acid is used a flavoring ingredient in the product. Compl., ¶¶ 49-87. Moreover, the *Hu* court was not bound by the Ninth Circuit's repeated instructions that whether a reasonable consumer would be misled "is a question of fact not appropriate for determination [on a motion to dismiss]." *Williams*, 552 F.3d at 938; *Davis*, 691 F.3d at 1162; *Lilly*, 743 F.3d at 665. District Courts in this Circuit routinely reject the dismissal of claims for failing to satisfy the reasonable consumer test. *See, e.g.*, *Henderson v. J.M. Smucker Co.*, No. CV-10-4524-GHK-VBK, 2011 WL 1050637, at *4 (C.D. Cal. Mar. 17, 2011) (rejecting argument "that since partially hydrogenated vegetable oil, which contains trans fat, is disclosed as one of the ingredients in its products, no reasonable consumer could be misled" and noting that "[a]lthough this factor may be relevant in the fact-intensive reasonable consumer analysis, *Williams* instructs that such reasoning

-14-

cannot be the basis for granting a motion to dismiss."); *Martin v. Tradewinds Beverage Co.*, No. CV16-9249 PSG (MRWX), 2017 WL 1712533, at *9 (C.D. Cal. Apr. 27, 2017), *on reconsideration*, No. 16-CV-9249 PSG (MRW), 2018 WL 313123 (C.D. Cal. Jan. 4, 2018) (rejecting argument "that no reasonable consumer could be deceived by the '100% Natural' label because an examination of the ingredient list on the back side of the packaging reveals that the product contains a color additive."); *Andriesian v. Cosmetic Dermatology, Inc.*, No. 3:14-CV-01600-ST, 2015 WL 1638729, at *5 (D. Or. Mar. 3, 2015), *report and recommendation adopted*, No. 3:14-CV-01600-ST, 2015 WL 1925944 (D. Or. Apr. 28, 2015) (rejecting argument "that a reasonable consumer could not be misled because the allegedly oil-based ingredients were plainly listed on the product's label."); *Hall v. Diamond Foods, Inc.*, No. C-14-2148 MMC, 2014 WL 5364122, at *4 (N.D. Cal. Oct. 21, 2014) ("Accordingly, the claims based on Reduced Fat Sea Salt Chips are not subject to dismissal for failure to allege sufficient facts to satisfy the reasonable consumer test.").

Defendants further argue, in a footnote, that Plaintiff's claims under the UCL "unlawful" and "unfair" prongs should be dismissed. Defs.' Mem. at 13 n. 2. "To be 'unlawful' under the UCL, the advertisements must violate another 'borrowed' law." *Davis*, 691 F.3d at 1168 (citing *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180, 973 P.2d 527, 539–40 (1999) ("'[S]ection 17200 'borrows' violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable.") (citations omitted)). "[V]irtually any state, federal or local law can serve as the predicate for an action under section 17200." *Davis*, 691 F.3d at 1168 (citations omitted). Here, Plaintiff alleges that Defendants have violated the Sherman Law and its incorporated federal regulations. Compl., ¶¶ 138-139. Thus, Plaintiff has stated a claim under the UCL "unlawful" prong. With respect to Plaintiff's claim under the UCL "unfair" prong, Defendants advance no arguments as to why Plaintiff's claims would fail. *See*

-15-

1  *Kellogg*, 2018 WL 1158885, at *4 ("Because Kellogg failed to advance any

2  argument that [plaintiff's] complaint does not meet the recognized tests [under the

3  UCL unfair prong], the Court declines discussing them now."). Therefore,

4  Defendants' Motion to Dismiss Plaintiff's UCL, FAL, and CLRA claims should be

5  denied.

6  **C.   Plaintiff States a Claim for Breach of Warranties**

7         Defendants next argue that Plaintiff's claims for breach of express and implied

8  warranties should be dismissed. Defs.' Mem. at 14. "In order to plead a cause of

9  action for breach of express warranty, one must allege the exact terms of the

10 warranty, plaintiff's reasonable reliance thereon, and a breach of that warranty which

11 proximately causes plaintiff injury." *Williams v. Beechnut Nutrition Corp.*, 185 Cal.

12 App. 3d 135, 142 (1986); *see also* Cal. Comm. Code § 2313(1)(a). Moreover, "[t]he

13 implied warranty of merchantability 'is breached when the goods do not conform to

14 the promises or affirmations contained on the container or label or are not fit for the

15 ordinary purposes for which the goods are used.'" *Martinez v. Metabolife Int'l, Inc.*,

16 113 Cal. App. 4th 181, 189 (Ct. App. 2003) (citation omitted).

17        Here, Plaintiff states a claim for both breach of express and implied

18 warranties. With respect to her claim for breach of express warranty, Defendants

19 have represented that the Products contain "NO ARTIFICIAL FLAVORS" (Compl.,

20 ¶ 47) and Defendants breached this warranty because the Products contain an

21 artificial flavoring ingredient called d-l malic acid.  Compl., ¶¶ 170-174. These

22 allegations are sufficient at the pleadings stage. *See Frito-Lay*, 2018 WL 1185227,

23 at *6. ("Plaintiffs have pled the elements of their claim for breach of express

24 warranty because they have alleged the statements made on the Product packaging

25 promised there were 'no artificial flavors;' they have alleged they reasonably relied

26 on these statements; and they have alleged that the Product did not provide what was

27 promised."); *Kellogg*, 2018 WL 1158885, at *5 ("Whether the label actually

28 provided a warranty and is likely to deceive a consumer are not appropriate questions

-16-

1    to decide on a dismissal motion."). Plaintiff has also stated a claim for breach of

2    implied warranty. *See Frito-Lay*, 2018 WL 1185227, at *6; *Kellogg*, 2018 WL

3    1158885, at *6. Therefore, Defendants' Motion to Dismiss Plaintiff's warranty

4    claims should be denied.

5    **D.   Plaintiff States Independent Claims Against the Advertising and**
     **Licensor Defendants**

6

7         Defendants next argue that Plaintiff's claims against McCann and Saatchi

8    (the "Advertising Defendants")—and Warner Brothers, Universal, Viacom, and

9    LucasFilm (the "Licensor Defendants") should be dismissed. Defs.' Mem. at 16.

10   Plaintiff alleges that McCann and Saatchi were "the principal advertising [agencies]

11   responsible for the false and misleading Product labels during part of the Class

12   Period." Compl., ¶¶ 24, 26. The complaint alleges that Warner Brothers "licenses

13   the Scooby-Doo character to General Mills" (Compl. ¶ 28), that Universal "licenses

14   Despicable Me characters to General Mills" (Compl., ¶ 31), that Viacom "licenses

15   the Dora the Explorer characters to General Mills" (Compl., ¶ 34), and that

16   Lucasfilm "licenses the Star Wars likeness characters to General Mills" (Compl., ¶

17   37), Plaintiff alleges that "[d]ue to the pervasive presence of these characters in the

18   Product's marketing and labeling, [the Licensor Defendants are] alleged under

19   California law to have both enterprise and apparent-manufacturer liability." Compl.,

20   ¶¶ 29, 32, 35, & 39.

21        The UCL, FAL, and CLRA are broadly written and do not limit liability to a

22   particular category of defendants. *See* Cal. Civ. Code § 1770(a) (making unlawful

23   deceptive acts or practices undertaken by "*any person* in a transaction...which results

24   in the sale or lease of goods or services to any consumer") (emphasis added); *id.* §

25   1760 ("[The CLRA] shall be liberally construed and applied to promote its

26   underlying purposes, which are to protect consumers against unfair and deceptive

27   business practices."); Cal. Bus. & Prof. Code § 17500 ("It is unlawful for *any person*,

28   firm, corporation or association…[to engage in false advertising practices].")

-17-

(emphasis added); *Paduano v. Am. Honda Motor Co.*, 169 Cal. App. 4th 1453, 1468 (2009) ("California courts have consistently interpreted the language of [the UCL] broadly.").

"The UCL . . . includes any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by the false advertising law.'" *Id.* (quoting Cal. Bus. & Prof. Code § 17200). "The UCL provides a separate theory of liability under the "unlawful," "unfair," or "fraudulent" prongs. *Stanwood*, 941 F. Supp. 2d at 1222 (citing *Lozano*, 504 F.3d at 731); *see also In re Tobacco II Cases*, 46 Cal. 4th at 319 (quoting Cal. Bus. & Prof. Code § 17203). Both the "unlawful" and "unfair" prongs of the UCL make violations of other laws of the United States including, of particular interest here, consumer protection and unfair competition laws, also violations of California law. *Davis*, 691 F.3d at 1162. Relatively recent but already clearly established developments in both areas of law make it clear that the Advertiser and Licensor Defendants are both independently liable for the alleged violations of the UCL as well as the FAL and CLRA.

Forbidden unlawful acts under the UCL include anything that properly can be called a business practice or act that is "forbidden by law." *Farmers Ins. Exch. v. Superior Court of Los Angeles County*, 2 Cal. 4th 377, 400 (1992). A violation of federal law can serve as a predicate for violation of the UCL. *See, e.g., Andrews v. Trans Union Corp.*, 7 F. Supp. 2d 1056 (C.D. Cal. 1998) (violation of Fair Credit Reporting Act also proves a UCL claim); *Schwartz v. Upper Deck Co.*, 967 F. Supp. 405 (S.D. Cal. 1997) (denying motion to dismiss and holding that unlawful business practices under the UCL can be violations of civil, criminal, state, federal, municipal or court-made law; predicate law need not be a California statute or provide for civil enforcement).

Similarly, the California Court of Appeal has held that a business act or practice is "unfair" under the UCL if "it offends an established public policy or . . .

*Hilsley v. General Mills, Inc., et al.*, Case No. 3:18-cv-00395-L-BLM
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Saunders v. Superior Court (Los Angeles)*, 27 Cal. App. 4th 832, 839 (1994). A violation of U.S. Federal Trade Commission regulations can serve as a predicate for the finding of both an "unlawful" and an "unfair" UCL violation.  *See, e.g., Bondanza v. Peninsula Hosp. and Med. Ctr.*, 23 Cal. 3d 260 (1979) (practice may be both unlawful and unfair under UCL) (relying on *FTC v. Sperry & Hutchinson Co.*, 405 U.S. at 244).

It is thus black letter California law that alleged violations of the Federal Lanham Act, 15 U.S.C. §§ 1125 *et seq.*, if proven, would also constitute violations of California's UCL. *Cleary v. News Corp.*, 30 F.3d 1255 (1994) (actions pursuant to UCL are "substantially congruent" to claims made under the Lanham Act); *Chronicle Publ'g Co. v. Chronicle Publ'ns, Inc.*, 733 F. Supp. 1371 (N.D. Cal. 1989) (claim that defendant unfairly competed in violation of UCL is virtually identical to unfair competition claims under the Lanham Act); *Plasticolor Molded Prods. v. Ford Motor Co.*, 713 F. Supp. 1329 (C.D. Cal. 1989) (notes that analysis of an unfair competition claim under the UCL tracks analysis of the Lanham Act claim); *see also United Parcel Serv., Inc. v. Package Am., Inc.*, 1996 U.S. Dist. LEXIS 8148 (N.D. Cal. 1996) (plaintiffs likely to prevail on Lanham Act claim were likely to prevail on UCL claim, as well, since claims are "substantially congruent"); *Karl Storz Endoscopy Am., Inc., v. Surgical Techs., Inc.*, 285 F.3d 848 (9th Cir. 2001) (reversing district court's grant of summary judgment for defendant, as plaintiff raising a triable argument for Lanham Act violation necessarily also states a UCL claim).

It is clear therefore that if the Advertising and Licensor Defendants violated the Lanham Act as interpreted by the U.S. FTC, they also are liable for violations of California's UCL, *Bondanza*, 23 Cal. 3d at 260, and these Defendants are all clearly alleged to have committed Lanham Act violations, per FTC interpretation (which is entitled to *Chevron* deference by this Court).  *See Chevron, U.S.A., Inc. v. Nat. Res.*

-19-

1   *Def. Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984).

2   FTC precedent clearly establishes that an advertising agency may be held

3   liable under both Federal Trade Commission false advertising regulations and under

4   the Lanham Act.  *See, e.g., In the Matter of TBWA WORLDWIDE, INC.*,  FTC File

5   No. 122-3010, May 1, 2014, (finding advertising agency TBWA/Chiat Day liable

6   for creating false advertising of trucks); *see also Duty Free Americas, Inc. v. Estee*

7   *Lauder Co., Inc.,* 797 F.3d 1248, 1276 (11th Cir. 2015) (a party that participates

8   materially in the creation of false advertising can be held liable under the Lanham

9   Act). The Eleventh Circuit analyzed contributory advertising agency liability as

10   consistent with the Supreme Court's jurisprudence recognizing the doctrine in

11   trademark cases such as *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844

12   (1982).  The Eleventh Circuit concluded, "[i]t would be odd indeed for us to narrow

13   the scope of the false advertising provision—a cause of action plainly intended to

14   encompass a broader spectrum of protection—and hold that it could be enforced

15   only against a smaller class of defendants." *Duty Free Americas, Inc.,* 797 F.3d at

16   1276 (noting that "U.S. district courts routinely assume contributory liability claims

17   are available"); *see also Societé des Hotels Meridien v. LaSalle Operation P'ship,*

18   *L.P.*, 380 F.3d 126 (2d Cir. 2004) (recognizing contributory false advertising

19   liability).

20   Even absent their alleged role as apparent manufacturers and joint-enterprise

21   advertisers, Licensors too will be held directly liable for false advertising under FTC

22   regulations and enforcement practice. In *FTC v. Chinery*, the FTC found that a

23   licensor would be held liable for the product's false advertising because had the

24   licensor reviewed the advertising materials, this could have given the licensor the

25   requisite knowledge of the misleading claims. No. CIV.05-3460 GEB, 2007 WL

26   1959270, at *4 (D. N.J. July 5, 2007); *see also FTC v. Fitness Brands, Inc., et al*.

27   CASE NO. 12-23065-CIV-ALTONAGA, (S.D. Fla., Aug. 28, 2012) (infomercial

28   advertising producer liable for false content of ads).

-20-

The FTC, in fact, has ruled that entities may be held secondarily liable for false advertising simply if they <u>fail to review</u> advertising claims which they participate in creating. *See, e.g., id.* Because of this, a leading defense law firm currently recommends that to avoid liability all of its advertising-industry clients "always make a good faith attempt to request and review substantiation materials before you publish, advertise, distribute or sell a particular product."[1]

Here, the Advertising Defendant(s), who are alleged to be the <u>creative</u> agencies for the Products' package labels and advertising claims (as opposed to an advertising entity performing market research, for example, or media buys) are plausibly alleged to be the entities that actually wrote and approved the false labeling and advertising during the proposed Class period. Compl., ¶¶ 29, 32, 35, & 39. "The primary evidence in a false advertising case is the advertising itself." *Brockey*, 107 Cal. App. 4th at 100, and McCann and Satchi are plausibly alleged to have personally created that false advertising. These defendants are thus directly liable under California law for those violations. *See Woodard v. Labrada*, No. EDCV160189JGBSPX, 2017 WL 1018307, at *8 (C.D. Cal. Mar. 10, 2017) (holding that allegations against media defendants for false advertising of weight loss products on the Dr. Oz Show were sufficient under California's consumer protection laws).

Similarly, to state a claim for false advertising under California's FAL law, the plaintiff need only show that (1) the statements in the advertising are untrue or misleading and (2) the defendants knew, or by the exercise of reasonable care should have known, that the statements were untrue or misleading. *People v. Lynam*, 253 Cal. App. 2d 959, 965 (1967). A defendant's knowledge of the falsity of the

---

[1] *The Scope of Liability for False Advertising Claims*; R. Shaheen, A. Mudge, M. Marcheski, (Oct. 19, 2012), *available at* https://www.allaboutadvertisinglaw.com/2012/10/the-scope-of-liability-for-false-advertising-claims.html (last visited April 22, 2018).

advertisement is not an element of a Section 17500 offense, as this law prohibits both negligent and intentional creation or dissemination of misleading advertising. *Feather River Trailer Sales, Inc. v. Sillas*, 96 Cal. App. 3d 234, 247 (1979); *Khan v. Med. Bd*., 12 Cal. App. 4th 1834, 1846 (1993).

Under California law, the Advertiser and Licensor Defendants therefore have both direct and secondary liability for the alleged false advertising under the FAL as well as the UCL. *See, e.g., People v. Toomey*, 157 Cal. App. 3d 1, 14 (1985). California courts have generally recognized six forms of secondary liability, including: aiding and abetting, agency, conspiracy, furnishing the means for another's violations, respondeat superior, and alter ego. *See generally*, Rutter Group, Unfair Business Practices and False Advertising, Bus. & Prof. Code §17200, §§ 6:6-6:51; *Plascencia v. Lending 1st Mortg.,* 583 F. Supp. 2d 1090, 1099 (N.D. Cal. 2008). In the instant action, the advertising and licensor Defendants may be found liable both directly as creators and as reviewers of the false advertising, *FTC v. Fitness Brands, Inc*., and secondarily as either aiders and abettors, as agents of the manufacturer, or for furnishing the means for those violations. *Plascencia, supra*.

Illustrating this point is *Nestlé Purina Petcare Co. v. Blue Buffalo Co. Ltd*. No. 4:14 CV 859 RWS, 2015 U.S. Dist. LEXIS 51273, at *10-13 (E.D. Mo. Apr. 20, 2015). The *Blue Buffalo* court found that advertising agencies who merely participated in the creation of false advertising, without more, could be held liable for that advertising's violations of the Lanham Act, even if the agency had no actual knowledge of the advertisement's falsity. Section 43(a) of the Lanham Act provides that:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any . . . false or misleading description of fact, or false or misleading representation of fact, which—
>
> . . . .
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her <u>or another person's</u>

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

goods . . . [] shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

The *Blue Buffalo* court held that liability under the Lanham Act is not limited to entities "who commission false advertisements. Rather, those who work with competitors to produce false advertisements may also be liable under the Lanham Act." *Id.*, *citing Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1392 (2014).

The *Blue Buffalo* court reviewed Lanham Act cases nationwide and found that although there was "not much case law discussing the liability of advertising and public relations agencies for Lanham Act false advertising violations . . . . a handful of district courts around the county have addressed this issue, and these courts have held that advertising agencies may be liable under the Lanham Act." *Id., citing In re Century 21-RE/MAX Real Estate Adver. Claims Litig.,* 882 F. Supp. 915, 924-25 (C.D. Cal. 1994) (interpreting an earlier version of Lanham Act that included a scienter requirement); *see also Maybelline Co. v. Noxell Corp.*, 813 F.2d 901 (8th Cir. 1987) (holding advertising agency co-defendants who had carried out advertising campaign for manufacturer were also liable under the Lanham Act). The Advertising Defendants in *Blue Buffalo*, in fact, conceded that advertising agencies may be held liable under the Lanham Act, but argued that liability could only be found where the ad agency "was an active participant in the preparation of the ad" and "knew or had reason to know that it was false or deceptive." *Id*. The Court found otherwise, as the Advertising Defendants cited to an older version of the Lanham Act that included a scienter requirement. *Id*. The Lanham Act as currently amended includes no such requirement. 15 U.S.C. § 1125.

As in *Blue Buffalo*, if the Plaintiff's allegations here prove out, the Advertising Defendants would undoubtedly be liable for violations of the Lanham Act's prohibitions against false advertising, irrespective of whether those defendants knew

-23-

the advertising was false or not, *Blue Buffalo, supra*, and for violations of FTC false advertising regulations as well. *See Chinery*, 2007 WL 1959270, at *4. Given that, these Advertising Defendants are, under California law, also potentially liable for the UCL violations alleged because those UCL violations track and are "substantially congruent" with Lanham Act false advertising violations. *See, e.g., Karl Storz Endoscopy Am., Inc..,* 285 F.3d 848 (9th Cir. 2001) (plaintiff raising a triable claim with respect to Lanham Act necessarily also states a UCL claim). The same is true for false advertising violations under FTC enforcement authority and FAL claims under California law. *Arevalo*, 850 F. Supp. 2d at 1023-24, *supra*, *citing* Cal. Bus. & Prof. Code § 17500.

The Advertiser Defendants' motion to dismiss therefore simply fails. Plaintiff has plausibly alleged conduct by these defendants in both in the creation and ostensible review of the false advertising that, if proven, would constitute violations of the Lanham Act as well as FTC regulations. Plaintiff has therefore sufficiently alleged liability under the UCL, FAL, and CLRA for the Advertiser defendants as well. *Chinery; Blue Buffalo, supra*.

The Licensor Defendants are similarly alleged to be directly and personally liable as apparent manufacturers of the Products, as well as under FTC authority and recent precedent for their ability review the false advertising, *Chinery*; *Blue Buffalo*; *supra*, and secondarily liable both as aiders and abettors and for furnishing means to assist in the false advertising. *See, e.g., Rutter, supra; Chinery, supra*. These Defendants also raise no valid ground for dismissal.

Defendants rely extensively on the 2002 California appellate case *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 960 (2002), for the principle that vicarious liability is unavailable under California consumer protection law. Defs.' Mem. at 16, 17, 18, 19, and 20. In 2013 the California appellate court declared *Emery* no longer good law for the principle that Defendants cite. *People v. JTH Tax, Inc*., 212 Cal. App. 4th 1219, 1242, 151 Cal. Rptr. 3d 728, 747-48 (2013). The *JTH* court

-24-

observed in 2013 that California's Supreme Court had held, "without the limitations urged by [defendants,]" that section 17500 [(the FAL)] currently "incorporates the concept" of vicarious liability. *Id*. The defendant in *JTH* cited *Emery* to argue that California courts should decline to impose vicarious liability in false advertising cases. The Appellate Court disagreed, holding that California false advertising law does apply vicarious liability and, "to the extent that *Toomey, supra*, 157 Cal.App.3d 1, or *Emery, supra*, 95 Cal.App.4th 952 hold otherwise . . .  these cases are mistaken." *Id*.; *see, also*, *Henry v. Lehman Commer. Paper, Inc.*, 471 F.3d 977, 996 (9th Cir. 2006) (rejecting defendants' "unbridled control" theory and holding that liability under the UCL "is broader than the [*Emery*] district court interpreted it to be[.]")

Even if *Emery* were still good law, which it is not, Plaintiff alleges that under California law both the Advertiser and Licensor Defendants participated personally in the false advertising, as held by the District and Circuit Court cases and FTC enforcement actions cited above.  The Licensor Defendants did not need to "develop the allegedly misleading label claims" as Defendants argue relying on *Emery*, Defs.' Mem. at 19, in order to have liability for them under California law.[2]

## V.    <u>CONCLUSION</u>

For the reasons set forth herein, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss in its entirety. If the Court dismisses any portion of the complaint, Plaintiff respectfully requests leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

---

[2] With respect to the apparent-manufacturer liability that Defendants dispute, it is not the Product but its packaging that is alleged to violate the law. Defendants' defective-product, product liability cases are therefore inapposite. A reasonable consumer inspecting this packaging would find the Licensor Defendants' insignia splashed over 99% of the advertising area, with the true manufacturer's identity relegated to minuscule print in one tiny side-panel box. Licensor Defendants are the apparent manufacturers and these labels, which Licensor Defendants are responsible for under California law, *see Chinery; Fitness Brands, supra*, are the violative conduct alleged here, not the allegedly dangerous products inside as in Defendants' cited cases. See Defs.' Mem. at 24 (again, citing *Emery*).

-25-

1    Dated:    April 23, 2018      Respectfully submitted,

2

3

4                              */s/ Ronald A. Marron*

5                                 Ronald A. Marron

6                            **LAW OFFICES OF RONALD A.**

7                            **MARRON, APLC**

                           RONALD A. MARRON

8                            MICHAEL HOUCHIN

9                            651 Arroyo Drive

10                          San Diego, California 92103

                         Telephone: (619) 696-9006

11                          Facsimile: (619) 564-6665

12                          **LAW OFFICE OF DAVID ELLIOT**

13                          DAVID ELLIOT (SBN 270381)

14                          *davidelliot@elliotlawfirm.com*

                         2028 3rd Avenue

15                          San Diego, CA 92101

16                          Telephone: (858) 228-7997

17                          ***Attorneys for Plaintiff and the Proposed Class***

18

19

20

21

22

23

24

25

26

27

28

*Hilsley v. General Mills, Inc., et al.*, Case No. 3:18-cv-00395-L-BLM
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS