1
2
3
4
5
6
7
8
9
10
11
12
13

**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
MICHAEL T. HOUCHIN (SBN 305541)
*mike@consumersadvocates.com*
LILACH HALPERIN (SBN 323202)
*lilach@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone:(619) 696-9006
Facsimile: (619) 564-6665

**THE ELLIOT LAW FIRM**
DAVID ELLIOT (270381)
*davidelliot@elliotlawfirm.com*
2028 3rd Avenue
San Diego, CA 92101
Telephone: (619) 468-4865
***Attorneys for Plaintiffs and the Proposed Class***

14
15
16

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| CRYSTAL HILSLEY, ADRIENNE MORRIS, NIKKI COOK, and DAVID CHRISTENSEN on behalf of themselves, and all others similarly situated,<br><br>            Plaintiffs,<br><br>      v.<br><br>GENERAL MILLS, INC. and GENERAL MILLS SALES, INC.,<br><br>            Defendants. | Case No.: 3:18-cv-00395-L-BLM<br><br>CLASS ACTION<br><br>**FIRST AMENDED COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

**INTRODUCTION**

1.     Plaintiffs Crystal Hilsley, Adrienne Morris, Nikki Cook, and David Christensen, by and through their undersigned counsel, hereby bring this action against Defendants General Mills, Inc. and General Mills Sales, Inc. (collectively "Defendants" or "General Mills"), and upon information and belief and investigation of counsel, allege as follows:

**JURISDICTION AND VENUE**

2.     This Court has original jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). The Defendants are citizens of a state different from that of the Plaintiffs, the putative class size is greater than 100 persons, and the amount in controversy in the aggregate for the putative Class exceeds the sum or value of $5 million exclusive of interest and costs.

3.     The Court has jurisdiction over the state law claims because they form part of the same case or controversy under Article III of the United States Constitution.

4.     The Court has personal jurisdiction over Defendants because their Fruit Snack Products are advertised, marketed, distributed and sold throughout the State of California; Defendants engaged in the wrongdoing alleged in this Complaint throughout the United States, including in the State of California; Defendants are authorized to do business in the State of California; and Defendants have sufficient minimum contacts with the State of California, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendants are engaged in substantial activity within the State of California.

5.     Venue is proper in the United States District Court for the Southern District of California pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred within this judicial district, Defendants

*Hilsley v. General Mills, Inc.,* Case No. 3:18-cv-00395-L-BLM
FIRST AMENDED CLASS ACTION COMPLAINT

have marketed and sold the Fruit Snack Products at issue in this judicial district, and they conduct business within this judicial district. Plaintiff Crystal Hilsley also purchased the Products within this District.

## NATURE OF THE ACTION

6.   Defendants manufacture, package, label, distribute, advertise, market, and sell a variety of fruit-flavored snack products. Defendants fruit-flavored snack products are sold under a variety of brand names, including Gushers, Fruit by the Foot, Fruit Roll Ups, Sunkist Fruit Flavored Snacks, Fiber One Fruit Flavored Snacks, Motts Fruit Flavored Snacks, DC Superhero Girls Fruit Flavored Snacks, Star Wars Fruit Flavored Snacks, Scooby Doo Fruit Flavored Snacks, Dora and Friends Fruit Flavored Snacks, Hello Kitty Fruit Flavored Snacks, The Secret Life of Pets Fruit Flavored Snacks, Pokemon Fruit Flavored Snacks, Ninja Turtles Fruit Flavored Snacks, Thomas the Train Fruit Flavored Snacks, Trolls Fruit Flavored Snacks, Teen Titans Fruit Flavored Snacks, Hotel Transylvania Fruit Flavored Snacks, Spongebob Fruit Flavored Snacks, Shimmer and Shine Fruit Flavored Snacks, Shark Bites Fruit Flavored Snacks, Disney Fruit Flavored Snakes, Minions Fruit Flavored Snacks, Disney Toy Story Fruit Flavored Snacks, Disney Frozen Fruit Flavored Snacks, and Jurassic World Fruit Flavored Snacks.

7.   A complete list of the fruit flavored snack products at issue in this litigation is attached hereto as Exhibit 1. The Products listed in Exhibit 1 are collectively referred to as the "Products."

8.   The Products' labeling and advertising is false and misleading and the Products are misbranded under state and federal law.

9.   The Products are labeled as if they contain only natural ingredients and are flavored only with natural ingredients when the Products in fact contain undisclosed artificial flavors in violation of state and federal law.

10.     Defendants' packaging, labeling, and advertising scheme is intended to give consumers the impression that they are buying a premium, 'all natural' product with natural flavoring ingredients instead of a product that is artificially flavored.

11.     Plaintiffs, who were deceived by Defendants' unlawful conduct and purchased the Products, bring this action on their own behalf and on behalf of consumers nationwide to remedy Defendants' unlawful acts.

## PARTIES

12.     Defendant General Mills, Inc. ("General Mills") is the actual Product manufacturer. General Mills is a Delaware corporation with its principal place of business in Minneapolis, Minnesota. General Mills is registered with the California Secretary of State to do business in California under entity number C0132672.

13.     Defendant General Mills Sales, Inc. ("GM Sales") is the actual Product distributor. GM Sales is a Delaware corporation with its principal place of business in Minneapolis, Minnesota. GM Sales is registered with the California Secretary of State to do business in California under entity number C1969122.

14.     Plaintiff Crystal Hilsley is a citizen of the State of California and resides in San Diego County, California. Plaintiff Hilsley purchased several varieties of the Products multiple times in San Diego and southern California for personal and household consumption.

15.     Plaintiff Adrienne Morris is a citizen of the State of California and resides in Costa Mesa, California. Plaintiff Morris purchased Mott's Fruit Snack Products for personal and household consumption during the Class Period in California.

16.     Plaintiff Nikki Cook is a citizen of the State of California and resides in Loma Linda, California. Plaintiff Cook purchased Mott's Fruit Snack Products for personal and household consumption during the class period in California.

*Hilsley v. General Mills, Inc.,* Case No. 3:18-cv-00395-L-BLM
FIRST AMENDED CLASS ACTION COMPLAINT

1    17.    Plaintiff David Christensen is a citizen of the State of Minnesota and
2  resides in Bloomington, Minnesota. Plaintiff Christensen purchased several varieties
3  of the Products multiple times in Minnesota during the class period for personal and
4  household consumption.

5                         **FACTUAL ALLEGATIONS**
6  **Defendants Do Not Disclose that the Products Contain Artificial Flavors.**

7    18.    The Products all contain artificial flavors, but Defendants do not
8  disclose this to consumers; they label and advertise the Products as if they were only
9  naturally-flavored.

10    19.    Below are true and accurate representations of the front-of-package
11  labeling for some of the Products at issue:

12  **Scooby-Doo Fruit Flavored Snacks**



**Mott's Fruit Flavored Snacks**



**Fruit Gushers Fruit Flavored Snacks**



5

**Fruit by the Foot Fruit Flavored Snacks**



**Fruit Roll-Ups Fruit Flavored Snacks**



6

20.   The labels of the Products claim that the Products contain "NO ARTIFICIAL FLAVORS."

21.   This is false.

22.   The Products all contain a synthetic flavoring chemical identified in the ingredient list as "malic acid."

23.   This "malic acid" is a synthetic petrochemical that confers a "tart, fruit-like" flavor and simulates the flavor of actual fruit.

24.   The Products' labels violate federal and state law in multiple regards.

25.   First, because the Products contain artificial flavoring ingredients that simulate and reinforce the characterizing flavor, the front label is required by law to disclose those additional flavors rather than state, as it does, that the Products are naturally flavored. Cal. Health & Saf. Code §109875 et seq, (Sherman Law), incorporating 21 CFR 101.22.[1]

26.   The Products' labels state that they are "Naturally Flavored." By operation of law, this label falsely informs consumers that the Products are flavored only with natural ingredients.

27.   Further, the Products' ingredient list violates state and Federal law because it misleadingly identifies the malic acid ingredient only as the generic "malic acid" instead of using the specific, non-generic name of the ingredient. *See* 21 CFR 101.4(a)(1).

28.   Far more deceptive, however, is the fact that the Products claim on the label that they contain "NO ARTIFICIAL FLAVORS."

---

[1] California's Sherman Food, Drug, and Cosmetic Act, Cal. Health & Saf. Code §109875 et seq, incorporates into California law all regulations enacted pursuant to the U.S. Food Drug and Cosmetic Act. An act or omission that would violate an FDCA regulation necessarily therefore violates California's Sherman Law. Id. at §110100. Regulatory citations in the text are to California's Sherman Law and reference the corresponding federal regulation for convenience.

7

29.     The Products all contain an artificial flavor made from petrochemicals.

30.     Defendant General Mills includes the industrial chemical dl-malic acid[2] in the Products, in a racemic mixture of d- and l-isomers. This ingredient helps make the Products – which are over 50% corn syrup and sugar – taste more like fruit.

31.     This 'malic acid' is not a naturally-occurring compound but is in fact manufactured in petrochemical plants from benzene or butane—components of gasoline and lighter fluid, respectively—through a series of chemical reactions, some of which involve highly toxic chemical precursors and byproducts.

32.     Both the natural and unnatural forms of malic acid are considered GRAS (generally recognized as safe) for use as flavorings; the d-malic acid form, however, has never been thoroughly studied for its health effects in human beings.

33.     Both forms provide a "tart, fruity" flavor when added to food products.[3]

34.     Defendants use the artificial form, dl-malic acid, but pretend otherwise, conflating the natural and the artificial flavorings and deceiving consumers.

35.     Because the Products contain an artificial flavoring chemical, federal and state law require both front- and back-label disclosures to inform consumers.

36.     They have neither.

37.     The labels in fact falsely advertise "NO ARTIFICIAL FLAVORS."

38.     California law, incorporating U.S. Food, Drug, and Cosmetic Act regulations by reference, requires that a food's label accurately describe the nature of the food product and its characterizing flavors. 21 C.F.R. 102.5(a).

39.     Under FDA regulations, a recognizable primary flavor identified on the front label of a food Products are referred to as a "characterizing flavor". 21 CFR 101.22.

---

[2] D-malic acid is also called d-hydroxybutanedioic acid or (R)-(+)-2-Hydroxysuccinic acid.

[3] https://thechemco.com/chemical/malic-acid/; visited 04/12/17.

8

40.   FDA regulations and California law hold that if "the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means" then such flavor is considered the "characterizing flavor." 21 C.F.R. 101.22(i).

41.   "Fruit-flavored" is a primary recognizable flavor identified on the Products' front labels. This is therefore a characterizing flavor under California and federal law.

42.   If a product's characterizing flavor is not created exclusively by the characterizing flavor ingredient, the product's front label must state that the product's flavor was simulated or reinforced with either or both of natural or artificial flavorings. If any artificial flavor is present which "simulates, resembles or reinforces" the characterizing flavor, the food must be prominently labeled as "Artificially Flavored." 21 C.F.R. 101.22(i) (3), (4).

43.   A food product's label also must include a statement of the "presence or absence of any characterizing ingredient(s) or component(s) . . . when the presence or absence of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance . . . and consumers may otherwise be misled about the presence or absence of the ingredient(s) or component(s) in the food." 21 C.F.R. 102.5(c).

44.   Such statements must be in boldface print on the front display panel and of sufficient size for an average consumer to notice. *Id*.

45.   The Products' synthetic dl-malic acid simulates, resembles, and reinforces the characterizing fruit flavor for the Products.

46.   Under these regulations, Defendants were required to display prominently on the Products' front labels a notice sufficient to allow consumers to understand that the Products contained artificial flavoring.

47.   Defendants failed to do so, deceiving consumers and violating state and federal law.

48.   Accordingly, Plaintiffs were unaware that the Products contained artificial flavoring when they purchased them.

49.   When purchasing the Products, Plaintiffs were seeking a product of particular qualities, one that was flavored only with the natural ingredients claimed on the label and which did not contain artificial flavoring.

50.   Plaintiffs are not alone in these purchasing preferences. As reported in Forbes Magazine, 88% of consumers polled recently indicated they would pay more for foods perceived as natural or healthy. "All demographics [of consumers]—from Generation Z to Baby Boomers—say they would pay more" for such products, specifically including foods with no artificial flavors.[4]

51.   Defendant General Mills itself recently conducted a consumer survey and found that "more than 50 percent of people eating fruit flavored snacks today said they would be more likely to buy them if artificial flavors and colors from artificial sources were removed."[5]

52.   Defendants thereupon began advertising the Products as having "No Artificial Flavors" – they didn't remove the artificial flavor, they just didn't disclose it to consumers.

53.   California's Health & Safety Code states that "Any food is misbranded if it bears or contains any artificial flavoring, artificial coloring, or chemical preservative, unless its labeling states that fact." Cal. Health & Saf. Code §110740.

---

[4] "Consumers Want Healthy Foods]—And Will Pay More For Them"; Forbes Magazine, February 15, 2015.
https://www.forbes.com/sites/nancygagliardi/2015/02/18/consumerswant-healthy-foods-and-will-pay-more-for-them/#4b8a6b4b75c5 (visited April 7, 2017.)

[5] https://blog.generalmills.com/2015/08/a-natural-move-for-fruit-flavoredsnacks/?_ga=2.178513316.1841148333.1512350752-1902063439.1511230850; (last visited December 3, 2017).

*Hilsley v. General Mills, Inc.*, Case No. 3:18-cv-00395-L-BLM
FIRST AMENDED CLASS ACTION COMPLAINT

54.    California law required Defendants to include sufficient notice on the Products' labels to alert California consumers that the Products are artificially flavored.

55.    Defendants failed to do so.

56.    Plaintiffs and the Class lost money as a result of Defendants' conduct because they were induced to purchase Products that contained undisclosed artificial flavors and to pay a price premium for those Products.

57.    John Compton, the CEO of a competing snack food manufacturer, spoke to investors at the Morgan Stanley Consumer & Retail Conference, stating, "We have talked extensively to consumers about this idea, and they come back and tell us the number one motivation for purchase is products that claim to be all natural."

58.    Defendants' labeling and advertising reflects those consumer preferences – not by making the Products solely with natural ingredients, but instead by concealing the fact that the Products are artificially flavored.

59.    Each of these Products contains the artificial flavoring chemical dl-malic acid but promises "NO ARTIFICIAL FLAVORS" on the package label. Each is therefore falsely and deceptively labeled and advertised and misbranded under state and federal law.

60.    Each of the Product's labels deceived consumers into paying a price premium for an artificially-flavored product that was worth less than the naturally-flavored product promised by the labels.

**Defendants' Competitors Label Their Products Lawfully**

61.    Defendants not only deceive consumers but also gain an unfair commercial advantage in the marketplace by labeling the Products deceptively.

62.    Manufacturers of competing products label their products lawfully.

*Hilsley v. General Mills, Inc.*, Case No. 3:18-cv-00395-L-BLM
FIRST AMENDED CLASS ACTION COMPLAINT

63.    Welch's and Kellogg, for example, lawfully label their artificially-flavored fruit snacks as "Artificially Flavored."

64.    Other competing major manufacturers, offering products whose labels suggest, as Defendants' do, that their products are naturally flavored truly are flavored only with natural ingredients.

65.    Defendants, however, conceal their use of artificial flavoring, deceiving consumers, illegally cutting costs and increasing profits, and competing unfairly and unlawfully in the marketplace, hurting their competitors as well as consumers.

66.    Defendants' conduct injures competing manufacturers that do not engage in the same illegal behavior. These manufacturers compete for market share and limited shelf space, as well as for consumers' buying preferences and dollars.

67.    Defendants' competitors do so lawfully. Defendants do not.

**Plaintiffs' and the Class' Purchases of the Products**

68.    Plaintiff Hilsley purchased multiple Products in California during the Class Period, including the Scooby Doo Fruit Flavored Snack Product. Plaintiff Hilsley purchased the Products multiple times annually since 2011, most recently at the Ralph's Supermarket located in the Encinitas Village Shopping Center at 125 N El Camino Real, Encinitas, California. Plaintiff Hilsley's most recent purchase was on or about November 2016.

69.    Plaintiff Hilsley first discovered Defendants' unlawful acts described herein in December 2016, when she learned the Product's characterizing flavor was deceptively created or reinforced using artificial flavoring even though Defendants failed to disclose that fact on the Product's label.

70.    Plaintiff Adrienne Morris purchased Mott's Fruit Snack Products in California during the Class Period defined herein. Specifically, Plaintiff Morris purchased several packages of the Mott's Fruit Flavored Snack Products periodically

since 2017 in Orange County, California. Plaintiff Morris' most recent purchase was in June 2018 at Target located on 3030 Harbor Blvd Suite A, Costa Mesa, CA 92626.

71.     Plaintiff Morris first discovered Defendants' unlawful acts described herein in October 2018, when she learned the Product's characterizing flavor was deceptively created or reinforced using artificial flavoring even though Defendants failed to disclose that fact on the Product's label.

72.     Plaintiff Nikki Cook purchased Mott's Fruit Snack Products periodically since 2015 in San Bernardino County, California. Plaintiff Cook's most recent purchase was in July 2018 at Target located on 27320 W. Lugonia Avenue, Redlands, CA 92374.

73.     Plaintiff Cook first discovered Defendants' unlawful acts described herein in December 2018, when she learned the Product's characterizing flavor was deceptively created or reinforced using artificial flavoring even though Defendants failed to disclose that fact on the Product's label.

74.     Plaintiff David Christensen purchased several of the Products during the Class Period in Hennepin County, Minnesota, including the Mott's Fruit Flavored Snacks, Strawberry Fruit Roll Ups Fruit Flavored Snacks, Apple Fruit Roll Ups Fruit Flavored Snacks, and Strawberry Fruit by the Foot Fruit Flavored Snacks. Plaintiff Christensen purchased the Products in approximately July of 2019 and continuing until approximately October 2019. Plaintiff Christensen purchased the products from a Target Store located on Cedar Avenue in Bloomington, Minnesota, a Rainbow Foods Store located on Nicollet Avenue in Richfield, Minnesota, and from a Club Foods Store located on Nicollet Avenue in Minneapolis, Minnesota.

75.     Plaintiff Christensen first discovered Defendants' unlawful acts described herein in July 2020, when he learned the Product's characterizing flavor was deceptively created or reinforced using artificial flavoring even though Defendants failed to disclose that fact on the Product's label.

76.     Plaintiffs were deceived by and relied upon the Products' deceptive labeling, and specifically the omission of the fact that the Products contained artificial flavorings. Plaintiffs purchased the Products believing they were naturally-flavored, based on the Products' deceptive labeling and failure to disclose that they are artificially flavored.

77.     Plaintiffs and the Class members, as reasonable consumers, are not required to subject consumer food products to laboratory analysis, to scrutinize the back of the label to discover that the product's front label is false and misleading, or to search the label for information that state and federal regulations require be displayed prominently on the front– and, in fact, under state law are entitled to rely on statements that Defendants deliberately place on the Product's labeling.

78.     Defendants, but not Plaintiffs or the Class, knew or should have known that this labeling was in violation of federal regulations and state law.

79.     Because Plaintiffs and Class members reasonably assumed the Products to be free of artificial flavoring based on the Products' labels, they did not receive the benefit of their purchases. Instead of receiving the benefit of products free of artificial flavoring, each received a Product that was unlawfully labeled and deceived the consumer into believing that it was exclusively naturally flavored and contained no artificial flavoring, in violation of state and federal labeling regulations.

80.     Plaintiffs would not have purchased the Products in the absence of Defendants' misrepresentations and omissions. Had Defendants not violated federal and state law, Plaintiffs would not have been injured.

81.     The Products were worth less than what Plaintiffs and the Class paid for them, and class members would not have paid as much as they have for the Products absent Defendants' false and misleading statements and omissions.

82.     As General Mills' consumer survey and similar consumer studies show, naturally-flavored food products command a price premium over artificially-flavored products.

83.     Plaintiffs lost money as a result of Defendants' unlawful behavior. Plaintiffs altered their position to their detriment and suffered loss in an amount equal to the amount of the price premium paid for the Products relative to the price had the Products been accurately labeled or the price of other similar products lawfully labeled.

84.     Plaintiffs intend to, desire to, and will purchase the Products again when they can do so with the assurance that the Products' labels, which indicate that the Products are naturally-flavored, are lawful and consistent with the Products' ingredients.

## DELAYED DISCOVERY

85.     Plaintiffs and the Class are reasonably diligent consumers who exercised reasonable diligence in their purchase and consumption of the Products. Nevertheless, they would not have been able to discover Defendants' deceptive practices and lacked the means to discover them given that, like nearly all consumers, they rely on and are entitled to rely on the manufacturer's obligation to label its products in compliance with federal regulations and state law. Furthermore, Defendants' labeling practices and nondisclosures— in particular, failing to identify the artificial flavor in the ingredient list, or to disclose that the Products contained artificial flavoring, or to accurately identify the kind of malic acid that Defendants put in the Products—impeded Plaintiffs' and Class members' abilities to discover the deceptive and unlawful labeling of the Product throughout the Class Period.

86.     Because Defendants actively concealed their illegal conduct, preventing Plaintiffs and the Class from discovering their violations of state law,

Plaintiffs and the Class are entitled to delayed discovery and an extended Class Period tolling the applicable statute of limitations.

## CLASS ACTION ALLEGATIONS

87.    Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3).

88.    The Class is defined as follows: All residents of the United States of America who, from January 1, 2012 until the date of class certification, purchased any of the General Mills Products as defined in Exhibit 1 hereto for personal and household use and not for resale. The Class Definition excludes: (1) Defendants and Defendants' officers, directors, employees, agents, and affiliates, (2) counsel for any of the parties; (3) the Court and its staff; and (4) all persons who properly execute and filed a timely request for exclusion.

89.    During the Class Period, the Products unlawfully contained the undisclosed artificial flavoring ingredient dl-malic acid and were otherwise improperly labeled. Defendants failed to label the Products as required by state and federal law.

90.    During the Class Period, Class members purchased the misbranded Products, paying a price premium for the Products compared to similar products lawfully labeled.

91.    The proposed Class meets all criteria for a class action, including numerosity, commonality, typicality, predominance, superiority, and adequacy of representation.

92.    This action has been brought and may properly be maintained as a class action against Defendants. While the exact number and identities of other Class Members are unknown to Plaintiffs at this time, Plaintiffs are informed and believe that there are hundreds of thousands of Members in the Class. The Members of the

Class are so numerous that joinder of all Members is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

93.   The proposed Classes satisfy typicality. Plaintiffs' claims are typical of and are not antagonistic to the claims of other Class members. Plaintiffs and the Class members all purchased the Products, were deceived by the false and deceptive labeling, and lost money as a result of purchasing the Products that were illegal to sell.

94.   The proposed Classes satisfy superiority. A class action is superior to any other means for adjudication of the Class members' claims because each Class member's claim is modest, based on the Products' retail purchase prices which are generally under $5.00 per unit. It would be impractical for individual Class members to bring individual lawsuits to vindicate their claims.

95.   Because Defendants' misrepresentations were made on the labels of the Products, all Class members including Plaintiffs were exposed to and continue to be exposed to the omissions and affirmative misrepresentations. If this action is not brought as a class action, Defendants can continue to deceive consumers and violate federal and state law with impunity.

96.   The proposed Class Representatives satisfy adequacy of representation. Plaintiffs are adequate representatives of the Class as they seek relief for the Class, their interests do not conflict with the interests of the Class members, and they have no interests antagonistic to those of other Class members. Plaintiffs have retained counsel competent in the prosecution of consumer fraud and class action litigation.

97.   The proposed Classes satisfy commonality and predominance. There is a well-defined community of interest in questions of law and fact common to the Class, and these predominate over any individual questions affecting individual Class members in this action.

*Hilsley v. General Mills, Inc.,* Case No. 3:18-cv-00395-L-BLM
FIRST AMENDED CLASS ACTION COMPLAINT

98.     Questions of law and fact common to Plaintiffs and the Class include:

a. Whether Defendants failed to disclose the presence of the artificial flavoring ingredient dl-malic acid in the Products;

b. Whether Defendants' labeling omissions and representations constituted false advertising under federal and state law;

c. Whether Defendants' conduct constituted a violation of the Minnesota Consumer Fraud Act;

c. Whether Defendants' conduct constituted a violation of California's Unfair Competition Law;

d. Whether Defendants' conduct constituted a violation of California's Consumer Legal Remedies Act;

d. Whether Defendants' conduct constituted a violation of California's False Advertising Law;

g. Whether the statute of limitations should be tolled on behalf of the Class;

h. Whether the Class is entitled to restitution, rescission, actual damages, punitive damages, attorney fees and costs of suit, and injunctive relief; and

i. Whether members of the Class are entitled to any such further relief as the Court deems appropriate.

99.     Plaintiffs will fairly and adequately protect the interests of the Class, have no interests that are incompatible with the interests of the Class, and have retained counsel competent and experienced in class litigation.

100.   Defendants have acted on grounds applicable to the entire Class, making final injunctive relief or declaratory relief appropriate for the Class as a whole.

101.   Class treatment is therefore appropriate under Federal Rule of Civil Procedure 23.

*Hilsley v. General Mills, Inc.,* Case No. 3:18-cv-00395-L-BLM
FIRST AMENDED CLASS ACTION COMPLAINT

## FIRST CAUSE OF ACTION

### Violations of the Minnesota Prevention of Consumer Fraud Act

### (MINN. STAT. § 325F.68-70)

102.   Plaintiffs reallege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

103.   Plaintiffs, members of the Class and the Defendants are each "persons" as defined by the Minnesota Prevention of Consumer Fraud Act ("MPCFA"), Minn. Stat. § 325F.68(2). The Fruit Flavored Snack Products sold by Defendants to Plaintiffs and the Class are "Merchandise" as defined by Minn. Stat. § 325F.68(2).

104.   The MPCFA makes unlawful, "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby." Minn. Stat. § 325F.69(1). The MPCFA further provides that "any person injured by a violation of [the MPCFA] may bring a civil action and recover damages, together with costs and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the court." Minn. Stat. § 8.31(3a).

105.   The Defendants willfully failed to disclose and affirmatively misrepresented material facts regarding the contents of the Products. Specifically, Defendants label the Products as containing "No Artificial Flavors" when, in fact, the Products contain an artificial flavoring ingredient called dl-malic acid. Accordingly, the Defendants engaged in unlawful trade practices, including advertising the Products as containing "No Artificial Flavors," with the intent to sell them without the ingredients they represented the Products contain. By concealing and omitting material information from Plaintiffs and the Class and by making affirmative misrepresentations as described above, the Defendants engaged in

*Hilsley v. General Mills, Inc.,* Case No. 3:18-cv-00395-L-BLM
FIRST AMENDED CLASS ACTION COMPLAINT

deceptive business practices prohibited by the MPCFA. The Defendants' material omissions and misrepresentations were made with the intent that Plaintiffs and the Class would rely upon them, and Plaintiffs and the Class did in fact rely upon those material omissions and misstatements.

106.    The Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs.

107.    Plaintiffs and the Class sustained damages as a result of the Defendants' unlawful acts and are, therefore, entitled to damages and injunctive relief as provided under the MPCFA.

## SECOND CAUSE OF ACTION

### Violations of California's Consumer Legal Remedies Act

### (CAL. CIV. CODE §§ 1750, ET SEQ.)

108.    Plaintiffs reallege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

109.    The California Consumers Legal Remedies Act, Cal. Civ. Code § 1750 et seq. ("CLRA") prohibits any unfair, deceptive and unlawful practices, and unconscionable commercial practices in connection with the sale of any goods or services to consumers.

110.    Plaintiffs and the Class are "consumers" as defined by Cal. Civ. Code § 1761(d). The Products are a "good" as defined by Cal. Civ. Code § 1761.

111.    Defendants' failure to label the Products in compliance with federal and state labeling regulations, was an unfair, deceptive, unlawful, and unconscionable commercial practice.

112.    Defendants' conduct violates the CLRA, including but not limited to, the following provisions:

§ 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have.

§ 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another.

§ 1770(a)(9): advertising goods with intent not to sell them as advertised.

§ 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

113.   As a result of Defendants' violations, Plaintiffs and the Class suffered, and continue to suffer, ascertainable losses in the form of the price premiums they paid for the deceptively labeled and marketed Products, which they would not have paid had the Products been labeled truthfully, and/or in the form of the reduced value of the Products purchased compared to the Products as labeled and advertised.

114.   Wherefore, Plaintiffs, on behalf of themselves and the Class, seek damages, restitution, injunctive relief, and attorneys' fees and costs for Defendants' violations of the CLRA.

## THIRD CAUSE OF ACTION

### Violations of California's Unfair Competition Law
### (CAL. BUS. & PROF. CODE §§ 17200, ET SEQ.)

115.   Plaintiffs reallege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

116.   Section 17200 of the California Business & Professions Code ("Unfair Competition Law" or "UCL") prohibits any "unlawful," "unfair" and "fraudulent" business practice. Section 17200 specifically prohibits any "unlawful . . . business act or practice."

117.   The UCL borrows violations of other laws and statutes and considers those violations also to constitute violations of California law.

118.   Defendants' practices as described herein were at all times during the Class Period and continue to be unlawful under, inter alia, FDA regulations and California's Sherman Law.

21

119.   Among other violations, Defendants' conduct in unlawfully packaging and distributing the Products in commerce in California violated U.S. FDA packaging and labelling regulations.

120.   The Products' labels fail to disclose that they contain synthetic artificial flavoring in violation of 21 C.F.R. § 101.22 and California's Sherman Law. In fact, the Products' labeling include the statement "No Artificial Flavors."

121.   The Products contain dl--malic acid, but do not identify this compound as an artificial flavoring, on either the Products' front or back labels.

122.   The dl--malic acid is a flavoring material, which is included in the Products to create, simulate, or reinforce the Products' characterizing fruit flavors.

123.   The dl--malic acid in the Products is not derived from a natural material as defined in 21 C.F.R. § 101.22, and is therefore by law an artificial flavor.

124.   Defendants fail to inform consumers of the presence of the artificial flavor in the Products, on either the front or back-label as required by law.

125.   Such conduct is ongoing and continues to this date.

126.   Defendants' practices as described herein are "unfair" within the meaning of the California Unfair Competition Law because the conduct is unethical and injurious to California residents and the utility of the conduct to Defendants does not outweigh the gravity of the harm to consumers

127.   While Defendants' decision to label the Products deceptively and in violation of California law may have some utility to Defendants in that it allows Defendants to sell the Products to consumers who otherwise would not purchase artificially-flavored food products at the retail price or at all if they were labeled correctly, and to realize higher profit margins than if they formulated or labeled the Products lawfully, this utility is small and far outweighed by the gravity of the harm Defendants inflict upon consumers.

128. Defendants' conduct also injures competing food product manufacturers, distributors, and sellers that do not engage in the same unlawful, unfair, and unethical behavior.

129. Moreover, Defendants' practices also violate public policy expressed by specific constitutional, statutory or regulatory provisions, including the Sherman Law, the False Advertising Law, and the FDA regulations cited herein.

130. Defendants labeled the Products in violation of federal regulations and California law requiring truth in labeling.

131. Defendants consciously failed, and continue to fail, to disclose material facts to Plaintiffs and the Class in Defendants' advertising and marketing of the Products.

132. Defendants' conduct is unconscionable because, among other reasons, it violates 21 C.F.R. § 101.22(c), which requires all foods containing artificial flavoring to include: "A statement of artificial flavoring … [which] shall be placed on the food or on its container or wrapper, or on any two or all three of these, as may be necessary to render such a statement likely to be read by the ordinary person under customary conditions of purchase and use of such food."

133. Defendants' conduct is "unconscionable" because it violates, among other things, 21 C.F.R. § 101.22(c), which requires all food products for which artificial flavoring provides a characterizing flavor to disclose this fact prominently on the products' front labels.

134. Defendants intended that Plaintiffs and the Class rely on Defendants' acts of omission and/or misrepresentations so that Plaintiffs and other Class members would purchase the Products.

135. Had Defendants disclosed all material information regarding the Products in their advertising and marketing, Plaintiffs and the Class would not have purchased the Products or would have paid less for the Products.

136.   Plaintiffs and the Class suffered an injury in fact and lost money or property as a result of Defendants' deceptive advertising. They were denied the benefit of the bargain when they decided to purchase the Products based on Defendants' violation of the applicable laws and regulations, or to purchase the Products in favor of competitors' products, which are less expensive, contain no artificial flavoring, or are lawfully labeled.

137.   Plaintiffs suffered an ascertainable loss of money. The acts, omissions and practices of Defendants detailed herein proximately caused Plaintiffs and other members of the Class to suffer an ascertainable loss in the form of, among other things, monies spent to purchase the Products they otherwise would not have, and they are entitled to recover such damages, together with appropriate penalties, including restitution, damages, attorneys' fees and costs of suit.

138.   Pursuant to California Business & Professions Code § 17203, Plaintiffs seek an order requiring Defendants immediately to cease such acts of unlawful, unfair and fraudulent business practices and requiring Defendants to return the full amount of money improperly collected to those who purchased the Products.

## FOURTH CAUSE OF ACTION

### Violations of California's False Advertising Law

### (CAL. BUS. & PROF. CODE §§ 17200, ET SEQ.)

139.   Plaintiffs reallege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

140.   Defendants made and distributed, in interstate commerce, the Products that unlawfully fail to disclose artificial flavoring on their packaging as required by federal food labeling regulations.

141.   The Products' labeling and advertising in California falsely describe the Products as if they are only naturally flavored.

142.   Under California' False Advertising Law, Business & Professions Code § 17500 *et seq*.: "It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property … to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated form this state before the public in any state, in any newspaper or other publication, or any advertising device … any statement concerning that real or personal property … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading…"

143.   Defendants' business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to California's FAL because Defendants advertised the Products in a manner that is untrue and misleading, and that is known or reasonably should have been known to Defendants to be untrue or misleading.

144.   Defendants' labeling and advertising statements, communicating to consumers that the Products contain "NO Artificial Flavors", omitting legally-required label statements, and concealing the fact that the Product contained a synthetic artificial flavor, were untrue and misleading, and Defendants, at a minimum by the exercise of reasonable care, should have known those actions were false or misleading. Thus, Defendants' conduct violated California's False Advertising Law.

145.   Defendants' wrongful business practices have caused injury to Plaintiffs and the Class.

### FIFTH CAUSE OF ACTION

### Fraud by Omission

146.   Plaintiffs reallege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

147.   Plaintiffs bring this claim for fraud by omission pursuant to California Civil Code §§ 1709-1710, *et seq.* and the common law of all states. The elements of fraud are substantially similar from state to state, thus making nationwide class certification appropriate.

148.   Defendants actively concealed material facts, in whole or in part, with the intent to induce Plaintiffs and members of the Class to purchase the Products. Specifically, Defendants actively concealed the truth about the Products by not disclosing the existence of artificial flavoring ingredients on the front label of the Products as is required by state and federal law.

149.   Plaintiffs and the Class were unaware of these omitted material facts and would not have purchased the Products, or would have paid less for the Products, if they had known of the concealed facts.

150.   Plaintiffs and the Class suffered injuries that were proximately caused by Defendants' active concealments and omissions of material facts.

151.   Defendants' fraudulent concealments and omissions were a substantial factor in causing the harm suffered by Plaintiffs and the Class members as they would not have purchased the Products at all if all material facts were properly disclosed.

## SIXTH CAUSE OF ACTION

### Negligent Misrepresentation

152.   Plaintiffs reallege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

153.   Plaintiffs bring this claim for negligent misrepresentation pursuant to California Civil Code §§ 1709-1710, et seq. and the common law of all states. The elements of negligent misrepresentation are substantially similar from state to state, thus making nationwide class certification appropriate.

154. Defendants had a duty to disclose to Plaintiffs and the Class members the existence of artificial flavoring ingredients on the front labels of the Products pursuant to state and federal law. Defendants were in a superior position to Plaintiffs and the Class members such that reliance by Plaintiffs and the Class members was justified. Defendants possessed the skills and expertise to know the type of information that would influence a consumer's purchasing decision.

155. During the applicable Class period, Defendants negligently or carelessly misrepresented, omitted, and concealed from consumers material facts regarding the Products, including the existence of artificial flavoring ingredients.

156. Defendants were careless in ascertaining the truth of their representations in that they knew or should have known that Plaintiffs and the Class members would not have realized the true existence of artificial flavoring ingredients in the Products.

157. Plaintiffs and the Class members were unaware of the falsity of Defendants' misrepresentations and omissions and, as a result, justifiably relied on them when making the decision to purchase the Products.

158. Plaintiffs and the Class members would not have purchased the Products, or would have paid less for the Products, if the true facts had been known.

**SEVENTH CAUSE OF ACTION**

**Unjust Enrichment**

159. Plaintiffs reallege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

160. Defendants have unjustly retained a benefit to detriment of Plaintiffs and members of the Class. The Defendants sold the Products to Plaintiffs and the Class, that failed to contain the ingredients that the Defendants represented such Products contain. The Defendants continue to possess money paid by Plaintiffs and the Class to which they are not entitled.

161.   The Defendants' retention of the benefit violates the fundamental principles of justice, equity and good conscience. The Defendants did not disclose to Plaintiffs and the Class that the Products contain an artificial flavoring ingredient and the Defendants affirmatively misrepresented that the Products contain "No Artificial Flavors."

162.   As a direct and proximate result of the Defendants' misrepresentations and/or omissions with respect to the Products, Plaintiffs and the Class have suffered damages in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, all others similarly situated, and the general public, pray for judgment against Defendants as follows:

(A) An order confirming that this action is properly maintainable as a class action as defined above;

(B) An order appointing Plaintiffs as class representatives and The Law Office of Ronald A. Marron, APLC and The Elliot Law Firm as counsel for the Class;

(C) An order requiring Defendants to bear the cost of Class notice;

(D) An order declaring that the conduct complained of herein violates the MPCFA.

(E) An order declaring that the conduct complained of herein violates the CLRA;

(F) An order declaring that the conduct complained of herein violates the UCL;

(G) An order declaring that the conduct complained of herein violates the FAL;

(H) An order requiring Defendants to disgorge any benefits received from Plaintiffs and any unjust enrichment realized as a result of the improper and misleading labeling advertising, and marketing of the Products;

(I) An order requiring Defendants to pay restitution and damages to Plaintiffs and Class members so that they may be restored any money which was acquired by means of any unfair, deceptive, unconscionable or negligent acts;

(J) An award of punitive damages in an amount to be proven at trial;

(K) An award of damages and statutory damages;

(L) An order enjoining Defendants' deceptive and unfair practices;

(M) An order requiring Defendants to conduct corrective advertising;

(N) An award of pre-judgment and post-judgment interest;

(O) An award of attorney fees and costs; and

(P) Such other and further relief as this Court may deem just, equitable, or proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs demand a trial by jury on all claims for damages. Plaintiffs do not seek a jury trial for claims sounding in equity.


Dated:     August 27, 2020          */s/ Ronald A. Marron*
                                    By: Ronald A. Marron

                                    **LAW OFFICES OF RONALD A.**
                                    **MARRON, APLC**
                                    RONALD A. MARRON
                                    MICHAEL T. HOUCHIN
                                    LILACH HALPERIN
                                    651 Arroyo Drive
                                    San Diego, California 92103

Telephone: (619) 696-9006
Facsimile: (619) 564-6665


**THE ELLIOT LAW FIRM**
DAVID ELLIOT
2028 3rd Avenue
San Diego, CA 92101
Telephone: (619) 468-4865
***Attorneys for Plaintiffs and the Proposed
Class***

*Hilsley v. General Mills, Inc.,* Case No. 3:18-cv-00395-L-BLM
FIRST AMENDED CLASS ACTION COMPLAINT

## **EXHIBIT 1**

The Products at issue in this litigation include the products listed below and all substantially similar fruit flavored snacks products, including but not limited to varying sizes, seasonal iterations, licensed characters, or other similar variations of such products:

**Gushers**

Super Sour - Crabby Apple, Grumpy Grape, Scary Cherry

[16000-14689]

[16000-14731]

[16000-41719]

Variety Pack – Tropical Flavors, Strawberry Splash

[16000-14709]

[16000-14707]

[16000-15910]

[16000-13856]

[16000-14733]

[16000-14698]

[16000-14734]

Tropical Flavors

[16000-24070]

[16000-48586]

[16000-14732]

Mood Morphers

[16000-48819]

Flavor Mixers

[16000-14718]

[16000-15835]

*Hilsley v. General Mills, Inc.,* Case No. 3:18-cv-00395-L-BLM
FIRST AMENDED CLASS ACTION COMPLAINT

1    [16000-49727]

2  Strawberry Splash

3    [16000-14713]

4    [16000-49120]

5    [16000-15605]

6  Mouth Mixers

7    [16000-40508]

8    [16000-14712]

9  Variety Pack – Gushers, Fruit by the Foot, Fruit Roll-Ups, Fruit Flavored Snacks

10    [16000-44561]

11    [16000-17067]

12    [16000-14711]

13    [16000-14705]

14  Sweet & Fiery

15    [16000-14224]

16    [16000-14364]

17    [16000-14715]

18    [16000-14717]

19  Gushers & Fruit by the Foot King Size Variety Pack

20    [16000-15246]

21  **<u>Fruit by the Foot</u>**

22  Flavor Mixers

23    [16000-41025]

24  Berry Tie-Dye

25    [16000-27700]

26  Strawberry

27    [16000-49300]

28

*Hilsley v. General Mills, Inc.,* Case No. 3:18-cv-00395-L-BLM
FIRST AMENDED CLASS ACTION COMPLAINT

Color by the Foot

[16000-38500]

Variety Pack

[16000-19430]

[16000-49615]

[16000-41909]

[16000-16710]

[16000-46817]

[16000-14879]

[16000-15686]

Sweet & Fiery

[16000-14225]

[16000-14374]

Valentine Mini

[16000-40196]

King Size Roll

[16000-16158]

**<u>Fruit Roll Ups</u>**

Mini Rolls Strawberry Craze

[16000-17313]

Strawberry Sensation

[16000-48587]

[16000-35540]

[16000-39840]

Blastin Berry Hot Colors

[16000-35510]

[.5 oz No UPC on Label]

33

Tropical Tie-Dye

    [16000-39700]

Flavor Mixers – Strawberry, Lemonade, Tropical

    [16000-45472]

Carnival – Cotton Candy, Caramel Apple, Berry Lemonade, Cherry Slushie

    [16000-46386]

Fruit Roll Ups Carton

    [16000-49582]

Variety Pack

    [16000-18910]

    [16000-12709]

Fruit Roll-Ups Variety Pack Unicorn

    [16000-18910]

Fruit Roll Ups - Jolly Rancher

    [16000-15243]

    [16000-15242]

Fruit Roll-Ups Crazy Colors (.5 oz)

    [No UPC on Label]

**Equities/Characters Fruit Flavored Snacks**

DC Superhero Girls

    [16000-49152]

Star Wars

    [16000-46387]

    [16000-46443]

Scooby Doo

    [16000-14571]

    [16000-48696]

[16000-14916]

[16000-48534]

[16000-42419]

[16000-11510]

Dora and Friends

[16000-42413]

Hello Kitty

[16000-43093]

The Secret Life of Pets

[16000-47693]

Pokémon

[16000-49298]

[16000-49535]

Ninja Turtles

[16000-45159]

[16000-45202]

Thomas the Train

[16000-42225]

Trolls

[16000-47695]

[16000-14271]

Teen Titans

[16000-36375]

Hotel Transylvania

[16000-36482]

SpongeBob

[16000-42414]

Shimmer and Shine

    [16000-36351]

Shark Bites

    [16000-42417]

Disney

    [16000-15482]

Minions

    [16000-16063]

    [16000-16062]

Disney Star Wars

    [16000-46387]

Disney Toy Story

    [16000-15228]

    [16000-15394]

Disney Frozen

    [16000-15227]

    [16000-15229]

    [16000-15482]

Jurassic World

    [16000-16064]

**<u>Sunkist Fruit Flavored Snacks</u>**

Mixed Fruit

    [16000-49433]

    [16000-42351]

    [16000-42416]

**<u>Fiber One Fruit Flavored Snacks</u>**

Fiber One Mixed Berry Fruit Flavored Snacks

36

[16000-41417]

Fiber One Assorted Fruits

[16000-41416]

[16000-41415]

[16000-48496]

**<u>Motts Fruit Flavored Snacks</u>**

Medley's Strawberry Apple

[16000-45667]

Halloween Assorted Fruit

[16000-47588]

Fruity Rolls

[16000-45011]

Assorted Fruit

[16000-47727]

[16000-44262]

[16000-49432]

[16000-48764]

[16000-43164]

[16000-15393]

[16000-16209]

[16000-28544]

[16000-14515]

[16000-47954]

Assorted Fruit Berry Fruit

[16000-49434]

[16000-14366]

Tropical Fruit

37

[16000-14243]

[16000-36464]

[16000-11495]

[16000-11495]

Berry Fruit

[16000-44261]

Mixed Berry

[16000-47953]