1

**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)

2

*ron@consumersadvocates.com*
MICHAEL T. HOUCHIN (SBN 305541)

3

*mike@consumersadvocates.com*
LILACH HALPERIN (SBN 323202)

4

*lilach@consumersadvocates.com*
651 Arroyo Drive

5

San Diego, California 92103
Telephone: (619) 696-9006

6

Facsimile: (619) 564-6665

7

8

**LAW OFFICE OF DAVID ELLIOT**
DAVID ELLIOT (SBN 270381)

9

*davidelliot@elliotlawfirm.com*
2028 3rd Avenue

10

San Diego, CA 92101
Telephone: (858) 228-7997

11

***Attorneys for Plaintiffs and the Proposed Class***

12

13 | **UNITED STATES DISTRICT COURT**

14 | **SOUTHERN DISTRICT OF CALIFORNIA**

15

16 | CRYSTAL HILSLEY, ADRIENNE MORRIS, NIKKI COOK, and DAVID

17 | CHRISTENSEN, on behalf of themselves and all others similarly

18 | situated,

19 |         Plaintiffs,

20 |     vs.

21 | GENERAL MILLS, INC. and

22 | GENERAL MILLS SALES, INC.,

23 |        Defendants.

24

25

26

27

28

CASE NO. 3:18-cv-00395-L-BLM

<u>CLASS ACTION</u>

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Date:   October 5, 2020
Time:  10:30 a.m.
Ctrm:  5B
Judge:  Hon. M. James Lorenz

NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT

*Hilsley v. General Mills, Inc.*, No. 3:18-cv-00395-L-BLM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

149441247.1

## **TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND ..................................2

    A.   The *Hilsley* Litigation .........................................................2

    B.   The *Morris* Litigation .........................................................3

    C.   Settlement Negotiations .......................................................4

    D.   Plaintiffs' First Amended Complaint........................................4

III.   SUMMARY OF THE PROPOSED SETTLEMENT ...............................5

    A.   The Settlement Class............................................................5

    B.   Settlement Consideration ......................................................5

    C.   The Notice Plan and Settlement Administration ...........................6

    D.   The Right to Opt-Out and Object .............................................8

    E.   Release of Claims ...............................................................9

    F.   Class Counsel's Fees and Expenses and Plaintiffs' Incentive Awards .......10

IV.    LEGAL STANDARD FOR PRELIMINARY APPROVAL ........................10

V.     THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY
       APPROVAL.........................................................................12

    A.   Plaintiffs and Class Counsel Have Adequately Represented the  Class......12

    B.   The Settlement was Negotiated at Arm's Length..........................14

    C.   The Relief Provided to the Class is Adequate .............................14

        1.   *The Costs, Risks, and Delay of Trial and Appeal Support Preliminary*
          *Approval* ...............................................................18

        2.   *The Proposed Method of Distributing Relief to the Class Is Effective* ....18

        3.   *The Proposed Attorneys' Fee Award is Fair and Reasonable* ...............19

        4.   *No Side Agreements Were Made in Connection with the Proposed*
          *Settlement*.............................................................19

    D.   The Proposed Settlement Treats Class Members Equitably Relative to Each
       Other....................................................................19

*Hilsley v. General Mills, Inc.*, No. 3:18-cv-00395-L-BLM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

149441247.1

VI.  THE COURT SHOULD PROVISIONALLY CERTIFY THE CLASS AND
      ENTER THE PRELIMINARY APPROVAL ORDER.................................20

  A.  The Settlement Class Satisfied Rule 23(a) ..................................20

      1.  *Numerosity* ................................................................20

      2.  *Commonality* ..............................................................20

      3.  *Typicality* .................................................................21

      4.  *Adequacy* ..................................................................22

  B.  The Settlement Class Satisfies Rule 23(b)(2) .............................22

  C.  The Settlement Class Also Satisfies Rule 23(b)(3) ......................23

VII.  PROPOSED SCHEDULE OF EVENTS......................................26

VIII. CONCLUSION...............................................................27

ii

149441247.1

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Allison v. Citgo Petroleum Corp.*,
    151 F.3d 402 (5th Cir. 1998) ...............................................................23

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)...........................................................................20

*Arnold v. United Artists Theatre Circuit, Inc.*,
    158 F.R.D. 439 (N.D. Cal. 1994).........................................................21

*Carr v. Tadin, Inc.*,
    2014 WL 7497152 (S.D. Cal. Apr. 18, 2014)........................... 2, 15, 16

*Churchill Vill., L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ...............................................................11

*Curtis-Bauer v. Morgan Stanley & Co., Inc.*,
    2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) ....................................18

*Dashnaw v. New Balance Athletics, Inc.*,
    2019 WL 3413444 (S.D. Cal. July 29, 2019) .....................................11

*Fulford v. Logitech, Inc.*,
    2010 U.S. Dist. LEXIS 29042 (N.D. Cal. Mar. 5, 2010) ...................18

*Gen. Tel. Co. of the Sw. v. Falcon*,
    457 U.S. 147 (1982).............................................................................22

*Guttmann v. Ole Mexican Foods, Inc.*,
    2016 WL 91074261 (N.D. Cal. Aug. 1, 2016) ...................................15

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ..................................................... passim

*Hefler v. Wells Fargo & Co.*,
    2018 WL 6619983 (N.D. Cal. Dec. 18, 2018)....................................12

*In re Anthem, Inc. Data Breach Litig.*,
    327 F.R.D. 299 (N.D. Cal. 2018).........................................................26

149441247.1

*In re Extreme Networks, Inc. Securities Litigation*,
  2019 WL 3290770 (N.D. Cal. July 22, 2019) ....................................................12

*In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019) ...................................................................... 25, 26

*In re MDC Holdings Securities Litigation*,
  754 F. Supp. 785 (S.D. Cal. 1990)......................................................................24

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) .............................................................................12

*In re Netflix Privacy Litig.*,
  2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ...................................................18

*In re NJOY, Inc. Consumer Class Action Litig.*,
  120 F.Supp.3d 1050 (C.D. Cal. 2015) ................................................................16

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..............................................................13

*In re Quaker Oats Labeling Litig.*,
  2014 WL 12616763 (N.D. Cal. July 29, 2014) ..................................................15

*In re Seagate Technologies Sec. Litigation*,
  115 F.R.D. 264 (N.D. Cal. 1987).........................................................................25

*In re Steroid Hormone Prod. Cases*,
  181 Cal. App. 4th 145 (Ct. App. 2010)...............................................................24

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) .......................................................................... 15, 23, 24

*Johnson v. Triple Leaf Tea Inc.*,
  2015 WL 8943150 (N.D. Cal. Nov. 16, 2015) ............................................ 15, 16

*Littlejohn v. Copland*,
  2020 WL 3536531 (9th Cir. June 30, 2020)................................................ 17, 19

*Littlejohn v. Ferrara Candy Co.*,
  2019 WL 2514720 (S.D. Cal. June 17, 2019)...................................................2, 15

149441247.1

*Lyons v. CoxCom, Inc.*,

    No. 08-cv-2047-HCAB (S.D. Cal. Aug. 23, 2010) ............................................15

*Mazza v. Am. Honda Motor Co.*,

    666 F.3d 581 (9th Cir. 2012) ...................................................................24

*McGill v. Citibank, N.A.*,

    2 Cal. 5th 945 (2017) ..............................................................................15

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,

    221 F.R.D. 523 (C.D. Cal. 2004) ..............................................................14

*Probe v. State Teachers' Ret. Sys.*,

    780 F.2d 776 (9th Cir. 1986) ...................................................................22

*Rodriguez v. W. Publ'g Corp.*,

    563 F.3d 948 (9th Cir. 2009) ...................................................................13

*Slaven v. BP Am., Inc.*,

    190 F.R.D. 649 (C.D. Cal. 2000) ..............................................................20

*Smith v. Univ. of Wash. Law Sch.*,

    233 F.3d 1188 (9th Cir. 2000) .................................................................23

*Sullivan v. DB Investments, Inc.*,

    667 F.3d 273 (3d Cir. 2011) ....................................................................26

*Townsend v. Monster Beverage Corp.*,

    303 F. Supp. 3d 1010 (C.D. Cal. 2018) ...................................................16

*True v. Am. Honda Motor Co.*,

    749 F. Supp. 2d 1052 (C.D. Cal. 2010) ...........................................24, 26

*Wal- Mart Stores, Inc. v. Dukes*,

    564 U.S. 338 (2011) ..........................................................................21, 23

*Wiener v. Dannon Co., Inc.*,

    255 F.R.D. 658 (C.D. Cal. 2009) ..............................................................24

*Zamora Jordan v. Nationstar Mortg., LLC*,

    2019 WL 1966112 (E.D. Wash. May 2, 2019)....................................10, 11

*Hilsley v. General Mills, Inc.*, No. 3:18-cv-00395-L-BLM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

149441247.1

*Zinser v. Accufix Research Inst.,*

    253 F.3d 1180 (9th Cir. 2001) ...............................................................22

**Statutes**

Cal. Bus. & Prof. Code § 17200, *et seq.*..........................................2, 24

Cal. Bus. & Prof. Code § 17500, *et seq.*..........................................2, 24

Cal. Civ. Code § 1750, *et seq*...........................................................2, 24

Minn. Stat. § 325F.68-70 .....................................................................24

**Other Authorities**

NEWBERG ON CLASS ACTIONS § 13:48 (5th ed.) ...................................12

NEWBERG ON CLASS ACTIONS § 13:49 (5th ed.) ...................................13

NEWBERG ON CLASS ACTIONS § 13:50 (5th ed.) ...................................14

NEWBERG ON CLASS ACTIONS § 13:51 (5th ed.) ...................................15

NEWBERG ON CLASS ACTIONS § 13:53 (5th ed.) ...................................18

NEWBERG ON CLASS ACTIONS § 13:56 (5th ed.) ...................................19

**Rules**

Fed. R. Civ. P. 23(a)(1).........................................................................20

Fed. R. Civ. P. 23(a)(2).........................................................................20

Fed. R. Civ. P. 23(a)(3).........................................................................21

Fed. R. Civ. P. 23(a)(4).........................................................................22

Fed. R. Civ. P. 23(b)(2) ................................................................... 22, 23

Fed. R. Civ. P. 23(b)(3).........................................................................23

Fed. R. Civ. P. 23(e)..............................................................................10

Fed. R. Civ. P. 23(e)(2) ................................................................... 11, 12

Fed. R. Civ. P. 23(e)(2)(A) ....................................................................12

Fed. R. Civ. P. 23(e)(2)(B) ....................................................................14

Fed. R. Civ. P. 23(e)(2)(C) ....................................................................14

Fed. R. Civ. P. 23(e)(2)(D) ....................................................................19

Fed. R. Civ. P. 23(e)(3)..........................................................................19

**Regulations**

21 C.F.R. § 184.1069 ................................................................................................6

*Hilsley v. General Mills, Inc.,* No. 3:18-cv-00395-L-BLM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

149441247.1

Plaintiffs Crystal Hilsley, Adrienne Morris, Nikki Cook, and David Christensen ("Plaintiffs") respectfully submit this Memorandum of Points and Authorities in support of their Unopposed Motion for Preliminary Approval of Class Action Settlement with Defendants General Mills, Inc. and General Mills Sales, Inc. ("General Mills" or "Defendants") and state as follows:

## I. **INTRODUCTION**

This settlement provides for meaningful injunctive relief and resolves two consumer protection class action lawsuits involving fruit flavored snack products that are manufactured and sold by General Mills (the "Products").[1] The Products at issue are labeled as containing "No Artificial Flavors." Plaintiffs allege that General Mills' "No Artificial Flavors" labeling claims are false and misleading because the Products allegedly contain an artificial flavoring ingredient called dl-malic acid. FAC ¶¶ 18-60. General Mills vigorously denies these allegations and contends that its labeling complies with all federal regulations.

After hard-fought settlement negotiations, which included formal discovery, confirmatory discovery, and two full-day mediations, the Parties reached this proposed settlement. There can be no doubt that the terms of this settlement accomplish the goals of this litigation. As further discussed below, the terms of this settlement require General Mills to either remove the Challenged Claims or the Challenged Ingredients from the Products or provide consumers with additional information about the Products. SA ¶ 5.1. The additional information that General Mills will provide comes in the form both of packaging changes and changes to the General Mills website, as discussed in detail below. The value of this injunctive relief cannot be underestimated. *See Carr v. Tadin, Inc.*, 2014 WL 7497152, at *4

---

[1] The Products at issue are listed in Exhibit 1 to the Parties' Settlement Agreement. A copy of the Settlement Agreement ("SA") is attached to the concurrently filed Declaration of Ronald A. Marron in Support of Plaintiffs' Motion for Preliminary Approval ("Marron Decl.") as Exhibit 1. Capitalized terms in this Motion have the same meaning as the capitalized terms defined in the Agreement.

149441247.1

(S.D. Cal. Apr. 18, 2014) (granting preliminary approval where "the injunctive relief Defendant has agreed to provide– modifying the labeling and packaging of the Products– is the primary relief Plaintiffs sought in their complaint."); *Littlejohn v. Ferrara Candy Co.*, 2019 WL 2514720, at *5 (S.D. Cal. June 17, 2019), *aff'd sub nom. Littlejohn v. Copland*, 2020 WL 3536531 (9th Cir. June 30, 2020) (approving settlement that affords "meaningful injunctive relief.").

For the reasons set forth below, this settlement is fair, reasonable, and adequate and should be approved by the Court.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   The *Hilsley* Litigation

On December 5, 2017, Plaintiff Crystal Hilsley filed this putative class action in the Superior Court of California for the County of San Diego alleging that General Mills engaged in false and misleading labeling and advertising of certain fruit flavored snack products. Dkt. No. 1-2.[2] On February 21, 2018, General Mills filed a Notice of Removal to this Court. Dkt. No. 1. On March 26, 2018, General Mills filed a Motion to Dismiss Plaintiff Hilsley's complaint (Dkt. No. 13) and on March 26, 2019, this Court entered an Order Granting in Part and Denying in Part General Mills' Motion to Dismiss. Dkt. No. 17.

On May 1, 2019, General Mills filed an Answer to Plaintiff Hilsley's complaint. Dkt. No. 23. On June 6, 2019, the Parties to the *Hilsley* Litigation participated in an Early Neutral Evaluation Conference (Dkt. No. 29) and then discovery commenced.  On June 5, 2019, Plaintiff Hilsley served a first set of interrogatories and a first set of requests for production of documents. Marron Decl., ¶ 8.  On July 16, 2019, General Mills served responses to Plaintiff Hilsley's

---

[2] The Complaint included claims for violations of California's Consumer Legal Remedies Act, (Cal. Civ. Code § 1750, *et seq.* ["CLRA"]), violations of California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.* ["UCL"]) (unlawful prong), violations of California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.* ["UCL"]) (unfair prong), and violations of California's False Advertising Law (Cal. Bus. & Prof. Code § 17500, *et seq.* ["FAL"]) (Dkt. No. 1-2).

149441247.1

discovery requests. Marron Decl., ¶ 8.  General Mills also produced documents that helped Plaintiff Hilsley evaluate the strengths and weaknesses of her case.  Marron Decl., ¶ 8.  The Parties to the *Hilsley* Litigation also exchanged expert witness designations and expert reports. Marron Decl., ¶ 9.  On February 14, 2020, Plaintiff Hilsley served an expert report from Dr. Laszlo Somogyi, who opined that dl-malic acid is used as a flavoring ingredient in the Products. Marron Decl., ¶ 9.  On February 14, 2020, General Mills served three expert reports from Dolf Derovia, Dr. Ran Kivetz, and Marianne Gillette.  Marron Decl., ¶ 9. Mr. Derovia and Ms. Gillette opined that dl-malic acid is not used as a flavoring ingredient in the Products. Marron Decl., ¶ 9. Dr. Kivitz conducted a consumer survey and opined that the challenged labeling statements are not material to a reasonable consumer. Marron Decl., ¶ 9.

## B.    The *Morris* Litigation

On October 4, 2018, Plaintiff Adrienne Morris filed a class action lawsuit against Mott's, LLP in the Central District of California captioned *Adrienne Morris v. Motts LLP*, Case No. 8:18-cv-01799-AG-ADS (C.D. Cal.) ("*Morris*"). The complaint alleged that the defendant engaged in false and misleading labeling and advertising of certain Mott's Fruit Flavored Snacks products. *Morris*, Dkt. No. 1. The Mott's fruit flavored snack products at issue in the *Morris* Action are manufactured by General Mills, Inc. *Morris*, Dkt. No. 45.  On September 26, 2018, Plaintiff Morris filed an amended complaint that added Plaintiff Nikki Cook to the *Morris* Action. *Morris*, Dkt. No. 22. On January 9, 2019, the defendant filed a motion to dismiss the Plaintiffs' first amended complaint (*Morris*, Dkt. No. 24) and on February 26, 2019, the *Morris* Court entered an Order Granting in Part and Denying in Part the defendant's Motion to Dismiss the First Amended Complaint. *Morris*, Dkt. No. 38.  On June 26, 2019, the Plaintiffs in the *Morris* Action filed a Second Amended Complaint that adds General Mills, Inc., the manufacturer of the Mott's Products, as a defendant to the *Morris* Action. *Morris*, Dkt. No. 47.

149441247.1

The parties to the *Morris* Action also engaged in meaningful discovery. On February 27, 2019, the *Morris* Plaintiffs' severed a first set of interrogatories and a first set of requests for production of documents. Marron Decl., ¶ 13. On April 12, 2019, the defendants served responses to the discovery requests. Marron Decl., ¶ 13. The defendants also produced over 4,400 pages of documents that helped the *Morris* Plaintiffs evaluate the strengths and weaknesses of their case. Marron Decl., ¶ 13. On March 22, 2019, the defendants also served a first set of interrogatories and a first set of requests for production of documents on the *Morris* Plaintiffs. Marron Decl., ¶ 13.   On April 22, 2019, the *Morris* Plaintiffs served responses to the defendants' discovery requests. Marron Decl., ¶ 13.

### C.    Settlement Negotiations

The Parties have engaged in extensive, arms-length, and vigorously contested settlement negotiations, formal discovery, and voluntary exchange of information relevant to the negotiation. Marron Decl., ¶ 14.  Those efforts included an all-day, in-person mediation conducted by Jill R. Sperber, Esq. (Judicate West) on October 22, 2019, where the Parties to the *Hilsley* and *Morris* Actions agreed to the principal terms of a class action settlement. Marron Decl., ¶ 15.  Those efforts also included repeated back-and-forth in the ensuing months to finalize the terms of the Agreement and resolve remaining conflicts between the Parties. Marron Decl., ¶ 16.  Finally, the efforts included a second all-day mediation with Jill R. Sperber, Esq. on March 9, 2020 where the Parties finalized the terms of the settlement. Marron Decl., ¶ 16.

### D.    Plaintiffs' First Amended Complaint

On August 27, 2020, the Plaintiffs filed their First Amended Complaint in the present action. Dkt. No. 41.  The First Amended Complaint conforms to the terms of the Parties' settlement agreement and adds the claims of the *Morris* Plaintiffs to the present action. *Id*. The First Amended Complaint also adds David Christensen, a Minnesota resident, as a plaintiff to the present action and adds a cause of action under the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68-70.

4

*Hilsley v. General Mills, Inc.*, No. 3:18-cv-00395-L-BLM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

149441247.1

FAC ¶¶ 102-107. General Mills maintains its principal place of business in Minnesota (FAC ¶¶ 12-13) and Plaintiffs assert claims on behalf of a nationwide class. FAC ¶ 88.

### III.    SUMMARY OF THE PROPOSED SETTLEMENT

#### A.    The Settlement Class

The proposed settlement establishes a Settlement Class comprised of "all residents of the United States of America who, during the Class Period as defined [in the Settlement Agreement], purchased any of the General Mills Products as defined in [Exhibit 1[3] to the Settlement Agreement] for personal and household use and not for resale." SA ¶ 2.3. The Class Definition excludes: (1) Defendants and Defendants' officers directors, employees, agents, and affiliates; (2) counsel for any of the parties; (3) the Court and its staff; and (4) all persons who properly execute and filed a timely request for exclusion. SA ¶ 2.3.  The Class Period is defined as "January 1, 2012 through the date of class certification, as designated by the Court in its Preliminary Approval Order." SA ¶ 2.6.

#### B.    Settlement Consideration

The settlement provides for meaningful injunctive relief. "General Mills will be ordered and enjoined to either remove the Challenged Claims[4] or the Challenged Ingredients[5] from the Products or provide consumers additional information about any Products bearing the Challenged Claims and which contain the Challenged

---

[3] Exhibit 1 to the Settlement Agreement includes various General Mills Fruit Flavored Snack Products, including Gushers, Fruit by the Foot, Fruit Roll Ups, Sunkist Fruit Flavored Snacks, Fiber One Fruit Flavored Snacks, Motts Fruit Flavored Snacks, DC Superhero Girls Fruit Flavored Snacks, Star Wars Fruit Flavored Snacks, Scooby Doo Fruit Flavored Snacks, among others.

[4] "Challenged Claims" means the statements "No Artificial Flavors," "Naturally Flavored," "All Natural Flavors" or similar designations of natural flavor appearing on the packaging of the Products or used in any way in connection with the sale or marketing of the Products. SA ¶ 2.1.

[5] "Challenged Ingredients" means the synthetic, racemic, or industrial versions of malic acid or other acidulants or identified flavoring or other ingredients as specified in formulations of the Products during the Class Period. SA ¶ 2.2.

149441247.1

Ingredients." SA ¶ 5.1. The additional information includes both a packaging change and a website modification. SA ¶¶ 5.2a-5.2b.

The modification to the General Mills website "will disclose in substance the following points (1) that General Mills specifies that flavors in the Products bearing the Challenged Claims come from all natural sources; (2) that General Mills identifies 'natural flavors' in the ingredient list in accordance with FDA regulations; and (3) that General Mills states that the Products may also contain synthetic malic acid or other acidulants" and that "[m]alic acid is intended for use not as a flavor or to impart the characterizing flavor of these Products, but is a substance the FDA approves for multiple uses including a flavor enhancer, a flavoring agent or adjuvant, or as a pH control agent. 21 C.F.R. § 184.1069." SA ¶ 5.2a. The packaging change includes the following: "Packaging for Products bearing the Challenged Claim shall display an asterisk or similar reference immediately following or adjacent to the 'No Artificial Flavors' claim that directs the consumer to the statement '*Learn More at [the URL or webpage of the General Mills website (appearing elsewhere on the packaging) containing the disclosure above].' The URL or webpage will refer the consumer to the webpage ask.GeneralMills.com." SA ¶ 5.2b.  For four years from the Compliance Date, the website modification language shall appear on ask.GeneralMills.com, and for two years from the date of the Final Approval, the website modification language shall appear in the first two rows of "tiles" on the webpage, or with similar prominence should the format of the webpage change. For the General Mills webpage, consumers will be able to click an appropriate "tile" to reference the website modification language. SA ¶ 5.2b.

## C. The Notice Plan and Settlement Administration

Pending this Court's approval, Heffler Claims Group, LLC ("Heffler") will serve as the Settlement Administrator and will be responsible for administrating the Notice plan. *See* Declaration of Jeanne C. Finegan filed concurrently herewith ("Finegan Decl."), ¶ 2. Heffler has significant experience with administrating class

action settlements and implementing class action notice plans. Finegan Decl., ¶¶ 5-12.  The forms of the proposed Notices, agreed upon by Class Counsel and General Mills, subject to this Court's approval and/or modification, are attached to the concurrently filed Marron Declaration as Exhibits 2 and 3. The notice plan is designed to reach at least 70% of Settlement Class Members nationwide, on average 2.4 times. Finegan Decl., ¶ 3. Heffler has utilized syndicated media research data to design a notice plan that specifically targets Settlement Class Members. Finegan Decl., ¶¶ 15-18. From its research, Heffler has determined that there are over 76,111,000 fruit snacks purchasers that nearly 57% percent are 18 to 44 years old and over 55% are parents to children under 18 years of age. Finegan Decl., ¶ 21. Of this target, 88% have gone online in the last 30 days, with nearly 84% using their smartphone to access the Internet. Additionally, 82% use social media with over 68% reporting that they have visited Facebook in the last 30 days.  Finegan Decl., ¶ 21. The Notice program consists of several different components, that are designed to specifically target Settlement Class Members, as discussed below:

**Online Displays and Social Media**:  Heffler will conduct an online notice campaign targeting "Betty Crocker, Mott's and any brand fruit snack buyers." Finegan Decl., ¶ 24. Over 40 million online display and social media impressions will be served across a whitelist of pre-vetted websites, multiple exchanges, and the social media platforms Facebook and Instagram. Finegan Decl., ¶ 24. Keyword search targeting will also be employed to show advertisements to users in their Google search results. Finegan Decl., ¶ 25. A list of search topics including Scooby fruit snacks, Shark Bite fruit snacks, Trolls fruit snacks coupons, fruit snacks settlement, General Mills settlement, Gushers, Fruit by the Foot, Fruit Roll Ups, Dora fruit snacks coupons and Star Wars fruit snacks, among others, will be applied. Finegan Decl., ¶ 25. On Facebook and Instagram, Heffler will target those who have liked or followed Betty Crocker, Motts, Sunkist, General Mills, Fruit by the Foot, Gushers and Fruit Roll Ups pages as well as parents 18 to 44 years old. Finegan

Decl., ¶ 26. Further, the social media campaign will include retargeting to users who visit the Settlement website. Finegan Decl., ¶ 26.

**CLRA Notice**: Pursuant to the Settlement Agreement, and compliant with California's CLRA, Civil Code § 1750, *et seq.*, a summary notice will be published *The San Diego Union-Tribune* once a week for four weeks. Finegan Decl., ¶¶ 22-23. *The San Diego Union Tribune* has a circulation of 121,321. Finegan Decl., ¶ 23.

**Settlement Website**: An informational website will be established and maintained by Heffler. Finegan Decl., ¶ 27. All of the aforementioned methods of notice will direct class members to this website. Finegan Decl., ¶ 27. The website will serve as a "landing page for the banner advertising," where Class Members may get information about the Settlement, including information about the class action, their rights, the Long Form Notice, answers to frequently asked questions, contact information that includes the address for the Claim Administrator and addresses and telephone numbers for Plaintiffs' Counsel. Finegan Decl., ¶ 27.

**Toll-Free Information Line**: Heffler will establish and maintain a 24-hour toll-free Interactive Voice Response ("IVR") telephone line, where callers may obtain information about the class action, including, but not limited to, requesting copies of the Long Form Notice. Finegan Decl., ¶ 28.

## D. The Right to Opt-Out and Object

Settlement Class Members who do not wish to participate in the Settlement may opt-out of the Settlement by completing the exclusion form at the Settlement Website; downloading and submitting to the Notice Administrator a completed exclusion form; or submitting a valid request to exclude themselves to the Notice Administrator. SA ¶ 9.7. Requests for exclusion must be delivered (not just postmarked) by the Exclusion Deadline or they shall not be valid. SA ¶ 9.7.

If any Class Member wishes to object to the Settlement, the Class Member must submit a written objection to the Notice Administrator. SA ¶ 9.6. The written objection may be submitted by mail, express mail, electronic transmission, or

8

personal delivery, but to be timely, it must be delivered to the Notice Administrator (not just postmarked or sent) prior to the Objection Deadline. SA ¶ 9.6.[6] Immediately upon receipt of any objection, the Notice Administrator shall forward the objection and all supporting documentation to counsel for the Parties. Prior to the hearing on Final Approval, Class Counsel shall file all such objections and supporting documentation with the Court. SA ¶ 9.6b.

### E. Release of Claims

In exchange for the Settlement consideration, Plaintiffs and each Settlement Class member, will provide a release that is set forth in paragraph 7.1 of the Settlement Agreement. The release covers claims "that relate to any labeling or other claim that was, or could have been, alleged in the Action to be false, misleading, or non-compliant with federal or state laws or regulations concerning the presence or absence of malic acid or other acidulants or identified flavoring or other ingredients as specified in formulations of the Products during the Class period, and the function, characterization, or nature of such ingredients that relate to the Challenged Claims, Challenged Ingredients, or other claims arising out of allegations of false or misleading advertising of the Products involving a common factual predicate that is

---

[6] Each objection must include: (i) the case name and number: *Hilsley v. General Mills, Inc.*, No. 3:18-cv-00395-L-BLM; (ii) the name, address and telephone number of the objector; (iii) the name, address, and telephone number of all counsel (if any) who represent the objector, including any former or current counsel who may be entitled to compensation for any reason if the objection is successful, and legal and factual support for the right to such compensation; (iv) documents or testimony sufficient to establish membership in the Settlement Class; (v) a detailed statement of any objection asserted, including the grounds therefor; (vi) whether the objector is, and any reasons for, requesting the opportunity to appear and be heard at the final approval hearing; (vii) the identity of all counsel (if any) representing the objector who will appear at the final approval hearing and, if applicable, a list of all persons who will be called to testify in support of the objection; (viii) copies of any papers, briefs, or other documents upon which the objection is based; (ix) a detailed list of any other objections submitted by the Class Member, or his/her counsel, to any class litigations submitted in any state or federal court in the United States in the previous five years (or affirmatively stating that no such prior objection has been made); and (x) the objector's signature, in addition to the signature of the objector's attorney (if any). Failure to include documents or testimony sufficient to establish membership in the Settlement Class shall be grounds for overruling and/or striking the objection on grounds that the objector lacks standing to make the objection. Failure to include any of the information or documentation set forth in this paragraph also shall be grounds for overruling an objection. SA ¶ 9.6a.

*Hilsley v. General Mills, Inc.*, No. 3:18-cv-00395-L-BLM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

149441247.1

asserted in the Litigation." SA ¶ 7.1.  The release specifically excludes personal injury claims regarding the products. SA ¶ 7.1.  The Released Claims are defined in Paragraph 2.28 of the Settlement Agreement and the Released Persons are defined in Paragraph 2.29 of the Settlement Agreement.

### F.   Class Counsel's Fees and Expenses and Plaintiffs' Incentive Awards

The Settlement Agreement provides that Class Counsel may request an award of attorneys' fees and costs in the amount of $725,000, subject to this Court's approval. SA ¶ 10.1. Plaintiffs may also request incentive awards in the amount of $5,000 each. SA ¶ 10.1. If the Court grants Plaintiffs' Motion for Preliminary Approval, then Plaintiffs will fully address the reasonableness of the requested fee and incentive awards in their forthcoming Motion for Attorneys' Fees, Costs, and Incentive Awards.

## IV.   LEGAL STANDARD FOR PRELIMINARY APPROVAL

Approval of a proposed class action settlement is governed by Federal Rule of Civil Procedure 23(e). "[T]he 2018 amendment to Rule 23(e) establishes core factors district courts must consider when evaluating a request to approve a proposed settlement." *Zamora Jordan v. Nationstar Mortg., LLC*, No. 2:14-CV-0175-TOR, 2019 WL 1966112, at *2 (E.D. Wash. May 2, 2019).

Rule 23(e) now provides that the Court may approve a class action settlement "only after a hearing and only on a finding that it is fair, reasonable, and adequate after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

*Hilsley v. General Mills, Inc.*, No. 3:18-cv-00395-L-BLM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

149441247.1

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other."

Fed. R. Civ. P. 23(e)(2); *Dashnaw v. New Balance Athletics, Inc.*, 2019 WL 3413444, at *5 (S.D. Cal. July 29, 2019) (Lorenz J.).

"Under Rule 23(e), both its prior version and as amended, fairness, reasonableness, and adequacy are the touchstones for approval of a class-action settlement." *Zamora*, 2019 WL 1966112, at *2. "The purpose of the amendment to Rule 23(e)(2) is [to] establish a consistent set of approval factors to be applied uniformly in every circuit, without displacing the various lists of additional approval factors the circuit courts have created over the past several decades." *Id*. Factors that the Ninth Circuit have typically considered include (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; and (6) the experience and views of counsel. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998);[7] *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

"While the Ninth Circuit has yet to address the amendment to Rule 23(e)(2)….the factors in amended Rule 23(e)(2) generally encompass the list of relevant factors previously identified by the Ninth Circuit." *Zamora*, 2019 WL 1966112, at *2 (alteration in original). Indeed, "[t]he goal of this amendment is not

---

[7] In *Hanlon*, the Ninth Circuit also instructed district courts to consider "the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026. This consideration is more germane to final approval and will be addressed at the appropriate time.

149441247.1

to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. "Accordingly, the Court applies the framework set forth in Rule 23 with guidance from the Ninth Circuit's precedent, bearing in mind the Advisory Committee's instruction not to let '[t]he sheer number of factors' distract the Court and parties from the 'central concerns' underlying Rule 23(e)(2)." *In re Extreme Networks, Inc. Securities Litigation*, 2019 WL 3290770, at *6 (N.D. Cal. July 22, 2019); *see also Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018).

## V.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.   Plaintiffs and Class Counsel Have Adequately Represented the Class

Rule 23(e)(2)(A) requires the Court to consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). This analysis is "redundant of the requirements of Rule 23(a)(4) and Rule 23(g), respectively." *Final approval criteria—Rule 23(e)'s multifactor test*, 4 NEWBERG ON CLASS ACTIONS § 13:48 (5th ed.). A determination of adequacy of representation requires that "two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000), *as amended* (June 19, 2000) (citing *Hanlon*, 150 F.3d at 1020); *see also Hefler*, 2018 WL 6619983, at *6.

The proposed class representatives in this action have no conflicts of interest with other class members and each have prosecuted this action vigorously on behalf of the Class. Each of the named Plaintiffs have suffered the same injuries as the

absent class members because each purchased the General Mills Fruit Flavored Snack Products, for personal and household use, in reliance on the "No Artificial Flavors" statement on the product label. FAC ¶¶ 68-84.  Each of the named Plaintiffs are dedicated to vigorously pursue this action on behalf of the class and each have kept themselves informed about the status of the proceedings. Marron Decl., ¶ 21. Accordingly, the named Plaintiffs have adequately represented the Class.

Class Counsel have also vigorously represented the Class and have no conflicts of interest. The Settlement was negotiated by counsel with extensive experience in consumer class action litigation. *See* Marron Decl., ¶¶ 24-49  & Ex. 4 (firm resume of Law Offices of Ronald A. Marron). Through the discovery process, Class Counsel has obtained sufficient information and documents to evaluate the strengths and weaknesses of the case. Marron Decl., ¶ 18. *See Final approval criteria—Rule 23(e)(2)(A): Adequate representation*, 4 NEWBERG ON CLASS ACTIONS § 13:49 (5th ed.) ("if extensive discovery has been done, a court may assume that the parties have a good understanding of the strengths and weaknesses of their respective cases and hence that the settlement's value is based upon such adequate information.").  The information reviewed by class counsel includes the function and effect of dl-malic acid in the Products during the class period and the labels for each of the Products at issue in use during the class period. Marron Decl., ¶ 18. Based on their experience, Class Counsel concluded that the Settlement provides exceptional results for the class while sparing the class from the uncertainties of continued and protracted litigation. Marron Decl., ¶ 22.  *See, e.g., In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 976 (9th Cir. 2009) (Deference to Class Counsel's evaluation of the Settlement is appropriate because "[p]arties represented by competent counsel are better positioned than courts to

produce a settlement that fairly reflects each party's expected outcome in litigation."). Accordingly, adequacy of representation is satisfied.

**B.    The Settlement was Negotiated at Arm's Length**

Rule 23(e)(2)(B) requires the Court to consider whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). "This inquiry aims to root out settlements that may benefit the plaintiffs' lawyers at the class's expenses, sometimes called 'collusive settlements.'" *Final approval criteria—Rule 23(e)(2)(B): Arm's length negotiation*, 4 NEWBERG ON CLASS ACTIONS § 13:50 (5th ed.). Here, the settlement was negotiated at arm's length after hard-fought litigation and discovery. The Parties did not begin settlement discussions until after the *Hilsley* and *Morris* Courts had entered orders on General Mills' motions to dismiss. Marron Decl., ¶ 19. Settlement discussions also did not begin until after the Parties had exchanged written discovery and documents, which speaks to the fundamental fairness of the process. Marron Decl., ¶ 19. *See Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair."). Moreover, the Parties attended two full-day mediation sessions before Jill R. Sperber, Esq. Marron Decl., ¶¶ 15-17. The settlement negotiations were hard-fought, with both Parties and their counsel thoroughly familiar with the applicable facts, legal theories, and defenses on both sides. Marron Decl., ¶ 20.

**C.    The Relief Provided to the Class is Adequate**

Rule 23(e)(2)(C) requires that the Court consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). "Before the Rule arrives at the articulation of sub-factors, its general

14

*Hilsley v. General Mills, Inc.,* No. 3:18-cv-00395-L-BLM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

149441247.1

directive asks whether the class's relief is adequate." *Final approval criteria—Rule 23(e)(2)(C): Adequate relief*, 4 NEWBERG ON CLASS ACTIONS § 13:51 (5th ed.). "In evaluating the value of the class members' claims, the court need not decide the merits of the case nor substitute its judgment of what the case might be worth for that of class counsel; however, 'the court must at least satisfy itself that the class settlement is within the 'ballpark' of reasonableness.'" *Id.* (citation omitted).

Here, the Settlement Class Members are receiving a substantial direct benefit from General Mills' website modification and packaging changes. SA ¶ 5.2. The injunctive relief provided by this settlement has value because it protects the class from further exposure to misleading advertising. Indeed, the "primary form of relief available under [California's consumer protection laws] to protect consumers from unfair business practices is an injunction." *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 954 (2017) (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 320 (2009)). In fact, similar settlements providing meaningful injunctive relief for the Class, and monetary amounts only for attorney's fees, costs, and incentive payments to the named plaintiffs, have been approved by numerous district courts in this Circuit. *See, e.g., Littlejohn,* 2019 WL 2514720, at *5 (approving settlement that affords "meaningful injunctive relief."); *Lyons v. CoxCom, Inc.*, No. 08-cv-2047-HCAB (S.D. Cal. Aug. 23, 2010) (granting final approval of Rule 23(b)(2) settlement where class members did not receive a direct monetary benefit but were required to release monetary claims); *Carr*, 51 F. Supp. 3d at 970 (same); *Guttmann v. Ole Mexican Foods, Inc.*, 2016 WL 91074261 (N.D. Cal. Aug. 1, 2016) (same); *Johnson v. Triple Leaf Tea Inc.*, 2015 WL 8943150, at *1 (N.D. Cal. Nov. 16, 2015) (same); *In re Quaker Oats Labeling Litig.*, 2014 WL 12616763, at *1 (N.D. Cal. July 29, 2014) ("The parties have shown…that a settlement providing only injunctive relief is appropriate here given the value of that relief and the limited possibility of recovering damages and distributing them in an economically-feasible manner.").

The value of the injunctive relief in this case is particularly great given the *de minimums* amount of monetary damages that would be available at trial assuming Plaintiffs were to prevail. Here, the Products at issue generally cost less than $5.00 per unit. FAC ¶ 94. [8]  Damages in this action would not be based on the full purchase price of the Products, but rather the price premium that is associated with the challenged labeling claims like "no artificial flavors" and "naturally flavored." *See Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1048 (C.D. Cal. 2018) ("The proper measure of restitution in a mislabeling case is the amount necessary to compensate the purchaser for the difference between a product as labeled and the product as received.") (quoting *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F.Supp.3d 1050, 1118 (C.D. Cal. 2015)). General Mills has submitted an expert report opining that the "No Artificial Flavors" labeling claim is not material to consumers and therefore price premium damages cannot be proven. Marron Decl., ¶ 9.

Even if Plaintiffs were to prove that there is a price premium associated with the challenged labeling claims, the potential recovery would likely be a minimal amount given the fact that the Products at issue are low priced fruit snack products. It would be economically infeasible to distribute this small sum of money to the class members. *See, e.g., Johnson*, 2015 WL 8943150, at *6 (holding that injunctive relief settlement was "fair, reasonable, and adequate" when considering "the realistic range of outcomes[,] including the amount Plaintiff might receive if she prevailed at trial."); *Carr*, 51 F. Supp. 3d at 977 ("this suit has obtained injunctive relief for the class, so it is inaccurate to say that the Class is getting 'nil.' While the Court would have preferred that the Settlement provide the Class with some compensation, the

---

[8] *See* https://www.walmart.com/ip/Scooby-Doo-Fruit-Snacks-10-ct-0-8-oz/16935522 (last visited September 2, 2020) (showing that Scooby Doo Fruit Flavored Snacks sell for $2.12 and Walmart); https://www.target.com/p/mott-39-s-fruit-flavored-snacks-pack-of-22/-/A-51127752 (last visited September 2, 2020) (showing that Mott's Fruit Flavored Snacks sell for $4.19 at Target); https://www.target.com/p/fruit-gushers-tropical-flavored-fruit-snacks-6ct/-/A-13025858        (last visited September 2, 2020) (showing that Gushers Fruit Snacks sell for $2.29 at Target).

149441247.1

arguments Class Counsel have made concerning the attendant difficulties of administering such relief are legitimate[.]").

The costs associated with implementing the injunctive relief are also significant and provide a benefit to the Settlement Class. With respect to the packaging changes, the settlement covers approximately 151 individual products and General Mills estimates that the cost of the labeling change will be about $450,000, or about $3,000 per product. *See* Declaration of Tyler Robles in Support of Preliminary Approval of Class Action Settlement filed concurrently herewith ("Robles Decl."), ¶¶ 4-5. With respect to the website modification, General Mills estimates that this will cost an additional $20,000. *See* Declaration of Vanessa Santana in Support of Preliminary Approval of Class Action Settlement filed concurrently herewith ("Santana Decl."), ¶ 5.

More significantly, the injunctive relief afforded by this action will provide benefits to the Settlement Class because most Settlement Class Members are repeat purchasers of the Products. *See Littlejohn v. Copland*, 2020 WL 3536531, at *2 (9th Cir. June 30, 2020) (affirming final approval of approval of injunctive relief settlement and holding that the injunctive relief has value because "repeat buyers who would derive value from the Settlement's injunctive relief upon each future purchase of SweeTARTS."). Here, purchasers of the Products purchase the snack products about four times per year, on average. *See* Declaration of Jeveny Hammer in Support of Preliminary Approval of Class Action Settlement filed concurrently herewith ("Hammer Decl."), ¶ 5. Accordingly, "a significant percent of Fruit Flavored Snacks purchasers are repeat buyers who have purchased the Fruit Flavored Snacks before and are likely to do so again." Hammer Decl., ¶ 6. Therefore, the Court should find that the relief provided to the Settlement Class is adequate.

149441247.1

1

### 1.     The Costs, Risks, and Delay of Trial and Appeal Support
Preliminary Approval

The costs, risks, and delay of trial and appeal further support preliminary approval.  Proceeding in this litigation in the absence of settlement poses various risks such as failing to certify a class, having summary judgment granted against Plaintiffs, or losing at trial. Such considerations have been found to weigh heavily in favor of settlement. *See Rodriguez*, 563 F.3d at 966; *Curtis-Bauer v. Morgan Stanley & Co., Inc.*, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class."). Even if Plaintiffs are able to certify a class, there is also a risk that the Court could later decertify the class action. *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement.") (internal citations omitted). The Settlement eliminates these risks by ensuring Class Members a recovery that is "certain and immediate, eliminating the risk that class members would be left without any recovery . . . at all." *Fulford v. Logitech, Inc.*, 2010 U.S. Dist. LEXIS 29042, at *8 (N.D. Cal. Mar. 5, 2010).

### 2.     The Proposed Method of Distributing Relief to the Class Is Effective

"[T]he goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." *Final approval criteria—Rule 23(e)(2)(C)(ii): Distribution method*, 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed.). Because this settlement provides injunctive relief, Settlement Class Members will automatically receive the benefits of the Settlement without having to file a claim form.  If class members wish to exclude themselves from the settlement, and file their own action for damages, then the settlement provides a procedure by which they can do so by opting out. SA ¶ 9.7. The Settlement also provides an opportunity for Settlement Class members to

18

*Hilsley v. General Mills, Inc.*, No. 3:18-cv-00395-L-BLM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

149441247.1

object to the Settlement, should they chose to do so. SA ¶ 9.6.

### 3. The Proposed Attorneys' Fee Award is Fair and Reasonable

As discussed above, the Settlement Agreement provides that Class Counsel may request an award of attorneys' fees and costs in the amount of $725,000, subject to this Court's approval. SA ¶ 10.1. Class Counsel's fee request will be based on the lodestar method, which is the proper method for calculating attorneys' fees in an injunctive relief settlement. *See Littlejohn*, 2020 WL 3536531, at *2 (affirming fee award based on lodestar method in an injunctive relief settlement); *Carr*, 51 F. Supp. 3d at 978 ("because there is no common fund, the lodestar analysis applies to Class Counsel's [fee] request."). If the Court grants Plaintiffs' Motion for Preliminary Approval, then Plaintiffs will fully address the reasonableness of the requested fee and incentive awards in their forthcoming Motion for Attorneys' Fees, Costs, and Incentive Awards.

### 4. No Side Agreements Were Made in Connection with the Proposed Settlement

Rule 23(e)(3) requires that the Parties "must file a statement identifying any agreement made in connection with the [settlement] proposal." Fed. R. Civ. P. 23(e)(3). No agreements were made in connection with the settlement aside from the Settlement Agreement itself. Marron Decl., ¶ 23.

### D. The Proposed Settlement Treats Class Members Equitably Relative to Each Other

Rule 23(e)(2)(D) requires the Court to consider whether the settlement agreement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "A distribution of relief that favors some class members at the expense of others may be a red flag that class counsel have sold out some of the class members at the expense of others, or for their own benefit." *Final approval criteria—Rule 23(e)(2)(D): Intra-class equity*, 4 NEWBERG ON CLASS ACTIONS § 13:56 (5th ed.). Here, the settlement treats each class member equally because each

*Hilsley v. General Mills, Inc.*, No. 3:18-cv-00395-L-BLM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

149441247.1

Settlement Class Member will automatically receive the benefits afforded by the injunctive relief.

## VI.   THE COURT SHOULD PROVISIONALLY CERTIFY THE CLASS AND ENTER THE PRELIMINARY APPROVAL ORDER

The Ninth Circuit has recognized that certifying a settlement class to resolve consumer lawsuits is a common occurrence. *Hanlon*, 150 F.3d at 1019. When presented with a proposed settlement, a court must first determine whether the proposed settlement class satisfies the requirements for class certification under Rule 23. In assessing those class certification requirements, a court may properly consider that there will be no trial. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."). For the reasons below, the Class meets the requirements of Rule 23(a) and (b).

### A.   The Settlement Class Satisfied Rule 23(a)

#### 1.   *Numerosity*

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." *See* Fed. R. Civ. P. 23(a)(1). "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members, but not satisfied when membership dips below 21." *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000). Here, the proposed Class is comprised of thousands of consumers who purchased the fruit snack Products – a number that obviously satisfies the numerosity requirement. Accordingly, the proposed Class is so numerous that joinder of their claims is impracticable.

#### 2.   *Commonality*

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." *See* Fed. R. Civ. P. 23(a)(2). Commonality is established if plaintiffs and class members' claims "depend on a common contention," "capable of class-wide

resolution ... [meaning] that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal- Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Because the commonality requirement may be satisfied by a single common issue, it is easily met. 1H. Newberg & Conte, Newberg on Class Actions § 3.10, at 3-50 (1992).

There are ample issues of both law and fact here that are common to the members of the Class. All of the Class Members' claims arise from a common nucleus of facts and are based on the same legal theories. Plaintiffs allege that General Mills misrepresented the fruit snack Products by claiming that the Products contain "No Artificial Flavors." These alleged misrepresentations were made in a uniform manner to each of the class members. Accordingly, commonality is satisfied by the existence of these common factual issues. *See Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994) (commonality requirement met by "the alleged existence of common discriminatory practices").

Plaintiffs' claims are brought under legal theories common to the Class as a whole. Alleging a common legal theory alone is enough to establish commonality. *See Hanlon*, 150 F.3d at 1019 ("All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."). Here, all of the legal theories asserted by Plaintiffs are common to all Class Members. Given that there are virtually no issues of law which affect only individual members of the Class, common issues of law clearly predominate over individual ones. Thus, commonality is satisfied.

### 3. Typicality

Rule 23(a)(3) requires that the claims of the representative plaintiffs be "typical of the claims ... of the class." *See* Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially

21

*Hilsley v. General Mills, Inc.*, No. 3:18-cv-00395-L-BLM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

149441247.1

identical." *See Hanlon*, 150 F.3d at 1020. In short, to meet the typicality requirement, the representative plaintiffs simply must demonstrate that the members of the settlement class have the same or similar grievances. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

The claims of the named Plaintiffs are typical of those of the Class. Like those of the Class, Plaintiffs' claims arise out of their purchase of the General Mills fruit snack Products after relying on General Mills' "No Artificial Flavors" labeling claims. Plaintiffs have precisely the same claims as the Class, and must satisfy the same elements of each of their claims, as must other Class Members. Supported by the same legal theories, the named Plaintiffs and all Class Members share claims based on the same alleged course of conduct. Therefore, Plaintiffs satisfy the typicality requirement.

### 4.    *Adequacy*

The final requirement of Rule 23(a) is set forth in subsection (a)(4) which requires that the representative parties "fairly and adequately protect the interests of the class." *See* Fed. R. Civ. P. 23(a)(4). Adequacy of the class representatives and Class Counsel was fully addressed in Section V(A) above and will not be repeated here.

### B.    The Settlement Class Satisfies Rule 23(b)(2)

Certification under Rule 23(b)(2) is appropriate where a defendant has acted on "grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "A class seeking monetary damages may be certified pursuant to Rule 23(b)(2) where [monetary] relief is 'merely incidental to [the] primary claim for injunctive relief.'" *Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1195 (9th Cir. 2001) (citing *Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 780 (9th Cir. 1986)).

1   Here, the settlement provides for injunctive relief and certification under Rule
2   23(b)(2) is appropriate. Plaintiffs' claims for damages, which are not at issue in the
3   Settlement, are "incidental" to the First Amended Complaint's primary claims for
4   injunctive relief. *Dukes*, 131 S. Ct. at 2557. Plaintiffs' primary claims under the
5   CLRA were for injunctive relief, and the UCL and FAL are primarily equitable
6   remedy statutes. *In re Tobacco II Cases*, 46 Cal. App. 4th at 320. Plaintiffs and the
7   Class' claims for restitution were secondary in that any compensation would have
8   flowed directly out of Defendant's misrepresentations or omissions. *See id.* at 2559
9   (stating that damages are incidental when they "flow directly from liability to the
10  class as a whole on the claims forming the basis of the injunctive or declaratory
11  relief" (citing *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998)).
12  Plaintiffs' basis for seeking corrective labeling and website modifications also flows
13  directly from why General Mills is liable to the Class as a whole: the Products'
14  allegedly false and deceptive marketing.

15  Further, if General Mills' labeling conduct was unlawful as to one Plaintiff, it
16  was unlawful as to the entire Class. *Id.* at 2557 (stating Rule 23(b)(2) injunctive
17  relief is appropriate when defendant's conduct is unlawful "as to all of the class
18  members" and applies "when a single injunction or declaratory judgment would
19  provide relief to each member of the class," thereby benefitting each Class member
20  equally). Here, the injunctive relief agreed to, in the form of corrective advertising,
21  will afford relief to each member of the Class and benefit the Class equally. The
22  Court should, therefore, certify the Class under Rule 23(b)(2) for settlement
23  purposes.

24  ### C.   The Settlement Class Also Satisfies Rule 23(b)(3)

25  The Settlement contemplates that the Class will be certified under Rule
26  23(b)(3) or Rule 23(b)(2), or both. SA ¶ 9.2. In the Ninth Circuit, a class may be
27  certified under both Rules 23(b)(2) and 23(b)(3). *Smith v. Univ. of Wash. Law Sch.*,
28  233 F.3d 1188, 1196 (9th Cir. 2000). Certification under Rule 23(b)(3) is appropriate

23

*Hilsley v. General Mills, Inc.*, No. 3:18-cv-00395-L-BLM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

149441247.1

"whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022 (quoting 7A C.A. Wright, A.R. Miller, & M. Kane, Federal Practice & Procedure §1777 (2d ed. 1986)). Certification under Rule 23(b)(3) requires that (1) questions of law or fact common to the class predominate over questions affecting only individual members; and (2) a class action is superior to resolution by other available means. Fed. R. Civ. P. 23(b)(3); *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1062 (C.D. Cal. 2010).

Here, Plaintiffs would have to prove that the Products' labeling is false and deceptive before any remedy at all can be achieved. *See* Cal. Civ. Code §1750; Bus & Prof. Code §§ 17200, 17500; Minn. Stat. § 325F.68-70. Thus, the central issue for every Class Member is whether the alleged misrepresentations made on the Products' packaging were likely to deceive a reasonable consumer. *In re Tobacco II Cases*, 46 Cal. 4th at 312. Under these circumstances, there is sufficient basis to find that the common question – whether General Mills' advertising was likely to deceive a reasonable consumer – predominates. *See Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658, 669 (C.D. Cal. 2009) (predominance satisfied when alleged misrepresentation of product's health benefits were displayed on every package); *In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 159-160 (Ct. App. 2010) (citing *Tobacco II* and holding that "relief under the UCL is available without individualized proof of deception, reliance and injury," and reliance for the CLRA may be presumed classwide where a misrepresentation was material).

There are also no concerns here about certifying a nationwide settlement class under *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 590 (9th Cir. 2012). In *Mazza*, the Ninth Circuit held that, when certifying a nationwide class, the burden is on the defendant to show "'that foreign law, rather than California law, should apply to class claims.'" *See also In re MDC Holdings Securities Litigation*, 754 F. Supp. 785, 803–04, 808 (S.D. Cal. 1990) (the "court presumes that California law controls

*Hilsley v. General Mills, Inc.*, No. 3:18-cv-00395-L-BLM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

149441247.1

unless and until defendants show that choice of law problems render the common law claims inappropriate for class treatment."); *In re Seagate Technologies Sec. Litigation*, 115 F.R.D. 264, 269, 274 (N.D. Cal. 1987) (applying California law to nationwide class because "[a]bsent the defendant carrying [its] burden, California law would govern the foreign state plaintiffs' claims" and noting several other decisions reaching this conclusion).

The Ninth Circuit recently held that differences in state law do not defeat predominance in the settlement class context. *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 561 (9th Cir. 2019). This is especially relevant here because General Mills is not opposing the certification of a nationwide class involving California and Minnesota law for purposes of the Settlement. Consequently, for this Settlement, General Mills is voluntarily subjecting itself to California and Minnesota law, including California's Consumer Legal Remedies Act and Minnesota's Prevention of Consumer Fraud Act, which provide greater protections to consumers than other jurisdictions. Where, as here, General Mills' products were widely distributed and there are significant contacts with California residents, and where General Mills does not oppose California law applying to the nationwide Settlement Class, the *Mazza* choice of law analysis is easily satisfied because the interests of other states will not be impaired. *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 561. Minnesota's Prevention of Consumer Fraud Act can also be applied to the nationwide Settlement Class because General Mills maintains its principal place of business in Minnesota and Minnesota has significant contacts with the claims of each class member.

Moreover, the considerations driving the rest of the *Mazza* analysis are inapplicable here. In the settlement context, other states' interests would not be undermined by the application of California and Minnesota law because General Mills is opting into a regime that protects consumers more vigorously than other states. In *Hanlon*, the Ninth Circuit also held that "the idiosyncratic differences

*Hilsley v. General Mills, Inc.*, No. 3:18-cv-00395-L-BLM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

149441247.1

between state consumer protection laws are not sufficiently substantive to predominate over the shared claims." *Hanlon*, 150 F.3d at 1022–23; *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 561 ("no party argued that California's choice-of-law rules should not apply to this class settlement"); *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 301 (3d Cir. 2011) ("variations in the rights and remedies available to injured class members under the various laws of the fifty states [do] not defeat commonality and predominance."); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 315 (N.D. Cal. 2018) (finding that differences between state consumer protection laws do not defeat predominance and certifying nationwide settlement class). Accordingly, the Court should find that common issues predominate.

Class treatment is also the superior means to adjudicate Plaintiffs' Claims. For superiority, the court should consider: "(1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; and (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum." *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1062 (C.D. Cal. 2010); *see also id.* at 1066 (finding superiority met where nationwide advertising was uniform and classwide reliance on the advertising was presumed). A fourth factor—the difficulties of managing the class action—is not considered when certification is used only for settlement. *Id.* at n.12. Continued litigation without class certification could potentially "dwarf potential recovery," *Hanlon*, 150 F.3d at 1023, and superiority is satisfied.

## VII. PROPOSED SCHEDULE OF EVENTS

In connection with Preliminary Approval of the Settlement, the Court should also set a date and time for the Final Approval Hearing. Other deadlines in the Settlement approval process, including the deadlines for requesting exclusion from the Settlement Class or objecting to the Settlement, will be determined based on the

149441247.1

date of the Final Approval Hearing or the date on which the Preliminary Approval Order is entered. The Parties respectfully propose the following schedule:

| EVENT | DEADLINE |
|---|---|
| Deadline for publishing Notice | 14 days after entry of the Preliminary Approval Order. |
| Class Counsel to File a Motion for Attorneys' Fees, Costs, and Incentive Awards | 14 days before objection deadline |
| Deadline to File Motion for Final Approval of Settlement | 14 days before objection deadline |
| Exclusion Deadline | 30 days prior to Final Approval Hearing |
| Objection Deadline | 30 days prior to Final Approval Hearing |
| Responses to Objections Due | 14 days prior to Final Approval Hearing |
| Final Approval Hearing | Approximately 100 days after Order Granting Preliminary Approval |

## VIII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval, provisionally certify the Class, approve the proposed notice plan, and enter the Proposed Preliminary Approval Order.

DATED: September 4, 2020                    Respectfully submitted,


                                            */s/ Ronald A. Marron*
                                            RONALD A. MARRON

149441247.1

**LAW OFFICES OF**
**RONALD A. MARRON**
RONALD A. MARRON
*ron@consumersadvocates.com*
Michael T. Houchin
*mike@consumersadvocates.com*
Lilach Halperin
*lilach@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

**LAW OFFICE OF DAVID ELLIOT**
DAVID ELLIOT
*davidelliot@elliotlawfirm.com*
2028 3rd Avenue
San Diego, CA 92101
Telephone: (858) 228-7997
***Counsel for Plaintiffs and the Proposed***
***Class***

*Hilsley v. General Mills, Inc.*, No. 3:18-cv-00395-L-BLM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

149441247.1