David T. Biderman, Bar No. 101577
DBiderman@perkinscoie.com
PERKINS COIE LLP
1888 Century Park E., Suite 1700
Los Angeles, CA  90067-1721
Telephone:  310.788.9900
Facsimile:   310.843.1284

Charles Sipos, *pro hac vice*
Lauren Watts Staniar, *pro hac vice*
csipos@perkinscoie.com
lstaniar@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101
Telephone:  206.359.8000
Facsimile:   206.359.9000

Attorneys for General Mills, Inc.; General Mills Sales, Inc.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CRYSTAL HILSLEY, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL MILLS, INC.; and GENERAL MILLS SALES, INC.;<br><br>Defendants. | Case No. 3:18-cv-00395-L-BLM<br><br>CLASS ACTION<br><br>**GENERAL MILLS, INC. AND GENERAL MILLS SALES, INC.'S NON-OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL**<br><br>Date:    October 5, 2020<br>Time:    10:30 a.m.<br>Ctrm:    5B<br>Judge:   Hon. M. James Lorenz |

Defendants General Mills, Inc. and General Mills Sales, Inc. respectfully submit this non-opposition and joinder in support of Plaintiffs Crystal Hilsley, Adrienne Morris, Nikki Cook, and David Christensen's Unopposed Motion for Preliminary Approval of Class Action Settlement ("Motion"). *See* ECF No. 45.

## I. INTRODUCTION

The Class Action Settlement the Parties negotiated is fair and reasonable. *See* ECF No. 45-3 (Class Action Settlement Agreement). It provides important injunctive relief to the class that will help consumers understand the role of malic acid and other acidulants in General Mills' Fruit Flavored Snacks. Interested consumers will learn from General Mills' labeling and website change that General Mills means what it says when it labels its products "No Artificial Flavors" and "naturally flavored"—that the flavors in those products come from all-natural sources. They will also learn that the malic acid or other acidulants in the Fruit Flavored Snacks are not intended to impart the characterizing flavor of the products. So, those substances are not flavors. As shown in the declaration of Dr. Ran Kivetz, PhD, members of the class who are most interested in purchasing food without artificial flavors are also those most likely to seek out and understand the additional information the settlement provides. Ex. A, ¶ 8.

This relief is particularly meaningful given the weaknesses in Plaintiffs' case. As General Mills has maintained throughout the litigation, the malic acid in the Fruit Flavored Snacks does not function as a flavor. General Mills' expert reports confirm this fact: Marianne Gillette's analysis of a sensory test conducted by DragonflySCI shows that "malic acid does not add characterizing flavor to either the cherry or grape fruit flavored snack," a conclusion that applies to the remainder of the snacks at issue here. *See* Ex. B ¶¶ 53, 58. Dolf DeRovira's declaration explains that "[m]alic acid is not used as a characterizing flavor in food." Ex. C, ¶ 2. Given this evidence, Plaintiffs were likely to lose this case at summary judgment or trial.

For these reasons and those stated in Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, General Mills respectfully joins in Plaintiffs' request that this Court preliminarily approve the Settlement Agreement.

## II.  ANALYSIS

Federal Rule of Civil Procedure 23(e)(2) provides that approval of a class action settlement is appropriate if the Court finds it "fair, reasonable, and adequate" after considering several factors, including whether the "relief provided for the class is adequate." Fed. R. Civ. P. 23(e)(2)(C). Courts in the Ninth Circuit balance several factors when considering whether a settlement is fair and reasonable, including "the strength of the plaintiffs' case," and "the expense, complexity, and likely duration of further litigation." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). The Rule 23(e)(2) factors compliment, but do not replace, the *Hanlon* analysis. *Zamora v. Nationstar Mortgage, LLC*, 2019 WL 1966112, at *2 (E.D. Wash. May 2, 2019).

General Mills agrees with Plaintiffs' assertion in the Motion that the Class Action Settlement is fair and reasonable under these criteria. General Mills writes separately to reinforce two points that make approval particularly warranted here: First, the Settlement Agreement is fair considering the weaknesses in Plaintiffs' case. *Hanlon*, 150 F.3d at 1026 (courts should consider the strength of Plaintiffs case). General Mills' expert reports establish that malic acid does not function as a flavor in the Fruit Flavored Snacks, meaning Plaintiffs were likely to lose this case at summary judgment or trial. Given this likely outcome, the class members are fortunate to receive any relief at all. Second, the "relief provided to the class is adequate" because class members interested the "No Artificial Flavors" claim are likely to visit the General Mills website and review the information regarding malic acid before purchasing the products. Fed. R. Civ. P. 23(e)(2)(C). So, the injunctive relief is particularly meaningful for the class members that care the most about the

challenged claims.

### A. Plaintiff's case is weak because malic acid does not function as a flavor in the Fruit Flavored Snacks.

Plaintiff alleges that "No Artificial Flavors" and "naturally flavored" claims on a variety of General Mills Fruit Flavored Snacks products are misleading because the snacks contain malic acid, and malic acid is an artificial flavor. Am. Compl. ¶¶ 20–23. So, Plaintiff's case depends entirely on proving that the malic acid in the Fruit Flavored Snacks functions as the snacks' characterizing flavor, as opposed to one of its other regulatorily approved functions. But General Mills' expert reports, which are effectively unopposed, directly refute this fact. Given the strength of these reports, Plaintiff was likely to lose this case at summary judgment or trial. So, the class is fortunate to secure any relief.

### 1. Malic acid can serve several functions in food.

Ingredients in food are labeled according to their function. For example, an "artificial flavor" or "artificial flavoring" is "any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, rood, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof." 21 C.F.R. § 101.22(a). A synthetic ingredient must be declared as an "artificial flavor" only if it functions as such. *See Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 890 (C.D. Cal. 2013) ("[S]ucralose [is not] a 'flavor.' Thus, the fact that [it is] allegedly unnatural does not render [the defendant's] 'all natural flavors' label false or misleading under FDA guidelines.").

Malic acid has several different potential functions in food. *See* 21 C.F.R. § 184.1069(c). Malic acid may be used "as a flavor enhancer as defined in § 170.3(o)(11) of this chapter, flavoring agent and adjuvant as defined in § 170.3(o)(12) of this chapter, and pH control agent as defined in § 170.3(o)(23) of this chapter." *Id.* 21 C.F.R. § 170.3(o) makes clear that "flavors," "pH control

agents," and "flavor enhancers" are different things. A flavoring agent or adjuvant is a "substance[] added to impart or help impart a taste or aroma in food." *Id.* § 170.3(o)(12). A pH control agent is a "substance[] added to change or maintain active acidity or basicity, including buffers, acids, alkalies, and neutralizing agents." *Id.* § 170.3(o)(23). And "flavor enhancers" occupy yet another category, defined as "[s]ubstances added to supplement, enhance, or modify the original taste and/or aroma of a food, without imparting a characteristic taste or aroma of its own." *Id.* § 170.3(o)(11).

Therefore, the malic acid in the Fruit Flavored Snacks must be disclosed as an artificial flavor only if its function is "to impart flavor," 21 C.F.R. § 101.22(a), as opposed to imparting taste (making it a flavor enhancer) or lowering pH (making it a pH control agent).

### 2. The malic acid in the Fruit Flavored Snacks does not function as a flavor.

Prior to executing the Settlement Agreement, General Mills was prepared to prove at summary judgment (or trial, if necessary) that the malic acid in the Fruit Flavored Snacks does not function as a flavor. The flavors General Mills adds to the Fruit Flavored Snacks are natural flavors General Mills obtains from a vendor, known in the industry as a "flavoring house." These substances are the grape, cherry, and berry flavors that give the Fruit Flavored Snacks their "characterizing flavor." 21 C.F.R. § 101.22(i)(a). They are certified natural by the flavoring houses and disclosed on the Fruit Flavored Snacks ingredient lists as "natural flavors."

General Mills adds malic acid to the Fruit Flavored Snacks to lower the Snacks' pH and set the pectin; not as a flavor. Most obviously, there is no "malic acid" flavored Fruit Flavored Snack. General Mills witnesses confirmed that malic acid is a functional buffer ingredient—it is used along with other acids to lower pH and set the pectin, as well as to prevent against microbial growth. Finally, the sequence in which General Mills adds malic acid to the Fruit Flavored Snacks

confirms that it's not a flavor. Each flavor of Fruit Flavored Snack is made from a slurry with the same base ingredients (sugar, starch, and buffers, including malic acid). Flavors and colors are added later. In other words, a cherry Fruit Flavored Snack and a grape Fruit Flavored Snack share the same amount of malic acid even though they have different characterizing flavors.

General Mills confirmed this internal investigation with two expert reports. *First*, General Mills worked with a leading sensory testing firm—DragonflySCI—and a food scientist—Marianne Gillette—to evaluate the actual impact of malic acid on the Fruit Flavored Snacks' flavor. *See* Ex. B (Expert Declaration of Marianne Gillette). Based on the sensory testing conducted by DragonflySCI, Ms. Gillette confirmed that "malic acid does not impart or reinforce a characterizing flavor in the cherry and grape fruit flavored snacks we tested," and "[m]alic acid does not function as a flavor in the Fruit Flavored Snacks." *Id.* at ¶¶ 1.A, 1.B.

Ms. Gillette analyzed the results of a sensory test of the actual Fruit Flavored Snacks at issue in the litigation. *Id.* General Mills created two versions of cherry and grape Fruit Flavored Snacks: one with malic acid (per the traditional formula) and one without malic acid. *Id.* ¶ 40. A panel of qualified testers sampled both versions of the Fruit Flavored Snacks in a controlled environment and reported on any differences in flavor. *Id.* ¶¶ 42, 44–45. For cherry, the sensory panel perceived no statistically significant difference between the current formulation (with malic acid) and the test formulation. *Id.* at 18, 20 (Table 2, Fig. 7). For grape, the sensory panel found that the current formulation (with malic acid) was stronger in sour taste and aftertaste, but had no statistically significant difference in overall flavor, including grape and berry flavor. *Id.* at 17, 19 (Table 1, Fig. 6). Any differences detected by the expert panel were "weak in magnitude and unlikely to be perceptible by most consumers." *Id.* ¶ 51.

Based on these findings, Ms. Gillette concluded that "it is clear that malic acid does not add characterizing flavor to either the cherry or the grape fruit

flavored snack." *Id.* ¶ 53. She further explained:

> In the grape snack only, malic acid does slightly increase the basic taste of sourness at a level that is unlikely to be detected by most consumers. In these products, the malic acid impact is not meaningful enough to impact the total aroma, total flavor or overall aftertaste. It is not making the overall flavor experience stronger, despite the slight increase in sourness. Malic Acid is not characterizing or reinforcing the grape or the cherry flavor. It is not adding or impacting any of the aromatics or the overall perceived flavor of the snacks.

*Id.* ¶ 53. The flavor and texture profiles of the test and control Fruit Flavored Snacks (i.e., the snacks with and without malic acid) "might be considered a 'match' in product development," meaning "there are insufficient differences in the test and control to warrant further product development effort. The test and control flavor profiles are extremely similar." *Id.* ¶ 57. These conclusions apply generally to the Fruit Flavored Snacks at issue here because the snacks have similar formulas and flavor profiles. *See id.* ¶ 58.

*Second*, General Mills worked with an expert flavorist—Dolf DeRovira—to understand whether malic acid is typically used as a flavor in foods. Mr. DeRovira opined that "[m]alic acid is not used as a characterizing flavor in food." Ex. C. ¶ 2.a. Rather, "[m]alic acid is more commonly used by food manufacturers, not flavorists, as a food ingredient either to adjust pH or," in some limited circumstances, as a flavor enhancer. *Id.* ¶ 2.c. Mr. DeRovira explained the differences between taste and flavor:

> Flavor is a complex, aromatic substance perceived primarily in the nose. Taste indicates one of the five tastes—salt, sweet, bitter, sour, umami—and is perceived primarily on the tongue. Substances like malic acid that lack aromatic properties and impart only a taste (sour) are necessarily not flavors because those substances are perceived entirely through the taste buds, not in the nose.

Ex. C ¶ 42. Applying this opinion to malic acid, Mr. DeRovira concluded that malic

acid "does not impart of a characterizing flavor or aroma of its own and is therefore not a flavor under any of the definitions [of flavor] discussed above." *Id.* ¶ 44.

To the extent malic acid changes the taste of the Fruit Flavored Snacks, it does so as a flavor enhancer, not as a flavor. Ex. C ¶ 32; *see also* Ex. B ¶ 53 (Gillette explaining that malic acid very slightly impacts "sour" perception in the grape Fruit Flavored Snacks). By lowering the pH of the Fruit Flavored Snacks, malic acid may make the Fruit Flavored Snacks sourer (all acids do this). Ex. C. ¶ 18. But that does not mean malic acid functions as a flavor under the FDA's flavoring regulations. Flavor enhancers impart basic taste sensations—sweet, salty, sour, bitter, and umami—while flavors are complex, aromatic substances that give a food a defining flavor. *See* Ex. B ¶¶ 59–61. For example, a lemon candy may be tart, while lemon pie is sweet. Both foods are flavored with lemon (the characterizing flavor) but have different flavor enhancers (acid for the candy and sweetener for the pie). Ex. C ¶ 37. Ingredients that impart basic tastes are not flavors and need not be declared as such. Food & Drug Admin., Compliance Policy Guide, 2001 WL 34786546, at *39 (Jan. 1, 2016) ("There are many substances whose effect on the taste of food is an important consideration in their use, which are neither "spices" or "flavorings" and which we have consistently refused to sanction being declared as "spices" or "flavorings" when used as ingredient"); Ex. C ¶ 38. While malic acid may be sour, it does not have a smell. Ex. B ¶ 63 (Gillette explaining that she smelled malic acid in water, and there was no aroma). Flavors, on the other hand, are extremely aromatic (aroma is a key component of flavor). Ex. C ¶ 34 (explaining retronasal stimulation characteristic of flavors). For this additional reason, malic acid is not a flavor.

Plaintiff would have been unable to rebut this evidence at summary judgment. General Mills anticipates that Plaintiffs would have relied on the declaration of Lazlo Somogyi, as Plaintiff's counsel has in other multi-function ingredient cases. Plaintiffs turned over Mr. Somogyi's report on February 13, 2020,

1  in support of Class Certification. Mr. Somogyi opines, without any factual support,
2  that malic acid imparts a tart taste, and *some* foods and confectionaries rely on
3  malic acid as a flavoring agent. But a substance that adds tartness and astringency is
4  not a flavor, it's a flavor enhancer. And Mr. Somogyi's opinion that malic acid
5  reinforces flavors in various foods cannot stand up to General Mills' conclusive
6  proof that malic acid does not impart a flavor in the Fruit Flavored Snacks. General
7  Mills would have prevailed at summary judgment or trial.

8  So, if the parties continued to litigate the case, General Mills would have
9  won, and the class would have received nothing. Given this likely outcome, the
10 class is fortunate to receive the meaningful injunctive relief provided for in the
11 Settlement Agreement.

12 **B.  The relief provided by the Settlement Agreement is meaningful.**

13 As Plaintiffs explain in the Motion, the Settlement Agreement affords the
14 class meaningful relief. Fed. R. Civ. P. 23(e)(2)(C). General Mills will change its
15 labels to add an asterisk next to the "No Artificial Flavors" claim, which will direct
16 consumers to the General Mills FAQ webpage. ECF No. 45-3 (Marron Decl. Ex. 1),
17 ¶ 5.2.b. General Mills will update the webpage to include information on the malic
18 acid in the Fruit Flavored Snacks. *Id.* ¶ 5.2.a. General Mills will explain that the
19 flavors in products with a "No Artificial Flavors" or similar claim come from all-
20 natural sources. *Id.* General Mills will clarify that the Fruit Flavored Snacks may
21 also contain malic acid, which is not intended for use as a flavor or to impart the
22 characterizing flavor in the Fruit Flavored Snacks. *Id.* These changes provide the
23 class the primary relief Plaintiffs sought in the lawsuits: removal of the "No
24 Artificial Flavors" label *or* additional clarifying information on malic acid's
25 function in the Fruit Flavored Snacks. Mot. at 14–17.

26 This injunctive relief is particularly impactful given what General Mills
27 knows about the purchasers of the Fruit Flavored Snacks. As Dr. Ran Kivetz
28 explained in his expert declaration in opposition to class certification, consumers

-9-    CASE NO. 3:18-cv-00395-L-BLM
NON-OPPOSITION

generally do not assign value to the "No Artificial Flavors" claim. Ex. A ¶¶ 9, 12. So, even if Plaintiffs were successful (an unlikely eventuality, as explained above), any monetary relief to the class would be extremely limited. *Id.*; *see also* Mot. at 16 (explaining why cash value to the class would be limited).

Dr. Kivetz further opined that few consumers who *are* interested in purchasing food without artificial flavors are the same consumers who would visit General Mills' website to learn more about the meaning of the "No Artificial Flavors" claim. Ex. A ¶ 13. Dr. Kivetz explained that such prospective consumers:

> would tend to: (i) read the Nutrition Facts and Ingredients label on the disputed products, which directs them to the General Mills website where they would encounter the additional language to be provided by the Defendant as injunctive relief; (ii) seek additional information on (and be more informed about) the topic of natural and artificial flavoring in the fruit snacks product category, including through the General Mills website, in part due to their greater skepticism of (and decreased reliance on) a "No Artificial Flavors" or "Naturally Flavored/Natural Flavor" packaging claim; and (iii) notice the asterisk next to the "No Artificial Flavors" claim and in turn be prompted to search for information on the package that would direct them to the Ask General Mills website.

*Id.* In other words, the very people most interested in the definition of "No Artificial Flavors"—and therefore most likely to be harmed if that claim is misleading—are also the individuals most likely to view and understand the clarifying information on General Mills' website regarding malic acid.

This opinion is supported by the academic literature, as Dr. Kivetz explains. The literature confirms that highly involved consumers (such as those particularly interested in a certain product characteristic, like natural flavors) "are more interested in getting additional information and comparing product characteristics, spend more time and attention on their purchase decisions, consider more product attributes, search for more product information, and keep themselves informed about the product category even when not actively making a purchase." Ex. A ¶ 16

& nn.16–17; *see also id.* ¶ 20 ("Consumers who are more involved with a product category or a product attribute tend to be more interested in reading information, including from third-party sources about the category or attribute, and are more likely to differentiate among brands and to compare product characteristics across brands."). These highly involved consumers are also more likely to look outside the product package, to company or even third-party websites, to investigate claims or ingredients of interest to them. *Id.* ¶ 22 & n.25. Here, consumers interested in the meaning of the challenged claims "are likely to conduct their own research and consult different sources of information regarding natural and artificial flavoring, including information readily obtained from the Defendant's Ask General Mills website that would clarify any 'misperception' regarding the alleged packaging misrepresentation and omission." *Id.* ¶ 29.

That investigation is aided by the addition of the asterisk next to the "No Artificial Flavors" claim. *Id.* ¶ 30. Consumers interested in purchasing products without artificial flavors "would be more sensitive to packaging representations involving the topic of concern (e.g., the 'No Artificial Flavors' claim)" and therefore "highly likely to pay attention to any surrounding indicia or immediate context that offers additional information or elaboration on these representations." *Id.*; *see also id.* ¶ 31–33. These consumers would, in turn, seek out and understand the information on the General Mills website clarifying that the Fruit Flavored Snacks contain only natural flavors, and may contain malic acid and other acidulants, which do not function as flavors.

So, General Mills statement on its website clarifying malic acid's function in the Fruit Flavored Snacks (*i.e.*, that it does not function as a flavor) is highly likely to reach the class members most interested in this information. *Id.* ¶ 23. For this additional reason, the injunctive relief afforded by the Settlement Agreement is meaningful.

Case 3:18-cv-00395-L-BLM   Document 46   Filed 09/21/20   PageID.618   Page 12 of 12

## III.   CONCLUSION

General Mills does not oppose, and in fact joins, Plaintiffs' Motion for Preliminary Approval of Class Action Settlement—General Mills agrees that the Settlement Agreement is fair and reasonable, and that the class should be certified for settlement purposes. The information provided in this non-opposition further supports approval of the Settlement Agreement: General Mills was likely to win this case at summary judgment or trial because its evidence established that malic acid does not function as a flavor in the Fruit Flavored Snacks. And the injunctive relief provided for in the Settlement Agreement is particularly meaningful for the few individuals in the class concerned about artificial flavors. For these reasons, and those stated in the Motion, General Mills respectfully requests that the Court preliminarily approve the Settlement Agreement.

DATED: September 21, 2020          PERKINS COIE LLP

By: */s/ Lauren Watts Staniar*
David T. Biderman, Bar No. 101577
DBiderman@perkinscoie.com
Charles Sipos, *pro hac vice*
CSipos@perkinscoie.com
Lauren Watts Staniar, *pro hac vice*
lstaniar@perkinscoie.com

Attorneys for Defendants

-12-   CASE NO. 3:18-cv-00395-L-BLM
NON-OPPOSITION