UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRYSTAL HILSLEY, et al.,<br><br>         Plaintiffs,<br><br>v.<br><br>GENERAL MILLS, INC. et al.,<br><br>         Defendants. | Case No.: 3:18-cv-00395-L-BLM<br><br>**CLASS ACTION**<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING MOTION TO INTERVENE**<br><br>**[ECF Nos. 45, 52]** |

  In this putative class action alleging deceptive food labeling, Plaintiffs filed an unopposed motion for preliminary settlement approval. (ECF No. 45, "Prelim. Approval Mot."). David Hayes, a named plaintiff in a related putative class action pending in the Northern District of Illinois, filed a motion to intervene, which Plaintiffs opposed. (ECF No. 52.) The Court decides these matters on the briefs without oral argument. *See* Civ. L. R. 7.1(d)(1). For the reasons stated below, the Preliminary Approval Motion is denied and the motion to intervene is granted.

**I. BACKGROUND**

  Plaintiffs, consumers who purchased fruit flavored snacks manufactured by Defendant General Mills, Inc. ("General Mills"), brought this putative class action

alleging that the product label was misleading because it falsely claimed that the snacks had "no artificial flavors" and were "naturally flavored," although they contained d-l malic acid as an artificial flavoring.  (ECF no. 1-2, Class Action Compl. ("Compl.") ¶¶ 46, 47, 53.)  According to the complaint, d-l malic acid is a "synthetic petrochemical." (*Id.* ¶ 50.)  Plaintiff claimed that it "simulates, resembles, and reinforces the characterizing fruit flavor of the Products." (*Id.* ¶ 72; *see also id.* ¶52.)  Specifically, d-l malic acid "confers a tart, fruit-like flavor" to "help[] make the Products – which are over 50% corn syrup and sugar – taste more like fruit."  (*Id*. ¶¶ 50 (internal quotation marks omitted), 59.)

The initial complaint alleged violations of California Unfair Competition Law, California False Advertising Law, and California Consumer Legal Remedies Act, as well as breach of express and implied warranties.  Plaintiff filed the complaint in State court. Defendants removed the action to federal court.  The court has subject matter jurisdiction pursuant to 28 U.S.C. §1332.

Defendants filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  They argued that General Mills used d-l malic acid as a pH control agent and not as an artificial flavor. (*See generally* ECF no. 13-1 (Defs' mot. to dismiss).)  At the pleading stage, the court did not resolve the factual dispute whether malic acid in the fruit snacks was used as a flavoring ingredient or a pH balancing agent. (ECF no. 17 (order) at 4.)  *See Huynh v. Chase Manhattan Bank,* 465 F.3d 992, 997, 999 n.3 (9th Cir. 2006) (the court must assume the truth of the factual allegations in the complaint and construe them most favorably to the moving party).  Defendants' motion was denied insofar as Plaintiff's theory of liability was based on the contention that the products were mislabeled because the packaging falsely stated they were "naturally flavored" and had "no artificial flavors."

Defendants answered the complaint, the parties participated in an early neutral evaluation conference, and commenced discovery.  (ECF no. 45-2, Decl. of Ronald A. Marron ("Marron Dec.") at 2.)  During discovery, the parties entered settlement

negotiations and mediation. (*Id.* at 3.) The negotiations included a related action, prosecuted by the same counsel who represent Plaintiffs herein, pending in the Central District of California, *Morris et al. v. Motts LLP at al.*, case no. 18cv1799 (the "Morris Action"). (*Id.*) The Morris Action alleged essentially the same claims about fruit flavored snacks manufactured by General Mills which were sold under the Motts brand. (*Id.* at 2.) General Mills was one of the named defendants. (*Id* at 3.) On March 9, 2020, the parties "finalized the terms of the settlement." (*Id.* at 4.)

As a part of the settlement, the Morris Action was dismissed and incorporated into the amended complaint filed in this action. (*See* ECF no. 45-3, Marron Dec. Ex. 1 ("Settlement Agreement") ¶¶ 1.6, 1.7.) Consistent with the Settlement Agreement, the amended complaint expanded what was previously a class of California consumers to a nationwide class action.[1] (*Cf.* Compl. ¶ 116 *with* ECF no. 41, First Am. Compl. ("FAC" or "amended complaint")[2] ¶ 88; *see also* Settlement Agreement ¶ 2.3.)

Under the proposed settlement, Defendants promised to change the product packaging to "display an asterisk or a similar reference immediately following or adjacent to the 'No Artificial Flavors' claim that directs the consumer to the statement '*Learn More at [the General Mills website].'" (Settlement Agreement ¶ 5.2.b.) In this regard, the General Mills website would

> disclose[] in substance the following points: (1) that . . . the flavors in the Products bearing the Challenged Claims come from all natural sources; (2) that General Mills identifies "natural flavors" in the ingredient list in

---

[1] The amended complaint also added David Cook as a plaintiff residing in Minnesota, omitted the breach of warranty claims, added certain fraud and unjust enrichment claims, added a claim under a Minnesota consumer fraud statute, and included additional products. (*Cf.* Compl. at 5, 11, 17-24 *with* FAC at 3-4, 19-27 and Ex. 1.)

[2] Plaintiffs neglected to accompany the amended complaint with a redlined version showing the variances between the initial and first amended complaints. *See* Civ. L. R. 15.1(c).

3

accordance with FDA regulations; and (3) that . . . the Products may also contain synthetic malic acid or other acidulants. Malic acid is intended for use not as a flavor or to impart the characterizing flavor of these Products, but is a substance the FDA approves for multiple uses including a flavor enhancer, a flavoring agent or adjuvant, or as a pH control agent. 21 C.F.R. § 184.1069.

(Settlement Agreement ¶ 5.2.a.) These statements would be provided on General Mills website for four years. (*Id.* ¶ 5.2.b.) In addition, General Mills promised not to object to Plaintiffs' application for $725,000 in attorneys' fees, costs and expenses, and a $5,000 incentive award to each of the four named Plaintiffs. (*Id.* ¶ 10.1.) Finally, Defendants agreed to pay the costs of notice and settlement administration. (*Id.* ¶ 6.1.) In exchange, the nationwide class would broadly release all of its claims against Defendants, including the claims for monetary relief pled in the amended complaint.[3] (*Cf. id.* ¶ 7.1 *with* FAC at 29.)

## II. DISCUSSION

### A. Motion for Preliminary Approval

According to the terms of the settlement, Plaintiffs filed the pending Settlement Approval Motion. (*See* Settlement Agreement ¶ 9.1.) Defendants filed a non-opposition, together with three expert reports. (ECF no. 46 ("Non-Opp'n").) For the reasons stated below, the motion is denied.

To order notice to the putative class of the proposed settlement, the court must find that it

> will likely be able to
> (i)  approve the proposal under Rule 23(e)(2); and
> (ii) certify the class for purposes of judgment on the proposal.

Fed. R. Civ. Proc. 23(e)(1)(B).

---

[3] The release also appears to exceed the permissible scope. *See Hesse v. Sprint Corp.* 598 F.3d 581, 590 (9th Cir. 2010).

If, as here, the proposed settlement "would bind the class members, the court may approve it . . . only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. Proc. 23(e)(2). "[S]ettlement of class actions present[s] unique due process concerns for absent class members [in part because] class counsel may collude with the defendants, tacitly reducing the overall settlement in return for a higher attorney's fee." *In re Bluetooth Headset Prod. Liability Litig.*, 654 F.3d 935, 946 (9th Cir. 2011);[4] *see also Evans v. Jeff D.*, 475 U.S. 717, 733 (1986) (noting the possibility of tradeoff between merits relief and attorneys' fees often implicit in class action settlement negotiations.)   The court's role in reviewing class action settlements "is to police the inherent tensions among class representation, defendant's interests in minimizing the cost of the total settlement package, and class counsel's interest in fees." *Staton v. Boeing Co.*, 327 F.3d 938, 972 n.22 (9th Cir. 2003); *see also Bluetooth*, 654 F.3d at 946.

In this regard, the court considers whether:

(A)   the class representatives and class counsel have adequately represented the class;
(B)   the proposal was negotiated at arm's length;
(C)   the relief provided for the class is adequate, taking into account:
   (i)   the costs, risks, and delay of trial and appeal;
   (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
   (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
   (iv)  any agreement required to be identified under Rule 23(e)(3); and
(D)   the proposal treats class members equitably relative to each other.

Fed. R. Civ. Proc. 23(e)(2).

///

---

[4]   Unless otherwise noted, internal quotation marks, citations, brackets, and footnotes are omitted from citations.

> Where, as here,
>
>> a settlement agreement is negotiated prior to formal class certification, . . . [¶] . . . such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair.

*Bluetooth*, 654 F.3d at 946. The court has a duty to look for any "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 947. Examples of such subtle signs are

> (1) when counsel receive a disproportionate distribution of the settlement ...;
>
> (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds ...; and
>
> (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*Id.*

The Settlement Agreement here includes all three features. First, the class receives no monetary award while the counsel receives $725,000 for fees and costs, and each named Plaintiff receives $5,000.

Second, the settlement includes a "clear sailing" arrangement (*see* Settlement Agreement ¶ 10.1) whereby "the defendant agrees not to oppose a petition for a fee award up to a specified maximum value." *Bluetooth*, 654 F.3d at 940 n.6. This "carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class." *Id.* at 947.

Finally, the settlement includes an implied "kicker," whereby "all fees not awarded would revert to defendants rather than be added to the *cy pres* fund or otherwise benefit the class." *Bluetooth*, 654 F.3d at 947. The kicker is implicit in that Defendants agreed to pay without objection up to $725,000 for attorneys' fees, costs, and litigation expenses

/ / /

but the Settlement Agreement does not provide for any funds to be applied for the benefit of the class should the court award less.

Although the $725,000 sum was negotiated with a mediator's assistance (Marron Dec. at 3-4), this, by itself, is not sufficient to assure that the attorneys' fee amount was the product of collusion-free negotiations in light of the clear sailing and kicker provisions. *Bluetooth*, 654 F.3d at 948.

> [W]hen confronted with a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding "unreasonably high" fees simply because they are uncontested.

*Id.* at 948.

> For this same reason, a kicker arrangement reverting unpaid attorneys' fees to the defendant rather than to the class amplifies the danger of collusion already suggested by a clear sailing provision. If the defendant is willing to pay a certain sum in attorneys' fees as part of the settlement package, but the full fee award would be unreasonable, there is no apparent reason the class should not benefit from the excess allotted for fees. The clear sailing provision reveals the defendant's willingness to pay, but the kicker deprives the class of that full potential benefit if class counsel negotiates too much for its fees.

*Id.* at 949.

The request for $725,000 in fees and expenses appears excessive on its face. The legal work in this action consisted of investigating and drafting an initial complaint, defending a motion to dismiss, written discovery without depositions, and settlement negotiations.

On the other hand, the Settlement Agreement provides no meaningful benefit to the class. On behalf of a nationwide class, the Settlement Agreement abandons the monetary relief requested in the amended complaint. Plaintiffs do not address the aggregate amount of monetary relief they would recover had they prevailed on the merits, raising the question whether the settlement is based on a substantive analysis of Plaintiffs' case.

Plaintiffs cite *Littlejohn v. Copland*, 819 Fed. App'x. 491 (9th Cir. 2020), for the proposition that the Settlement Agreement should be approved notwithstanding lack of monetary relief. In addition, Defendants filed a declaration of Ran Keivetz, Ph.D., a marketing professor at Columbia University Business School. (Non-Opp'n at 10-11 & Ex. A.) He opined that the proposed asterisk on the product packaging is likely to benefit the consumers because, in his opinion, consumers do not assign any value to a claim of no artificial flavors, and the few who do would be willing to visit a website for more information. Neither *Littlejohn* nor the Keivetz opinion assist Plaintiffs.

In *Littlejohn*, the Court of Appeals affirmed a consumer class action settlement where the class members received only injunctive relief. The case involved a similar claim as this action. The plaintiff alleged a representation that SweetTARTS candy contained "no artificial flavors" was false and misleading because the candy contained dl malic acid. *Id*. at 492. The same counsel who represents Plaintiffs here settled *Littlejohn* for $272,000 in attorneys' fees and injunctive relief requiring the defendant *"to remove the phrase 'no artificial flavors'* from SweetTARTS packages and to identify dl malic acid as an ingredient." *Id.* (emphasis added). The court found the settlement adequate because "modification of SweetTARTS packaging and advertising adequately addresses the very claims raised in Plaintiff's Complaint, providing value to the Class." *Id.* at 493. By contrast, Defendants here have not agreed to remove the allegedly misleading statements but propose only to embellish them with an asterisk.

*Littlejohn* is consistent with relevant California law. Under California consumer protection statutes alleged in the amended complaint, an asterisk would not alleviate the misleading nature of false representations. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) ("We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box," even when the ingredient list complies with FDA regulations.) Accordingly, Keivetz'
///

declaration notwithstanding, the proposed injunctive relief provides very little value to the class, if any.

Although Plaintiffs' counsel asserts that the settlement provides "exceptional results" (Marron Dec. at 4), Plaintiffs provide no discussion of the weaknesses in their case to justify the extent of compromise reflected in the Settlement Agreement. The counsel notes that settlement was reached after discovery and provides a wholly generic explanation -- the uncertainty and delay inherent in litigation. (Marron Dec. at 4 ("I conclude that the Settlement provides exceptional results for the Class while sparing the Class from the uncertainties of continued and protracted litigation.").)

Defendants filed two expert declarations to argue weaknesses in Plaintiffs' case -- reports by Dolf DeRovira, B.S., a highly experienced flavor chemist, and Marianne Gillette, M.S., a food scientist with a high level of expertise in sensory science. (Non-Opp'n at 6-9 & Exs. B (Expert Dec. of Dolf DeRovira ("DeRovira Dec.")), C (Expert Dec. of Marianne Gillette ("Gillette Dec.")).)[5]

DeRovira opined that malic acid is not a flavor in part because in 40 years none of his clients has "requested a malic acid flavor." (DeRovira Dec. at 6.) More specifically, DeRovira relied on the food industry definition of "flavor," which is distinct from "taste." (*Id*. at 6, 9-12.) According to this definition a taste is sensed only on the tongue and is limited to five taste sensations – salty, sweet, bitter, sour, and umami, while flavor includes an aroma which is sensed in the nose. He reasoned that although malic acid has a sour taste, it is not a flavor because it lacks aroma. He conceded that malic acid, due to its sour taste, is sometimes used as a flavor enhancer. (*Id.* at 2.) DeRovira's opinion that

---

[5] The expert reports were filed in partially redacted form. Defendants' motion to seal was denied indicating that the unredacted versions of the reports, which had been lodged to facilitate the court's review of the motion to seal, would not be considered on the merits of Defendants' Non-Opposition. (*See* ECF no. 49.) Although Defendants were granted leave to renew their motion to make the showing necessary for sealing (*see id.*), they have not done so.

malic acid was not used a flavor in General Mills' Scooby Doo Snacks is based on the industry definition of "flavor" and Gillette's report, discussed below. (*Id.* at 9, 12.)

Gillette conducted sensory testing to determine the flavor impact of malic acid as formulated in General Mills fruit flavored snacks. (Gillette Dec. at 2.) After testing she opined that malic acid "does not impart or reinforce a characterizing flavor in the cherry and grape flavored snacks." (*Id.* at 16-24) She did not test any other flavors of the relevant products. (*See id.*) Based on the industry definition of "flavor," which requires aroma, she opined that malic acid does not function as a flavor in the fruit flavored snacks. (*Id.* at 2, 24.) Like DeRovira, she allowed that malic acid imparts "a tart sourness," "a basic taste," and can be used as a flavor enhancing ingredient. (*Id*. at 24-25.)

Plaintiffs designated Dr. Laszlo Somogyi as an expert who opined that malic acid is used as a flavoring ingredient in the products at issue. (Marron Dec. at 2.) Plaintiffs provided no further information about these opinions or why they would or would not support their' case.

As relevant to California consumer protection claims alleged in the amended complaint, the representations on General Mills' fruit snacks that they have "no artificial flavors" and are "naturally flavored," are considered misleading if they had the "capacity, likelihood, or tendency to deceive or  confuse" the "reasonable consumer." *Williams*, 552 F.3d at 938.  Neither Gillette nor DeRovira opined that a reasonable consumer would interpret "no artificial flavors" using the food industry definition rather than a lay definition of "flavor."  They conceded that malic acid imparts a sour taste and can be used as a flavor enhancer.  On this record, the court cannot conclude that Plaintiffs' case was so weak as to justify accepting the terms of the Settlement Agreement.  The court therefore cannot find it is likely ultimately to approve the settlement as fair, reasonable, and adequate.

Finally, for the foregoing reasons, the court also cannot conclude that Plaintiffs and their counsel adequately represented the interests of the class either for purposes of

settlement or class certification. *See* Fed. R. Civ. Proc. 23(a)(4), (e)(2)(A). Accordingly, Plaintiffs' Preliminary Approval Motion is denied.

### B. Motion to Intervene

Approximately a month after Plaintiffs filed their Preliminary Approval Motion, David Hayes filed a motion to intervene. Hayes is a named plaintiff in a related putative class action pending in the Northern District of Illinois, *Hayes v. General Mills et al.*, case no. 19cv5626 ("Hayes Action"). It is undisputed that his action asserts essentially the same claims as the action pending in this court. He intends to "protect the class members from a facially unfair settlement," request consolidation of the actions, and move for appointment of interim lead counsel." (ECF no. 52-1 ("Mot. to Intervene") at 3.) Plaintiffs opposed the motion claiming that Hayes filed a "copy-cat case." (ECF no. 53 ("Opp'n") at 1.)

"On timely motion, the court may permit anyone to intervene who: [¶] has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. Proc. 24(b)(1). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id.* 24(b)(3). Accordingly,

> An applicant who seeks permissive intervention must prove that it meets three threshold requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims. Even if an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention. In exercising its discretion, the district court must consider whether intervention will unduly delay the main action or will unfairly prejudice the existing parties.

*Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998).[6] Although the movant bears the burden of showing that he meets these requirements, they are broadly interpreted in

---

[6] Hayes initially argued for intervention as of right under Rule 24(a). Nevertheless, in their opposition Plaintiffs thoroughly briefed permissive intervention under Rule 24(b).

11

favor of intervention.  *Smith v. Los Angeles Unif. Sch. Dist.*, 830 F.3d 843, 853 (9th Cir. 2016).

The Hayes Action widely overlaps with this action.  (*Cf.* ECF no. 20, "Hayes FAC," filed in Hayes Action 10/8/2019 *with* FAC filed in this action 8/27/20; *see also* Opp'n at 1 ("copy-cat case").)  The actions name the same defendants, relate to essentially the same products manufactured by General Mills, are based on the same false advertising contention, seek monetary and injunctive relief, and allege a putative nationwide class.  The actions therefore share common questions or law and fact.

This court can exercise federal jurisdiction over Hayes' claims independently of Plaintiffs' pending action.  Hayes is an Illinois citizen.  He alleges that Defendants are citizens of Delaware and Minnesota. (Hayes FAC at 2.)  He also alleges that the matter in controversy exceeds $ 5 million as required by 28 U.S.C. § 1332(d).  (*Id.*)

Plaintiffs claim the motion should be denied as untimely because Hayes knew about this action over a year ago.  (Opp'n at 3.)

> While the length of time that has passed since a suit was filed is not, in and of itself, determinative of timeliness, a party seeking to intervene must act as soon as he knows or has reason to know that his interests might be adversely affected by the outcome of the litigation.

*Cal. Dept. of Toxic Substances Control v. Comm. Realty Projects, Inc.*, 309 F.3d 1113, 1120 (9th Cir. 2002).  Accordingly, Plaintiffs' argument is not determinative of timeliness.

Hayes argues his motion is timely because it was triggered by Plaintiffs' settlement.  Plaintiffs do not dispute Hayes' explanation for the timing of his decision to

---

(Opp'n at 9-10.)  In the reply brief, Hayes argued for permissive intervention as an alternative to his request for intervention as of right.  (ECF no. 55 ("Reply") at 9-10.) Because the motion is granted under Rule 24(b), the court need not consider whether it could also be granted under Rule 24(a).

12

intervene.  (*See* Opp'n at 3 (citing Mot. to Intervene at 2 n.1).)  Defendants had made multiple attempts to settle with Hayes individually.  (Mot. to Intervene at 2.)  When he insisted that the settlement include class-wide relief, Defendants redirected their settlement efforts to this action.  (*Id* at 2-3.)  Hayes' counsel Adrian R. Bacon held multiple calls with Ron Marron, Plaintiffs' counsel in this action.  (*Id.* at 2 n.1.)  Marron does not deny he told Bacon that Defendants wanted to settle for injunctive relief only, and "wanted to engage in a reverse auction by pitting both pending lawsuits' counsel against one another in a race to the bottom." (*Id.*)  Bacon urged Marron to resist because any such settlement "would be detrimental to class members." (*Id.*)  "Mr. Marron assured him he would not do so under any circumstances and would not settle without including Hayes' counsel in the discussion." (*Id.*)  However, Marron "apparently did not keep his word." (*Id.*)

As is evident from the pending Preliminary Approval Motion, Marron agreed to a class-wide settlement for injunctive relief only.  Hayes contends the proposed settlement "fails to protect the significant interest of the Class in obtaining monetary relief." (Mot. to Intervene at 3.)  Because of the overlap in the claims and class membership there is a significant possibility that the settlement of this action would release the claims asserted in the Hayes Action.  Based on Marron's prior assurances that he would not settle for injunctive relief only, it was reasonable for Hayes to forego intervention until Plaintiffs filed their Preliminary Approval Motion.

Plaintiffs' Preliminary Approval Motion was filed September 4, 2020.  Hayes filed his Motion to Intervene on October 16, 2020.  Because it was the Preliminary Approval Motion that put Hayes on notice that his interests and the interests of the class might be adversely affected, his Motion to Intervene was timely filed.

Plaintiffs' argument that the settlement would not adversely affect Hayes' or class members' interests because they could opt out or object, *see* Fed. R. Civ. Proc. 23(c)(2)(B)(v)-(vi), (e)(5), is rejected.  As discussed in the context of the Preliminary Approval Motion, the proposed settlement falls short of the likelihood it could be found

fair, reasonable, and adequate, and raises questions of adequacy of representation.  (*Cf.* Opp'n at 8.)  Accordingly, the proposed settlement would adversely affect consumer interests implicated both in the Hayes Action as well as in this action.

Finally, Plaintiffs maintain that granting the Motion to Intervene after this action had settled would unduly delay and prejudice the adjudication of the parties' rights in this action.  This argument lost its potency with the denial of Plaintiffs' Preliminary Approval Motion.  Furthermore, this action is not significantly more advanced than the Hayes Action.  The complaints have survived pleading challenges, no class certification or summary judgment motions have been filed, and neither Plaintiffs nor Hayes have been deposed.  To the extent discovery is more advanced in this action, it is equally relevant to the Hayes Action.  (*See* Hayes Action current docket sheet.)  Accordingly, Hayes' intervention would not cause undue delay or prejudice to the adjudication of the parties' rights in this action.  The Motion to Intervene is granted.

## III. CONCLUSION

For the reasons stated above, it is ordered as follows:

1. Plaintiffs' motion for preliminary approval of class action settlement (ECF no. 45) is denied.

2. Motion filed by David Hayes to intervene in this action (ECF no. 52) is granted pursuant to Federal Rule of Civil Procedure 24(b).

3. The parties, including Hayes, shall forthwith contact the chambers of Magistrate Judge Barbara L. Major to schedule a case management conference.

4. Any further motion for preliminary class action settlement approval shall be filed no later than July 7, 2021.

**IT IS SO ORDERED.**

Dated:  June 4, 2021

_____
Hon. M. James Lorenz
United States District Judge