1
2
3
4
5
6
7
8       UNITED STATES DISTRICT COURT
9       SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11  CRYSTAL HILSLEY, et al., | Case No.:  3:18-cv-00395-L-BLM |
| 12                    Plaintiffs, | **CLASS ACTION** |
| 13  v. | **ORDER DENYING RENEWED** |
| 14  GENERAL MILLS, INC. et al., | **MOTION FOR PRELIMINARY** |
| 15                    Defendants. | **SETTLEMENT APPROVAL** |
| 16 | **[ECF No. 76]** |
| 17 | |

18          In this putative class action alleging deceptive advertising and labeling, Plaintiffs

19   filed a renewed motion for preliminary settlement approval.  (ECF No. 76, "Prelim.

20   Approval Mot.").  Defendants filed a joinder.  (ECF No. 77 ("Joinder").)  The Court

21   decides this matter on the briefs without oral argument.  *See* Civ. L. R. 7.1(d)(1).  For the

22   reasons stated below, the Preliminary Approval Motion is denied.

23   **I.       BACKGROUND**

24          Plaintiffs, consumers who purchased fruit flavored snacks manufactured by

25   Defendant General Mills, Inc. ("General Mills" or "Defendant"), brought this putative

26   class action alleging that the product labels were misleading because they falsely claimed

27   that the snacks had "no artificial flavors" and were "naturally flavored," although they

28   contained dl malic acid as an artificial flavoring.  (ECF no. 1-2, Class Action Compl.

1  ("Compl.") ¶¶ 46, 47, 53.)  According to the complaint, dl malic acid is a "synthetic

2  petrochemical."  (*Id.* ¶ 50.)  Plaintiff claimed that it "simulates, resembles, and reinforces

3  the characterizing fruit flavor of the Products."  (*Id.* ¶ 72; *see also id.* ¶52.)  Specifically,

4  dl malic acid "confers a tart, fruit-like flavor" to "help[] make the Products – which are

5  over 50% corn syrup and sugar – taste more like fruit."  (*Id.* ¶¶ 50 (internal quotation

6  marks omitted), 59.)

7       The initial complaint alleged violations of California Unfair Competition Law,

8  California False Advertising Law, and California Consumer Legal Remedies Act, as well

9  as breach of express and implied warranties.  Plaintiff filed the complaint in State court.

10  Defendants[1] removed the action to federal court.  The Court has subject matter

11  jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d).

12       Defendants filed a Rule 12(b)(6) motion to dismiss for failure to state a claim.[2]

13  They argued that General Mills used dl malic acid as a pH control agent and not as an

14  artificial flavor.  (*See generally* ECF no. 13-1, "Defs' Mot. to Dismiss.")  At the pleading

15  stage, the Court did not resolve the factual dispute whether malic acid in the fruit snacks

16  was a flavoring ingredient.  (ECF no. 17, Order Granting in Part and Denying in Part

17  Defs.' Mot. to Dismiss at 4.)  *See Huynh v. Chase Manhattan Bank,* 465 F.3d 992, 997,

18  999 n.3 (9th Cir. 2006) (the court must assume the truth of the factual allegations in the

19  complaint).  Defendants' motion was denied insofar as Plaintiff's theory of liability was

20  based on the contention that the products were mislabeled because the packaging falsely

21  stated they were "naturally flavored" and had "no artificial flavors."

22       Following Defendants' answer, the parties participated in an early neutral

23  evaluation conference, and Plaintiffs served written discovery requests.  (ECF no. 76-2,

24  Decl. of Ronald A. Marron ("Second Marron Decl.") ¶¶ 4-7.)  During discovery, the

---

[1]     Plaintiff initially named multiple Defendants who have since been dismissed.

[2]     All references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure.

parties entered settlement negotiations and mediation.  (*Id*. at 3.)  The negotiations included a related action, prosecuted by the same counsel in the Central District of California, *Morris et al. v. Motts LLP at al.*, case no. 18cv1799 (the "Morris Action"). (*Id*.)  The Morris Action alleged essentially the same claims about General Mills fruit flavored snacks sold under the Motts brand, and named General Mills as one of the defendants.  (*Id* at 2-3.)  The mediation resulted in a settlement agreement.  (*Id*. at 4.)

As a part of the settlement, the Morris Action was dismissed and incorporated into the amended complaint in this action.  (*See* ECF no. 45-3, Second Marron Decl. Ex. 1 ("Settlement Agreement") ¶¶ 1.6, 1.7.)  Consistent with the Settlement Agreement, the amended complaint expanded what was previously a class of California consumers to a nationwide class action.[3]  (*Cf.* Compl. ¶ 116 *with* ECF no. 41, First Am. Compl. ("FAC" or "amended complaint") ¶ 88; *see also* Settlement Agreement ¶ 2.3.)

Under the proposed settlement, Defendants promised to change the product packaging to "display an asterisk or a similar reference immediately following or adjacent to the 'No Artificial Flavors' claim that directs the consumer to the statement '*Learn More at [the General Mills website].'"  (Settlement Agreement ¶ 5.2.b.)  In this regard, the General Mills website would

> disclose[] in substance the following points:  (1) that . . . the flavors in the Products bearing the Challenged Claims come from all natural sources; (2) that General Mills identifies "natural flavors" in the ingredient list in accordance with FDA regulations; and (3) that . . . the Products may also contain synthetic malic acid or other acidulants.  Malic acid is intended for use not as a flavor or to impart the characterizing flavor of these Products, but is a substance the FDA approves for multiple uses including a flavor enhancer, a flavoring agent or adjuvant, or as a pH control agent.  21 C.F.R. § 184.1069.

---

[3]      The amended complaint also added David Cook as a plaintiff residing in Minnesota, omitted the breach of warranty claims, added certain fraud and unjust enrichment claims, added a claim under a Minnesota consumer fraud statute, and included additional products.  (*Cf.* Compl. at 5, 11, 17-24 *with* FAC at 3-4, 19-27 and Ex. 1.)

1    (Settlement Agreement ¶ 5.2.a.)  These statements would be provided on General Mills

2    website for four years.  (*Id.* ¶ 5.2.b.)  In addition, General Mills promised not to object to

3    Plaintiffs' application for $725,000 in attorneys' fees, costs and expenses, and a $5,000

4    incentive award to each of the four named Plaintiffs.  (*Id.* ¶ 10.1.)  Finally, Defendants

5    agreed to pay the costs of notice and settlement administration.  (*Id.* ¶ 6.1.)  In exchange,

6    the nationwide class would broadly release all claims against Defendants, including the

7    claims for monetary relief pled in the amended complaint.[4]  (*Cf. id.* ¶ 7.1 *with* FAC at

8    29.)  Preliminary approval of this proposed settlement was denied.  (ECF No. 61, Order

9    Denying Pls' Mot. for Prelim. Approval of Class Action Settlement and Granting Mot. to

10   Intervene ("Initial Order").)

11         Subsequently, the parties engaged in further mediation and drafted the most recent

12   Amended Class Action Settlement Agreement.  (Second Marron Decl. at 4; ECF No. 76-

13   3, Am. Settlement Agreement.)  The Amended Settlement Agreement differs from the

14   initially submitted agreement in several respects.

15         Defendant agrees to remove "No Artificial Flavors" from the products at issue if

16   the products contain "synthetic, racemic, or industrial versions of malic acid."  (Am.

17   Settlement Agreement ¶¶ 5.1, 5.2, 2.1, 2.2.)  Even if the products continue to contain

18   "synthetic, racemic, or industrial versions of malic acid," the new agreement does not

19   preclude Defendant from continuing to label or advertise them as containing "All Natural

20   Flavors."  (*Cf.* Settlement Agreement ¶¶ 5.1, 5.2, 2.1, 2.2 *with* Am. Settlement

21   Agreement ¶¶ 5.1, 5.2, 2.1, 2.2.)  Defendant would implement this change within two

22   years after final settlement approval.  (*Id.* ¶ 2.7.)  The change would last for two years

23   thereafter.  (*Id.* ¶ 5.4.)

24         The class member release is limited to injunctive relief and expressly carves out

25   "claims for damages or personal injury regarding the Products."  (Am. Settlement

26   _____

27

28   [4]      The release also appeared to exceed the permissible scope.  *See Hesse v. Sprint
     Corp.* 598 F.3d 581, 590 (9th Cir. 2010).

Agreement ¶ 2.26.)  It applies to future claims only insofar as they "involve[] an identical factual predicate."  (*Id.*)

Finally, the revised settlement reduces the possible fee award from $750,000 to $600,000, inclusive of fees, costs, litigation expenses, and incentive awards, with Defendant reserving the right to oppose the class counsel's motion.  (Am. Settlement Agreement ¶¶ 10.1, 10.3.)  If the Court ultimately awards less, Defendant is to pay the difference to a *cy pres* recipient to be specified in the motion for attorneys' fees.  (*Id.* ¶ 10.3.)

## II.   DISCUSSION

"[S]ettlement of class actions present[s] unique due process concerns for absent class members [in part because] class counsel may collude with the defendants, tacitly reducing the overall settlement in return for a higher attorney's fee."  *In re Bluetooth Headset Prod. Liability Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) ("*Bluetooth*"); *see also Evans v. Jeff D.*, 475 U.S. 717, 733 (1986) (noting the possibility of tradeoff between merits relief and attorneys' fees often implicit in class action settlement negotiations.)[5] The court's role in reviewing class action settlements "is to police the inherent tensions among class representation, defendant's interests in minimizing the cost of the total settlement package, and class counsel's interest in fees."  *Staton v. Boeing Co.*, 327 F.3d 938, 972 n.22 (9th Cir. 2003).  This is particularly pressing for pre-class certification settlements.  *Briseno v. Henderson*, 998 F.3d 1014, 1024 (2021).

### A.   Fair, Reasonable, and Adequate Settlement

If, as here, the proposed settlement "would bind the class members, the court may approve it . . . only on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. Proc. 23(e)(2).  "The district court must act as a fiduciary, protecting the interests of absent

/ / / / /

---

[5]       Unless otherwise noted, internal quotation marks, citations, brackets, and footnotes are omitted from citations.

3:18-cv-00395-L-BLM

class members by scrutinizing the settlement's fairness in light of the well-established factors." *Kim v. Allison*, 8 Fed.4th 1170, 1178 (9th Cir. 2021).

In this regard, the Court considers whether:

(A)  the class representatives and class counsel have adequately represented the class;

(B)  the proposal was negotiated at arm's length;

(C)  the relief provided for the class is adequate, taking into account:

    (i)  the costs, risks, and delay of trial and appeal;

    (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv)  any agreement required to be identified under Rule 23(e)(3); and

(D)  the proposal treats class members equitably relative to each other.

Fed. R. Civ. Proc. 23(e)(2).

In this Circuit, a district court examining whether a proposed settlement comports with Rule 23(e)(2) is guided by the eight "*Churchill* factors," viz., "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement."

*Kim*, 8 Fed.4th at 1178.

This action has not yet been certified as a class action.  Settlements that, as here, "occur before class certification are subject to a high procedural standard."  *Kim*, 8 Fed.4th at 1178; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("more probing inquiry").  When

/ / / / /

1
2
3

> a settlement agreement is negotiated prior to formal class certification, . . . [¶] . . . such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair.

4
5

*Bluetooth*, 654 F.3d at 946.

6

        1.   <u>Adequacy of Relief</u>

7

      In support of finding the proposed settlement fair, reasonable, and adequate,

8

Plaintiffs' counsel argues,

9
10
11
12
13
14

> Through the discovery process, Class Counsel has obtained sufficient information and documents to evaluate the strengths and weaknesses of the case. The information reviewed by class counsel includes the function and effect of dl-malic acid in the Products during the class period and the labels for each of the Products at issue in use during the class period. In my opinion, the proposed Settlement provides the Class with an outstanding opportunity to obtain significant injunctive relief at this stage in the litigation. The Settlement also abrogates the risks that might prevent them from obtaining any relief.

15
16
17

(Second Marron Decl. ¶ 17.)  Plaintiffs provide no analysis of the strengths and weaknesses in their case.

18
19
20
21
22
23
24

      The proposed settlement would delay injunctive relief for up to two years after final approval and let it expire two years thereafter.  This significantly diminishes any benefit to the class because the class members nationwide will be barred from suing for injunctive relief if Defendant reverts to the same advertising and labeling after two years. The delay and duration of injunctive relief in light of the release raise concerns regarding fairness and adequacy of the proposed settlement.  These issues are not addressed by the parties.

25
26
27
28

      More importantly, it is not apparent that the proposed injunctive relief provides any benefit to the class at all.  As relevant to California consumer protection claims alleged in the amended complaint, the representations on Defendant's products that they contain "All Natural Flavors" and have "No Artificial Flavors" are misleading if they have the

"capacity, likelihood, or tendency to deceive or confuse" the "reasonable consumer." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).

During the initial mediation the parties exchanged expert reports.  (Second Marron Decl. ¶ 5; ECF no. 45-2, Decl. of Ronald A. Marron ("First Marron Decl.") ¶¶ 15-17.) Plaintiffs' expert opined that dl malic acid was used in the products at issue "as a flavoring ingredient."  (First Marron Decl. ¶ 9.)  Defendant's experts conceded that dl malic acid, due to its "distinct sour flavor," is commonly used as a "flavor enhancing ingredient."  (ECF No. 46-5, Expert Decl. of Marianne Gillette in Opp'n to Class Certif. ¶¶ 61, 63; *see also* ECF No. 46-6, Expert Decl. of Dolf DeRovira in Opp'n to Class Certif. ("DeRovira Decl.") ¶44.)  Even when used as a pH control agent, dl malic acid can impart a sour taste.  (DeRovira Decl. ¶44.)

Whether dl malic acid is a flavoring ingredient in Defendant's products is a factual dispute that most likely could only be resolved by trial.  This entails time, expense, and risk for both sides in this action, thus rendering compromise a rational choice.

However, removing "No Artificial Flavors" while continuing to represent that the products contain "All Natural Flavors" does not appear to be a compromise.  These statements are two sides of the same coin.  Each statement makes the same representation.  (*See* Joinder at 2 (equating "natural" and "not artificial").)  Removing one statement and leaving the other does not change Defendant's representation to the consumers, and therefore provides no benefit to the class.  Neither side addresses this issue.

Both sides point to *Littlejohn v. Copland*, 819 Fed. App'x. 491 (9th Cir. 2020), as a reason to approve the proposed settlement.  In *Littlejohn*, the Court of Appeals affirmed a consumer class action settlement involving similar claims and injunctive relief.  The plaintiff alleged that a representation that SweetTARTS candy contained "no artificial flavors" was false and misleading because the candy contained dl malic acid.  *Id.* at 492. The same counsel who represents Plaintiffs here settled *Littlejohn* for $272,000 in attorneys' fees and injunctive relief requiring the defendant "to remove the phrase 'no

8

1    artificial flavors' from SweetTARTS packages and to identify dl malic acid as an

2    ingredient." *Id.*  The court found the settlement adequate because "modification of

3    SweetTARTS packaging and advertising adequately addresses the very claims raised in

4    Plaintiff's Complaint, providing value to the Class." *Id.* at 493.  The *Littlejohn* settlement

5    materially differs from the proposed settlement here, because, even after settlement,

6    Defendant here may label and advertise the product as containing "All Natural Flavors."

7         "[A] class does not need to receive much for a settlement to be fair when the class

8    gives up very little." *Briseno*, 998 F.3d at 1028.  But even if, *assuming arguendo*, the

9    class is giving up very little by settling this action, "it has a right to receive something in

10   exchange." *Id.* at 1029.  However, the proposed settlement does not seem likely to

11   provide any benefit to the class at all.

12        Based in the foregoing, the Court cannot conclude that Plaintiffs have met their

13   burden of showing that the Court would likely be able to approve the proposed settlement

14   as "fair, reasonable, and adequate." *See* Fed. R. Civ. Proc. 23(e)(1)(B)(i).  If Plaintiffs

15   submit another proposed settlement for approval, they must include a substantive

16   discussion of the strengths and weaknesses of their case and how the proposed settlement

17   benefits the class.

18                    2.    Attorneys' Fees

19        In deciding whether to approve a proposed settlement, the Court must also consider

20   "the terms of any proposed award of attorneys' fees" to determine "whether the

21   attorneys' fees arrangement shortchanges the class." *Briseno*, 998 F.3d at 1024 (in part

22   quoting Fed. R. Civ. Proc. 23(e)(2)(C)(iii)).  Courts "must balance the proposed award of

23   attorney's fees vis-a-vis the relief provided to the class in determining whether the

24   settlement is adequate for class members." *Briseno*, 998 F.3d at 1024.

25        Aside from the questionable relief provided by the proposed settlement, the

26   attorneys' fee provision (Am. Settlement Agreement ¶10) omits some of the problematic

27   provisions which plagued the prior proposal, including the "clear sailing" and "kicker"

28   provisions.  (*See* Initial Order at 6-7.)  The "kicker" is replaced by the c*y pres* provision.

(Am. Settlement Agreement ¶10.3.)  The parties have not identified a proposed *cy pres* beneficiary so far.  If Plaintiffs renew their request, they must propose a *cy pres* beneficiary in their preliminary approval motion.  The proposed beneficiary must comply with the criteria set forth in *Dennis v. Kellogg*, 697 F.3d 858, 865 (9th Cir. 2012).

### B.    Notice of Class Action Settlement

Rule 23(e) requires "notice in a reasonable manner to all class members who would be bound by the [settlement] proposal[.]"  Direct notice to class members is not required, "especially for low-cost items bought by millions of consumers."  *Briseno*, 998 F.3d at 1026 n.3.

In support of the proposed notice, Defendant offered a declaration of James Prutsman, Senior Director of Kroll Settlement Administration, LLC.  (ECF no. 76-5, Decl. of James Prutsman, MBA ("Prutsman Decl.").)  Although Mr. Prutsman appears well qualified to administer the class action settlement notice in this action, his declaration provides no assurances that he would be develop, implement or supervise implementation of the notice.  (*Id.* ¶¶ 1-7.)

To disseminate notice of settlement, Mr. Prutsman proposes 30 days of ads on Facebook and Instagram targeting individuals who have "liked" or follow Defendant's fruit snack brands.  The ads are proposed to focus on parents who are 44 years old or younger.  (Prutsman Decl. ¶ 9.)  Mr. Prutsman does not estimate the expected effectiveness of the proposed notice program to assist in the Court's determination whether the proposed notice is reasonable.  The parties do not address this issue.

Although Mr. Prutsman's declaration references a "Long Form Notice" (Prutsman Decl. ¶ 12), it does not make any representations that the proposed notice forms attached to the Amended Settlement Agreement, or a notice approved by the Court, would be used by his firm.  Neither sample notice nor sample ads are attached to or incorporated into his declaration.

/ / / / /

The Amended Settlement Agreement includes a long and short form notice the parties agreed to.  (Am. Settlement Agreement Exs. B, C.)  If Plaintiffs renew their motion, below is guidance for changes to the proposed notice forms:

1.      Review the notice for grammatical errors.

2.      Because the parties propose certification of a Rule 23(b)(2) class, the notice should remove references to, or any suggestions of, the right to opt out.  (*See* Ex. B at 1 ("You can stay in the Settlement . . .."), ¶ 2.)  The same comment applies to the short form notice provided in Exhibit C to the proposed settlement.

3.      Provide a more informative description of what the class members are giving up by settling the case.  (*Id.* ¶¶ 4, 6.)

4.      Provide a more informative description of the benefit of the settlement to the class members.  (*Id.* ¶ 10.)

5.      The proposed notice should make clear that any putative class member may address the Court at the hearing, and that, if proceeding without an attorney, the class member may address the Court even if they did not provide a written objection.  (*Cf.* ¶¶ 8-10.)

6.      The objection and appearance provisions of the proposed notice are too onerous.  (*See* ¶¶ 9, 10.)  Although the parties may encourage class members to provide written objections by a date certain, the Court is not inclined to approve a settlement or notice of settlement suggesting that a *pro se* class member who does not timely provide a written objection is barred from objecting at the hearing.

7.      Paragraph 9 is confusing (*see, e.g.,* "you must give the Court a paper . . .."). The notice should also make clear that *pro se* objectors appearing at the hearing need not file a Notice of Appearance.

8.      Paragraph 12 is confusing and partly duplicative of ¶ 4.  Depending on any other edits to the proposed notice, the parties should consider editing out all but the last sentence of ¶ 12.

Based on the foregoing, the Court cannot approve the notice of settlement as currently proposed.

## III.   CONCLUSION AND ORDER

For the reasons stated above, Plaintiffs' Preliminary Approval Motion is denied.  If Plaintiffs wish to renew the motion, they must address the issues outlined in this Order, and provide a redlined version of the proposed settlement showing any changes made to the Amended Settlement Agreement.  Any such renewed motion must be filed no later than July 18, 2022.

**IT IS SO ORDERED.**

Dated:  June 17, 2022

Hon. M. James Lorenz
United States District Judge

12

3:18-cv-00395-L-BLM